PUBLIC DOCUMENT

**REMAND REDETERMINATION**
***Leco Supply, Inc. v. United States***
Court No. 21-00136 (Court of International Trade August 3, 2021)
EAPA Consolidated Case No. 7357

## I.    SUMMARY

U.S. Customs and Border Protection (CBP) has prepared this remand redetermination

pursuant to the remand order, dated August 3, 2021, issued by the U.S. Court of International

Trade (the Court) in *Leco Supply, Inc. v. United States*, Court No. 21-00136 (hereinafter, the

Remand Order).[1] This remand concerns CBP's affirmative determination of evasion of the

antidumping (AD) and countervailing duty (CVD) orders on certain steel wire garment hangers

(hangers) from the Socialist Republic of Vietnam (Vietnam)[2] against Leco Supply, Inc. (Leco)

under the Enforce and Protect Act (EAPA).[3] Following the Government's motion for voluntary

remand,[4] the Court remanded certain aspects of CBP's determination as to evasion. Specifically,

the Court directed CBP to: (1) forward any and all documents collected during the investigation

and previously omitted from the record prior to its initial *de novo* review to the Office of Trade,

Regulations and Rulings (R&R); (2) review the record and ensure compliance with the public

summaries requirement in 19 C.F.R. § 165.4 and afford Plaintiff Leco and the Defendant-

Intervenor, M&B Metal Products Company, Inc. (M&B), an opportunity to submit information

and arguments responsive to any information previously omitted from the public record; and (3)

---

[1] *See* Order, Leco Supply, Inc. v. United States, No. 21-00136, (Ct. Int'l Trade Aug. 3, 2021), ECF No. 42.
[2] *See* Steel Wire Garment Hangers from the Socialist Republic of Vietnam: Antidumping Duty Order, 78 Fed. Reg. 8105 (Dep't Commerce Feb. 5, 2013); *see also* Certain Steel Wire Garment Hangers from the Socialist Republic of Vietnam: Countervailing Duty Order, 78 Fed. Reg. 8107 (Dep't Commerce Feb. 5, 2013).
[3] *See* Notice of Determination as to Evasion in EAPA Case Number (No.) 7357 (Oct. 26, 2020) (Public (Pub.) Document (Doc.) Number (No.) 474) (Determination); *see also* Administrative Review Determination (Feb. 24, 2021) (Pub. Doc. No. 774) (Admin. Review).
[4] *See* Defendant's Motion for Voluntary Remand and to Suspend the Current Briefing Schedule, Leco Supply, Inc. v. United States, No. 21-00136 (Ct. Int'l Trade July 3, 2021), ECF No. 39 (Motion for Voluntary Remand).

consider Leco's argument regarding CBP's compliance with 19 C.F.R. § 165.4(a) and the type of information for which business confidential treatment is permitted and remedy any deficiencies, as appropriate.[5]

As explained below, CBP affirms its determination that Leco entered covered merchandise into the customs territory of the United States through evasion. After reviewing the information previously omitted from R&R's initial *de novo* review, as well as additional information placed on the administrative record as part of the remand proceeding, CBP concludes that substantial evidence continues to support the finding of evasion. Further, in compliance with the Remand Order, CBP placed revised public versions, including public summaries, of business confidential documents on the administrative record, and, after requiring Leco and M&B to do the same, provided both parties an opportunity to submit rebuttal information and written arguments. Finally, CBP considered Leco's argument regarding CBP's compliance with 19 C.F.R. § 165.4(a), and as a result, revised bracketing of confidential information in several documents and asked the parties to also reconsider their requests for confidential treatment of information in their submissions. The parties were also given an opportunity to submit rebuttal information responsive to the documents where bracketing was revised.

## II.     BACKGROUND

On October 26, 2020, CBP issued an affirmative determination of evasion[6] finding that Leco's imports of steel wire hangers were entered into the United States through evasion. Based

---

[5] *See* Remand Order.
[6] In EAPA Consolidated Case Number 7357, CBP determined that 10 importers imported covered merchandise into the customs territory of the United States through evasion. *See* Determination. None of the other importers filed a timely request for administrative review. *See* Admin. Review at 2, n. 3. Leco is also the only party to the proceeding at the CIT. Thus, the remand proceeding is limited only to Leco as the sole importer who sought relief from the determination.

on the substantial evidence on the record CBP found that Leco imported merchandise subject to the AD and CVD orders on hangers from Vietnam by misrepresenting the country of origin as the Lao People's Democratic Republic (Laos).[7] R&R affirmed this determination in its administrative review.[8]

Leco appealed the administrative review determination. In challenging the administrative review and as relevant for purposes of this remand, Leco argued, in pertinent part, that it was deprived of due process. Leco asserted that while business confidential information was placed on the record, the statute and implementing regulations failed to provide any mechanism for Leco and its legal representative to adequately review the evidence on which CBP based its evasion determination.[9] Leco further alleged that CBP failed to comply with its own regulatory procedures in providing public summaries of business confidential information placed on the record.[10] Based on these arguments, in part, Leco claimed that the determination of the evasion determination was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.[11]

After filing the administrative record in response to Leco's Complaint, CBP learned that a number of documents were inadvertently omitted from the court filing, and as such, CBP

---

[7] Determination.

[8] Admin. Review. Although the Determination was based, in part, on adverse inferences applicable to the foreign manufacturer, R&R clarified that the administrative record did not support the application of adverse inferences to Leco. *See* Determination at 11; *see also* Admin. Review at 12. Nevertheless, R&R confirmed that "even without adverse inferences, the record fully and adequately supports the finding that the wire hangers are of Vietnamese origin and Leco Supply misrepresented the country of origin as Laos resulting in evasion of the payment of AD and CV duties upon importation into the United States." *Id.*

[9] *See* Complaint, Leco Supply, Inc. v. United States, Court No. 21-00136 (Ct. Int'l Trade Mar. 25, 2021) ECF No. 2, at ¶¶ 47-48.

[10] *Id.* at ¶¶ 54-55.

[11] *Id.* at ¶¶ 52, 57.

supplemented the administrative record.[12] However, after providing the supplemental

documents, CBP became aware that certain documents were inadvertently not transmitted to

R&R and thus not part of R&R's *de novo* review.[13] To remedy potential procedural deficiencies,

CBP moved for voluntary remand to allow R&R to review the documents as well as to permit

CBP an opportunity to consider whether it complied with its regulations and take any appropriate

action to remedy any potential lack of adherence.[14] In response, Leco asserted that any remand

order must require CBP to consider compliance with its regulations including whether CBP

improperly granted business confidential treatment to redacted information.[15] Leco also argued

that any remand proceeding must include an opportunity for the interested parties to submit

written arguments and evidence directly responsive to any public information or public

summaries found to have been improperly withheld from the interested parties during the

investigation.[16]

The Court remanded the matter to CBP and directed it to: (1) forward any and all documents

collected during the investigation and previously omitted from the record to R&R for

consideration; (2) review the record and ensure compliance with the public summaries

requirement in 19 C.F.R. § 165.4 and afford Leco and M&B an opportunity to submit

information and arguments responsive to any information previously omitted from the public

record; and (3) consider Leco's argument concerning CBP's compliance with 19 C.F.R. §

---

[12] *See* Defendant's Motion to Supplement the Administrative Record, Leco Supply, Inc. v. United States, Court No. 21-00136 (Ct. Int'l Trade July 22, 2021), ECF No. 34.
[13] *See* Motion for Voluntary Remand, *supra* note 4.
[14] *Id.*
[15] Response to Defendant's Motion for Voluntary Remand, Leco Supply, Inc. v. United States, Court No. 21-00136 (Ct. Int'l Trade July 30, 2021), ECF No. 40.
[16] *Id.*

165.4(a) and the type of information for which business confidential treatment is permitted, and remedy any deficiencies, as appropriate.[17]

## III.   REMAND ISSUES

### A.  Documentation Inadvertently Omitted from R&R's *De Novo* Review

Pursuant to EAPA, an importer found to have entered covered merchandise into the United States through evasion under 19 U.S.C. § 1517(c), may request a *de novo* review by R&R.[18] Any such request for administrative review must be based on facts set forth in the administrative record.[19] Likewise, any response to a request for administrative review is confined to the factual information already contained in the administrative record.[20]

In compliance with the Remand Order, the CBP Office of Trade – Trade Remedy Law Enforcement Division (TRLED) transmitted to R&R the documents that were part of the administrative record during the EAPA investigation, but which had been inadvertently omitted when the administrative record was originally transferred to R&R's for its *de novo* review.[21] Among the documents previously omitted from R&R's review were: (1) a business analysis report and supporting documents related to PNJ Import, Inc., an entity not party to the remand proceeding; (2) various Requests for Information (CBP Forms 28) sent to the importers; (3) various extension requests by the importers and corresponding responses from TRLED; (4)

---

[17] Remand Order.
[18] *See* 19 U.S.C. § 1517(f)(1); *see also* 19 C.F.R. § 165.45.
[19] 19 C.F.R. § 165.41(f).
[20] 19 C.F.R. § 165.42.
[21] *See* Admin. Review; *see also* Remand Redetermination for Enforce and Protect Act (EAPA) Consolidated Case Number 7357 (H319791) (Nov. 9, 2021), attached as an addendum. (R&R Remand Redetermination).

public versions of some financial documentation related to some of the importers; and (5) videos provided by Leco and another importer, N&M Hangers, LLC.[22]

As part of the remand proceeding, TRLED also transmitted to R&R additional submissions from both Leco and M&B. More specifically, R&R reviewed the rebuttal information that Leco submitted in response to the revised public versions of documents originally submitted and placed on the record by CBP and M&B.[23] R&R did not receive the written arguments that Leco failed to timely submit, as those arguments were not placed on the administrative record.[24] But, R&R did receive M&B's written arguments.[25] Because the arguments as to the nature and extent of protection afforded to business confidential information within public documents and the sufficiency of public summaries is not within the scope of R&R's authority in reviewing the administrative record *de novo*, those arguments were not part of R&R's decision on remand.[26]

After reviewing the previously omitted documents and additional information submitted as part of remand proceeding, including written comments to the draft remand redetermination,[27] R&R continued to affirm CBP's determination of evasion, recognizing that this finding was

---

[22] *See* Confidential Document Nos. 360-380 and Public Document Nos. 775-811, which were filed as part of the supplemental administrative record. As part of its R&R Remand Redetermination, R&R noted that while it also received photographs as part of the remand proceedings, R&R had previously reviewed those same photographs during its initial *de novo* administrative review. *See* R&R Remand Redetermination.

[23] *See* R&R Remand Redetermination at 2 (citing "Leco Supply, Inc. Objection to Revised Documents Placed on the Record by U.S. Customs & Border Protection and M&B Metal Products Company, Inc." (Sept. 15, 2021)).

[24] *See also* R&R Remand Redetermination at 2, n. 5. Although CBP granted an extension for Leco to provide written arguments, Leco failed to submit the arguments timely.

[25] *See* R&R Remand Redetermination at 2 (citing "Written Arguments in Support of Affirmative Determination of Evasion by U.S. Importer Leco Supply" (Sept. 27, 2021)).

[26] R&R specifically opined "[a]s the arguments regarding the level of redaction of the revised public documents, sufficiency of public summaries, and what constitutes business confidential lie outside of R&R's *de novo* review, Leco Supply's submissions on those matters were not considered." R&R Remand Redetermination at 2.

[27] *Id.* at 2.

supported by substantial evidence as required by 19 U.S.C. § 1517(c).[28] The true and correct copy of R&R's findings on remand is attached as an addendum.

### B.  CBP Compliance with 19 C.F.R. § 165.4

Pursuant to CBP regulations, an interested party may claim confidential treatment for information it submits in connection with an investigation initiated in accordance with 19 U.S.C. § 1517.[29] Such treatment will be granted as long as the request and submission satisfy the provisions of 19 C.F.R. § 165.4(a) and the information consists of trade secrets and commercial or financial information obtained from any person which is privileged or confidential in accordance with 5 U.S.C. § 552(b)(4).[30] Certain information cannot be protected as confidential, including, *inter alia*, the name of the party to the investigation submitting the information, name and address of the importer against whom an allegation is made, description of the covered merchandise, and the applicable AD/CVD orders.[31] To the extent that business confidential treatment is sought, the party claiming such treatment must indicate precisely which information must be protected by enclosing the relevant information within single brackets; the party must also clearly state that its submission contains business confidential information and provide an explanation of why any bracketed information is entitled to such treatment.[32] Moreover, a party must submit a public version, which is clearly marked, of any submission for which it claims business confidential treatment.[33] This public version must contain a summary of the bracketed information in sufficient detail to permit a reasonable understanding of the substance of the

---

[28] *Id*. at 4.
[29] *See* 19 C.F.R. § 165.4.
[30] *Id*.
[31] *See* 19 C.F.R. § 165.4(c).
[32] 19 C.F.R. § 165.4(a)(1).
[33] 19 C.F.R. § 165.4(a)(2).

information.[34] If summarization is not possible, the submitting party must provide an explanation to support as much.[35]

Pursuant to the Remand Order, CBP reviewed documents it previously placed on the administrative record to determine whether revisions to bracketing of confidential information was necessary and to revise the public versions of such document to include public summaries to comply with the requirements of 19 C.F.R. § 165.4(a)(1) and (a)(2). To that end, CBP also requested that the parties to the remand proceeding (1) review documents they previously submitted to determine whether any revisions to the bracketing of confidential information were necessary; and (2) revise public versions of previously submitted documents to comply with the requirements of § 165.4(a)(2). For any information previously omitted from the public record in this context, CBP afforded the parties an opportunity to submit rebuttal information and written arguments. The process for this portion of the remand proceeding is described below along with CBP's determination as to evasion.

### 1. Remand Procedure

On August 12, 2021, CBP issued a letter[36] to Leco and M&B, the parties to this remand proceeding, advising that CBP was reopening the administrative record for a limited period of time to permit the parties to submit revised business confidential and corresponding public versions of certain documents the parties had previously placed on the administrative record.[37] In order to comply with the Court's order that CBP consider Leco's argument regarding its

---

[34] *Id.*

[35] *Id.*

[36] *See* Letter from Brian Hoxie to Counsel for Leco and Counsel for M&B, Re: Leco Supply, Inc. v. United States, Court No. 21-00136 (Aug. 12, 2021) (August 12, 2021 Letter).

[37] Because TRLED determined that the foreign manufacturer only placed public versions of documents on the administrative record previously, CBP did not send the August 12, 2021 Letter to the foreign manufacturer.

compliance with 19 C.F.R. § 165.4(a), CBP requested that Leco and M&B review business confidential documents each entity previously submitted to the administrative record and provide a justification as to why any bracketed information consisted of trade secrets and confidential or commercial information subject to protection under 5 U.S.C. § 552(b)(4).[38] CBP advised the parties that if they wished to revise bracketing, a justification must also be provided, along with the applicable public versions of those documents and appropriate public summaries.[39] The parties were reminded that any revised documents should contain public summaries of any bracketed business confidential information or, to the extent that public summarization was not possible, the parties were to provide an explanation of the reasons supporting such claim.[40] CBP further advised that new certifications pursuant to § 165.4(d) were also required to the extent any revisions to the request of confidential treatment were made.[41] By way of this letter, CBP also advised the parties that it would also review the administrative record to ensure compliance with the public summaries requirements of 19 C.F.R. § 165.4(a)(2).[42] Finally, CBP stated that, as part of the remand proceedings, it would provide revised business confidential and public versions of the documents placed on the administrative record to the parties and permit an opportunity to submit rebuttal information and written arguments relevant to the revised versions.[43]

On August 18, 2021, CBP clarified that should the parties revise the bracketing of a business confidential document thereby affecting the public version, then the entire document was required to be resubmitted with an updated cover letter and date.[44] CBP also advised the parties

---

[38] *See also* 19 C.F.R. § 165.4(a).
[39] *See, e.g.*, August 12, 2021 Letter, Attachments 1-2.
[40] *See* August 12, 2021 Letter.
[41] *Id.*
[42] *Id.*
[43] *See id.*
[44] *See* Email from Patricia Tran to Counsel for Leco and Counsel for M&B, Re: REMAND CONS 7357 – Leco Supply, Inc. v. United States, Court No. 21-00136 (Aug. 18, 2021; 13:09 EDT) (August 18, 2021 Email). Note, by

to submit a summary of the location and description of the revisions as well as a new

certification of accuracy.[45]

On August 20, 2021, Leco and M&B submitted documents either revising the bracketing of

their business confidential information or providing an explanation as to why such revision was

unnecessary.

On August 27, 2021, Leco and M&B submitted revised public versions of their documents

which included public summaries of business confidential information.

On September 3, 2021, CBP notified the parties that, on September 8, 2021, it would place

revised business confidential and public versions of documents on the administrative record.[46]

CBP advised the parties that they would be permitted to submit rebuttal information relevant to

the revised public versions placed on the administrative record as part of the remand

proceedings. The deadline for the submission of rebuttal information was September 15, 2021, at

5:00 p.m. Eastern Daylight Time (EDT).[47] CBP further clarified that the submission of this

rebuttal information was "an opportunity for parties to the investigation to submit information

they would have submitted if the parties had access to the information included in the revised

public versions of these documents during the investigation."[48] In the same email, CBP also set a

_____

way of this email, CBP advised that the "{p}arties should be able to see all business confidential and public versions
{of documents} regardless of who filed them" noting that both Leco and M&B were subject to a judicial protective
order and that service would occur through CBP's electronic case management system (CMS). CBP ultimately
recognized that access to the business confidential information was permitted in error and notified the parties on
October 20, 2021. *See* Email from Kristina Horgan to Counsel for Leco and Counsel for M&B, Re: REMAND
CONS 7357 – Court No. 21-00136 (Oct. 20, 2021; 17:49 EDT). Only the business confidential information already
made available to counsel representing the parties by filing to the Court's ECF system was shared with counsel
during remand. No new business confidential documents were filed in CMS during the remand proceeding.
[45] *See* August 18, 2021 Email.
[46] *See* Email from Patricia Tran to Counsel for Leco and Counsel for M&B, Re: REMAND CONS 7357 – Leco
Supply, Inc. v. United States, Court No. 21-00136 (Sept. 3, 2021; 10:28 EDT) (September 3, 2021 Email).
[47] *See* September 3, 2021 Email. Note, CBP referred to times as "EST," but the times should have been reflected as
"EDT" and so for the purposes of this remand redetermination, "EDT" is used.
[48] *See* September 3, 2021 Email.

deadline for submission of written arguments as September 22, 2021 at 5:00 p.m. EDT, and CBP

reiterated such arguments, in the remand context, were "an opportunity for the parties to the

investigation to submit arguments in response to the revised public versions of documents placed

on the administrative record."[49] CBP advised that it would not accept any submission unrelated

to the revised public versions.[50] Finally, CBP reminded the parties that they could request

confidential treatment pursuant to 19 C.F.R. § 165.4, and reiterated that such a submission

should be accompanied by a public summary.[51]

On September 8, 2021, CBP placed revised business confidential and public versions of the

documents with public summaries of confidential information on the administrative record.

On September 15, 2021, Leco submitted rebuttal information.[52] The submission included

information purportedly rebutting CBP's findings concerning the certificates of origin,

Association of Southeast Asian Nations (ASEAN) import/export declarations, truck bills, and the

production capacity of the foreign manufacturer. Leco also submitted publicly sourced

information available from various websites. M&B did not submit rebuttal information. On

September 15, 2021, Leco submitted a request for an extension to file written arguments.[53]

---

[49] *Id.*
[50] *See id.*
[51] *See id.*
[52] Letter from Counsel for Leco to Patricia Tran, Re: EAPA Cons. Case No. 7357: Remand, Leco Supply, Inc. Objection to Revised Documents Placed on the Record by U.S. Customs & Border Protection and M&B Metal Products Company, Inc. (Sept. 15, 2021) including Ex. 1-8; *see also* Ex. 9-21 (collectively, Leco Rebuttal Information).
[53] *See* Letter from Counsel for Leco to Patricia Tran, Re: EAPA Cons. Case No. 7357: Remand, Leco Supply, Inc. Request for Extension of Time to Submit Written Arguments (Sept. 15, 2021) (requesting an extension until Monday, September 27, 2021) (Leco Extension Request).

On September 17, 2021, CBP granted the requested extension and required the parties to submit their arguments by September 27, 2021 at 10:00 a.m. EDT.[54]

On September 27, 2021, at 8:29 a.m. EDT, M&B filed written arguments.[55] Leco failed to submit written arguments before the specified deadline, and thus, CBP rejected the submission.[56]

On October 26, 2021, CBP issued a draft remand determination to the parties informing them that any comments were due no later than November 2, 2021 at 5:00 p.m. EDT.[57] Both parties submitted their written comments by the stated deadline.[58]

## 2. Analysis

CBP complied with the Court's Remand Order in conducting the remand proceeding. The statute and applicable regulations do not provide for a mechanism, such as an administrative protective order (APO), for disclosure of confidential business information to interested parties.[59] As such, CBP is not authorized to disclose business confidential information to interested parties or their authorized representatives. Indeed, the Court did not order CBP to

---

[54] *See* Email from Patricia Tran to Counsel for Leco and Counsel for M&B, Re: REMAND CONS 7357 – Leco Supply, Inc. v. United States, Court No. 21-00136 (Sept. 17, 2021; 14:58 EDT) (CBP Email Granting Extension).
[55] *See* Letter from Counsel for M&B to Trade Remedy Law Enforcement Directorate, Re: REMAND CONS 7357: Leco Supply, Inc. v. United States, Ct. No. 21-00136: Steel Wire Garment Hangers Imported from Laos: Written Argument of M&B Metal Products Company, Inc. (Sept. 27, 2021).
[56] *See* Email from Patricia Tran to Counsel for Leco and Counsel for M&B, RE: REMAND CONS 7357 – Leco Supply, Inc. v. United States, Court No. 21-00136 (Sept. 27, 2021; 17:38 EDT). Leco attempted to file their written arguments at 4:36 p.m. Eastern, and so TRLED rejected the untimely submission. Leco contested CBP's rejection; however, the CBP determined that because Leco had sufficient notice of the extended deadline it would not consider any late submission, and as such, did not place the submission on the administrative record on remand.
[57] *See* Order, Leco Supply, Inc. v. United States, No. 21-00136, (Ct. Int'l Trade Oct. 25, 2021), ECF No. 46.; *see also* Email from Patricia Tran to Counsel for Leco and Counsel for M&B, RE: REMAND CONS 7357 – Court No. 21-00136 – WRITTEN ARGUMENTS TO DRAFT DETERMINATION (Oct. 26, 2021; 17:07 EDT) (October 26, 2021 Email).
[58] *See* Leco Supply Inc. Comments on Draft Remand Redetermination (Nov. 2, 2021) (Leco Comments); *see also* Letter from Counsel for M&B to TRLED, Re: Leco Supply, Inc. v. United States, Ct. No. 21-00136: Written Argument of M&B Metal Products Company, Inc. on Draft Remand Redetermination (Nov. 2, 2021) (M&B Comments).
[59] *See generally*, 19 U.S.C. § 1517; 19 C.F.R. Part 165.

release business confidential information.[60] Rather, the Court required CBP to adhere to its regulations in determining compliance with the provisions of 19 C.F.R. § 165.4, including reviewing the public summaries as well as the treatment of business confidential confirmation, and remedy any deficiencies in accordance with its regulations.[61] The Court also mandated that CBP provide an opportunity to submit information and written arguments responsive to information previously omitted from the public record.[62] CBP adhered to the applicable regulations and satisfied the conditions of the Remand Order.

CBP promulgated 19 C.F.R. § 165.4 with a goal to protect business confidential information while simultaneously ensuring transparency of the investigation such that an alleged evader is notified of the allegation and parties to the investigation are able to participate in the proceeding.[63] While CBP's regulations allow parties to claim confidential treatment over information submitted to CBP, parties must also submit a public version, including a public summary of such confidential information, as appropriate.[64] As part of the remand process, CBP complied with its regulations by requiring the parties to submit revised public versions of administrative record documents that complied with § 165.4(a)(2), allowing parties to submit information they would have submitted if they had access to the public summaries during the original investigation, and permitting the parties to submit written arguments based on the public summaries. CBP finds that the public summaries that the parties submitted satisfied the requirements of §165.4(a)(2).

---

[60] *See* Remand Order.
[61] *Id.*
[62] *Id.*
[63] Investigation of Claims of Evasion of Antidumping and Countervailing Duties, U.S. Customs and Border Protection, 81 Fed. Reg. 56,477, 56,479 (Aug. 22, 2016)
[64] *See* 19 C.F.R. § 165.4; *see also* Investigation of Claims of Evasion of Antidumping and Countervailing Duties, 81 Fed. Reg. at 56,479.

The revised public versions of CBP-generated administrative record documents comply with the public summary requirements under 19 C.F.R. § 165.4(a)(2). Specifically, § 165.4(a)(2) requires that the public summary of confidential business information contain "sufficient detail to permit a reasonable understanding of the substance of the information."[65] On remand, CBP provided revised public versions, including public summaries, for a number of documents. For example, analysis reports for which CBP had previously claimed were not capable of summarization [66] now have the relevant public summary.[67]

### M&B Submissions

M&B submitted revised bracketing for exhibits submitted as part of the allegation.[68] Notably, of the 34 exhibits that M&B originally submitted, there were only two for which it requested confidential treatment. Out of those two confidential documents, M&B submitted a revised business confidential version for one of those documents on August 20, 2021.[69] On remand, CBP determined that M&B provided an adequate explanation requesting business confidential treatment for its documents, as well as certain pages of the narrative in its allegation. In CBP's view, the public versions with public summaries, as well as explanation justifying the continued and revised confidential treatment,[70] permitted a reasonable understanding of the underlying

---

[65] 19 C.F.R. § 165.4(a)(2).

[66] *Compare* Pub. Doc. No. 41, *with* 09-08-2021 – DCNTAC – Analysis Report Leco (REMAND CONS 7357) – PV.pdf (explaining that the document is not capable of public summary because the document is an "Analysis Report" containing import data from CBP systems, such as shipper, country, and HTSUS – generally dated FY2014 through FY2019).

[67] *Compare* Pub. Doc. No. 472 *with* Memorandum to the Executive Director for the Trade Remedy and Law Enforcement Directorate from the Field Director for Regulatory Audit and Agency Advisory Services (RAAAS) – Chicago, IL, Subject: Summary of Factual Information Regarding Enforce and Protect Act (EAPA) Consolidated Case 7357 (Sept. 16, 2020) (RAAAS Summary of Factual Information) (revised Sept. 9, 2021) (this document was rebracketed, having been previously bracketed in full, and now contains public summaries for any business confidential information).

[68] *See* Letter from Counsel for M&B to TRLED, Subject: Leco Supply, Inc. v. United States, Court No. 21-00136 (EAPA Case Number: Remand Cons. 7357): M&B's Addendum to EAPA Allegation (Aug. 20, 2021); *see also* M&B Exhibits (revised Aug. 20, 2021) (collectively M&B August 20, 2021 Letter).

[69] *See* M&B August 20, 2021 Letter at Ex. 7.

[70] *See* M&B August 20, 2021 Letter at 2-4.

substance of the information. As such, CBP did not request that M&B further revise its bracketing given that CBP found the request for confidential treatment and public summaries sufficient.

In submissions dated August 23, and September 15, 2021, Leco objected to the revised bracketing provided by both M&B and CBP on their respective documents.[71] Leco claimed that the revised bracketing did not qualify for business confidential treatment under 19 C.F.R. § 165.4(a). In accordance with the regulation, CBP will afford business confidential treatment to information that "consists of trade secrets and commercial or financial information obtained from any person, which is privileged or confidential in accordance with 5 U.S.C. § 552(b)(4)."[72] As an initial matter, CBP has limited information that would allow it to question claims to confidential treatment by a third party and relies on the justification provided by the parties when determining whether to grant a claim to such confidential treatment under 165.4(a). 5 U.S.C. 552(b)(4) exempts from disclosure information constituting "trade secrets and commercial or financial information obtained from a person {that is} privileged or confidential."[73] M&B provided sufficient explanation as to why the information it sought to withhold as confidential qualified as "commercial or financial information."[74] As a result, CBP granted M&B's request for

---

[71] *See* Letter from Counsel for Leco to Patricia Tran, Re: EAPA Cons. Case No. 7357: Remand, Leco Supply, Inc. Response to Request for Review of Business Confidential Records (Aug. 23, 2021) (Aug. 23, 2021 Objections) (Leco objected to M&B's claim for business confidential treatment of certain submissions asserting that the information did not constitute trade secrets or confidential commercial or financial information as required by 19 C.F.R. § 165.4(a)); *see also* Letter from Counsel for Leco to Patricia Tran, Re: EAPA Cons. Case No. 7357: Remand, Leco Supply, Inc. Objection to Revised Documents Placed on the Record by U.S. Customs & Border Protection and M&B Metal Products Company, Inc. (Sept. 15, 2021) (Sept. 15, 2021 Objections) (Leco objected to M&B's revised submissions of business confidential and public version documents and also objected to revised documents that CBP placed on the record asserting that the bracketed information did not qualify for business confidential treatment under 19 C.F.R. §§ 165.4(a), (e)).
[72] 19 C.F.R. § 165.4(a).
[73] 5 U.S.C. § 552(b)(4).
[74] *See* M&B August 20, 2021 Letter at 2-4.

confidential treatment for portions of its submission[75] and maintains that, as described below, the revised versions of the CBP-generated documents placed on the record also comply with the regulations.

### Leco Submissions

On remand, Leco revised bracketing for 27 business confidential documents.[76] Leco explained that the information that it bracketed consisted of confidential commercial information pertaining to Leco, its foreign manufacturer, or other business partners.[77] Further, Leco bracketed 11 documents in their entirety and provided a description of the bracketed information along with a rationale supporting the bracketing.[78] For example, regarding those 11 documents, Leco explained that "{t}he identity of the individuals and companies with whom {Leco} corresponds in the course of business, and the actual content of such correspondence, is confidential commercial information, the disclosure of which is likely to cause substantial competitive harm to {Leco}."[79] Leco further noted that certain portions of the email correspondence did not include confidential commercial information, but those portions "consist only of the email headers exclusive of the identity of the recipient, and as such provide no substantive information."[80] Leco also bracketed information contained in invoices it issued to its U.S. wire hanger customers, including the identity of the customers as well as the type, quantity,

---

[75] M&B also provided public versions of the business confidential information. *See* Letter from Counsel for M&B to TRLED, Subject: Leco Supply, Inc. v. United States, Court No. 21-00136 (EAPA Case Number: Remand Cons. 7357): M&B's Addendum to EAPA Allegation (Aug. 27, 2021); *see also* M&B Exhibits (revised Aug. 27, 2021) (collectively, M&B August 27, 2021 Letter).

[76] *See* Letter from Counsel for Leco to Patricia Tran, Re: EAPA Cons. Case No. 7357: Remand, Leco Supply, Inc. Response to Request for Review of Business Confidential Records (Aug. 20, 2021) (Leco August 20, 2021 Letter), at Ex. 1.

[77] Leco August 20, 2021 Letter, at 2.

[78] *Id.* at 2-3.

[79] *Id.* at 3.

[80] *Id.*

and price of the hangers.[81] Leco argued that all of this bracketed information was "confidential commercial information, the disclosure of which is likely to cause substantial competitive harm to {Leco}."[82] Leco acknowledged that TRLED permitted the bracketing of certain documents in their entirety because "page-by-page redaction would place a significant burden on {Leco} without providing any material benefit to the other interested parties," but that a "detailed public summary thereof" was required.[83]

On August 27, 2021, Leco submitted revised public versions of documents previously included as public versions on the administrative record.[84] Leco advised that it modified or supplemented public summary information as appropriate.[85] Leco further asserted that "{w}here the nature of the bracketed information is obvious from its context within the document, no public summary is provided."[86] Leco ultimately provided revised public versions for 72 documents. After reviewing the submissions, CBP found that Leco's revised bracketing and public summaries met the requirements of 19 C.F.R. § 165.4.

***Information Placed on the Administrative Record by CBP***

On remand, CBP reviewed treatment of confidential information contained within 21 business confidential documents previously placed on the administrative record, specifically the following Business Confidential (BC) Doc. Nos.: 33 through 35, 54, 61 through 63, 67, 73, 258 through 259, 263, 270, 316 through 318, 326, 331 through 332, 359, and 368. CBP reviewed the documents in light of the business confidential information submitted by the importers, supplier,

---

[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *See* Letter from Counsel for Leco to Patricia Tran, Re: EAPA Cons. Case No. 7357: Remand, Leco Supply, Inc. Response to Request for Review of Business Confidential Records (Aug. 27, 2021) (Leco August 27, 2021 Letter).
[85] Leco August 27, 2021 Letter, at 1.
[86] *Id.* at 2.

and other relevant parties, and revised bracketing in 14 documents and determined that changes to the bracketing were unnecessary for seven of the documents.

For the seven documents, CBP determined that certain documents it previously placed on the administrative record did not require revised bracketing. The confidential information within these documents was properly bracketed when initially placed on the administrative record. Generally speaking, the bracketed information contained in these documents was pertinent to the foreign manufacturer's production capabilities and workforce details based on M&B's market research; importer-specific entry data from CBP systems, including shipper, country, and Harmonized Tariff Schedule of the United States classification numbers for the fiscal years 2004 through 2019; information (such as the name, address, and email information) regarding the foreign exporters; portions of entry numbers; container, bill, and conveyance information; and manufacturer/seller/shipper and importer of record identification information. CBP withheld such information, and continued to do so on remand, because a submitting party requested business confidential treatment, the data was business confidential information belonging to importers sourced from CBP systems, or the bracketing was already minimal and included such detailed header information for which the description of the underlying bracketed information was self-explanatory.[87]

CBP also reviewed the public versions of documents previously placed on the administrative record and provided revised public summaries as appropriate. CBP reviewed the following Public Doc. Nos.: 41 through 43, 57, 63, 67, 72, 353, 362, 369, 472 through 475, 497, 508

---

[87] Leco submitted objections to CBP's revisions. *See* Aug. 23, 2021 Objections; *see also* Sept. 15, 2021 Objections. While Leco provided citations to the specific information it believed to not fall within the scope of 19 C.F.R. § 165.4, Leco did not argue how the alleged failure of CBP to provide the information it contested as business confidential in nature harmed its position in arguing against the determination of evasion on remand.

through 511, 770, and 783. CBP revised the public summaries for all the documents except for

two. CBP is required to provide a public summary of business confidential information for any

documents it places on the administrative record which contains business confidential

information, and CBP complied with its regulations on remand.[88] The public summaries that

CBP provided for the documents listed above contain "sufficient detail to permit a reasonable

understanding of the substance of the information."[89] For example, when CBP first placed the

RAAAS Summary of Factual Information on the administrative record, CBP bracketed the entire

document as business confidential and noted that the document was not capable of public

summary.[90] However, on remand, CBP reviewed the document line by line, comparing to the

claims for business confidential treatment made by interested parties in corresponding source

submissions and provided revised bracketing of the document, including public summaries, with

the information redacted clearly described within those brackets. CBP indicated that the redacted

information contained partial entry number information, dates of entry, names of entities that

CBP received certain documentation from and the type of that documentation. The public

summaries and the context surrounding the brackets were sufficient to permit a reasonable

understanding of the substance of information.

On the other hand, CBP did not revise the public summaries for Public Doc. Nos. 511 and

783 previously submitted to the Court as part of the initial and supplemental administrative

record filings. Given that the unbracketed information – specifically, the document headings –

provide sufficient information for the parties to discern the nature of the underlying bracketed

---

[88] 19 C.F.R. §165.4(e)

[89] 19 C.F.R. § 165.4(a)(2).

[90] *Compare* RAAAS Summary of Factual Information (revised Sept. 9, 2021) *with* Pub. Doc. No. 472; s*ee also* BC Doc. No. 316. Note, the RAAAS Summary of Factual Information is a comprehensive recitation of information placed on the administrative record – meaning that RAAAS relies on source documents submitted by interested parties in drafting such a document.

information, there was ample detail provided to allow the parties to respond with any necessary arguments. Indeed, Public Doc. No. 511 contains the following underlying bracketed information: entry number, container number, bill number, conveyance carrier, conveyance name, conveyance voyage, bill weight and bill weight UOM (i.e., unit of measure). However, visible on that document is the last four digits of each entry number. Likewise, Public Doc. No. 783 is a CBP Form 28 request for information. Immediately above the bracketed information is a description of the nature of the underlying substantive content.[91]

As described above, CBP's public summaries in revised public versions are sufficiently detailed to permit a reasonable understanding of the substance of the redacted information, and as such, CBP has met the requirements of 19 C.F.R. §165.4(a)(2).

## IV.    REBUTTAL INFORMATION

As noted above, as part of the remand proceedings, CBP advised the parties of the opportunity to submit rebuttal information to the extent the revised public versions of documents contained information to which the parties did not have access to during the investigation.[92] On remand, Leco submitted rebuttal information in order to refute CBP's determination of evasion.[93] Specifically, Leco asserted that the information is sufficient to rebut facts described in the RAAAS Summary of Factual Information.[94] CBP disagrees.

Although Leco submitted information that it claimed was sufficient to address CBP's concerns about evidence previously placed on the record relevant to certificates of origin, ASEAN import/export declarations, truck bills, and manufacturer production capacity, CBP

---

[91] *See, e.g.,* Pub. Doc. No. 783, Request for Information (CBP Form 28) (Nov. 5, 2019), at Boxes 3, 5.
[92] *See, e.g.,* August 12, 2021 Letter; *see also* Remand Order.
[93] *See* Leco Rebuttal Information.
[94] *See id.*; *see also* RAAAS Summary of Factual Information (revised Sept. 9, 2021).

disagrees with Leco's assertion that such information was actually sufficient to reverse its determination in light of other record evidence.[95] Because the foreign manufacturer did not participate in the investigation, CBP was unable to examine the manufacturer's accounting or production records to confirm its production of hangers occurred in Laos. CBP provided multiple opportunities to the foreign manufacturer to respond to CBP's request for information. However, other than receiving requests for extensions and limited information in response to CBP's request,[96] CBP did not receive any substantive response directly from the foreign manufacturer applicable to its production capacity and did not receive any documentation from the foreign manufacturer concerning actual production, raw material purchases, inventory, employees' records, movement of finished goods, and any financial records.[97] In addition, certain rebuttal information that Leco submitted on remand to support its assertion the foreign manufacturer was capable of producing the number of hangers in Laos that it actually exported was insufficient to support a reversal of the determination of evasion. For example, Leco cited to YouTube videos to support its assertion that a single employee could monitor and manage several wire hanger forming machines simultaneously. But, given that these videos were not of the foreign manufacturer's facility or employees, they do not constitute satisfactory evidence sufficient to reverse CBP's finding of evasion. Further, given the totality of information on the administrative record, including Leco's acknowledgement that it met with representatives of the foreign manufacturer in Vietnam[98] and CBP's recognition that those same representatives of the foreign

---

[95] *See, e.g.,* RAAAS Summary of Factual Information (revised Sept. 9, 2021) consists of information already placed on the administrative record. CBP relies on the actual source documents in the administrative record to analyze whether evasion is occurring in any specific investigation. *See supra* note 90.

[96] *See* Pub. Doc. No. 67, Request for Information to Truong Hong (Feb. 11, 2020); *see also* Pub. Doc. 86, Information Required from Truong Hong (placed on the administrative record on Mar. 10, 2020).

[97] *See, e.g.,* Determination at 8-9.

[98] *See* EAPA Cons. Case No. 7357 Steel Wire Garment Hangers, Leco Supply Inc. Response to Supplemental Request for Information (RFI), Original Response Due Date: 5 P.M., Eastern Time, Thursday, July 2, 2020 (rebracketed and resubmitted 5 P.M., Eastern Time, Friday, August 20, 2021) at Response to Question #12.

manufacturer were involved in the Department of Commerce's AD/CVD investigation on behalf of a Vietnamese-based entity,[99] CBP continues to doubt the authenticity of certain information, such as the certificates of origin. Indeed, while Leco attempted to support the legitimacy of these documents on remand by providing information about the specific issuer, Leco also conceded that the issuer does not physically inspect production facilities, and instead, issues the certificates only upon inspection of documentation provided by the exporter.[100] Because substantial evidence continues to support CBP's findings, CBP affirms its determination of evasion.

## V.      COMMENTS FROM PARTIES

As part of the remand proceedings, on October 26, 2021, CBP issued a draft remand redetermination and afforded the parties an opportunity to comment.[101] Both parties provided comments by the required deadline.[102] M&B's Comments supported CBP's procedures and findings on remand, while Leco's Comments were in opposition.

### M&B Comments

M&B asserted that CBP complied with the Remand Order inasmuch as CBP reviewed requests for confidential treatment of information placed on the administrative record and permitted the parties the opportunity to reconsider such treatment and submit any relevant comments.[103] M&B argued that CBP properly concluded that substantial evidence supported the determination of evasion.[104] M&B also acknowledged that CBP reviewed the public versions and public summaries on the administrative record affording the parties an opportunity to revise

---

[99] Determination at 7; *see also* M&B Additional Submission of Factual Information (July 27, 2020), Pub. Doc. No. 758, at Ex. 3.
[100] *See* Leco Rebuttal Information at 3-4.
[101] *See* October 26, 2021 Email.
[102] *See* M&B Comments; *see also* Leco Comments.
[103] M&B Comments at 2.
[104] *See, e.g., id.* at 4.

and comment on any revised documents.[105] The parties were also permitted to submit rebuttal

information in response to any information previously omitted from the administrative record.[106]

Finally, M&B observed that TRLED forwarded to R&R the revised documents, rebuttal

information, comments from the parties, and documents previously omitted from R&R's *de novo*

review.[107]

### *Leco Comments*

Leco objected to the draft remand redetermination on several grounds.[108] Leco alleged that,

first, CBP failed to remedy material deficiencies concerning bracketing of business confidential

information in accordance with 19 C.F.R. § 165.4.[109] Second, Leco claimed that CBP's decision

not to accept its written arguments during the remand proceeding was arbitrary, capricious, and

abuse of discretion.[110] Third, Leco alleged that CBP's draft remand results mischaracterize the

rebuttal information that Leco submitted.[111] Finally, Leco argued that CBP's continued

determination of evasion is not supported by substantial evidence and is, therefore, arbitrary,

capricious, an abuse of discretion and otherwise not in accordance with law.[112] Leco insists that

the final remand redetermination should be revised to reflect a finding that no substantial

evidence of evasion exists.[113] CBP disagrees with Leco's assertions for the reasons set forth

below.

### *CBP Complied with the Remand Order Regarding Information Subject to Business Confidential Treatment*

---

[105] *Id.* at 2.
[106] *Id.*
[107] *Id.*
[108] Leco Comments at 1.
[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *Id.*
[113] *Id.*

Pursuant to the Remand Order, CBP was required to consider Leco's arguments concerning CBP's compliance with 19 C.F.R. § 165.4(a) and the type of information for which business confidential treatment is permitted.[114] CBP was further required to remedy any deficiencies as appropriate.[115] Leco claimed that CBP did not remedy material deficiencies relevant to 19 C.F.R. § 165.4 concerning the bracketing of business confidential information.[116] More specifically, Leco argued that the draft remand redetermination ignored continued violations of 19 C.F.R. §§ 165.4(a) and (e).[117] CBP disagrees.

As discussed above, CBP does not have an APO mechanism. However, CBP complied with its regulations concerning the treatment of business confidential information. Because there is no APO mechanism, and in order to comply with the Trade Secrets Act,[118] CBP must be cautious in exercising its discretion whether to reject a submission if there is a possibility the information is trade secrets or commercial or financial information.

Leco argued that M&B's rebracketing did not comply with CBP's regulations, and specifically, M&B's revised confidential documents contained information that was not subject to business confidential treatment under 19 C.F.R. § 165.4(a) because it was from public sources.[119] Leco took issue with the fact that CBP relied on M&B's justification for the requested treatment highlighting that "{b}ecause there is no mechanism to allow parties to view information for which business confidential treatment is claimed, the other parties must rely entirely on CBP to ensure they are not being improperly denied access to information that could be highly relevant to the proceedings."[120] CBP disagrees with Leco's analysis and its claim that

---

[114] Remand Order.
[115] *Id.*
[116] Leco Comments at 1.
[117] *Id.* at 2.
[118] *See, e.g.,* 18 U.S.C. § 1905.
[119] Leco Comments at 2-3.
[120] *Id.* at 3-4.

M&B's rebracketing did not comply with the applicable law. After reviewing the rebracketed

information for which M&B requested business confidential treatment and relying on M&B's

articulated rationale for the necessity of such treatment,[121] as well as M&B's rationale explaining

the revisions to the public versions of its documents,[122] and corresponding certifications,[123] CBP

had no basis, under the applicable law and its regulations, to reject M&B's submission. In

requiring the parties, on remand, to review their claims for business confidential treatment and

provide a justification for any revised bracketing, along with applicable public versions, and

affording the parties an opportunity to submit information and arguments responsive to any

information previously omitted from the public record,[124] CBP complied with the Remand

Order.

Leco further argued that CBP's rebracketing of its own documents did not comply with 19

C.F.R. § 165.4.[125] Leco claimed that CBP failed to provide the rationale as to why information in

the 14 rebracketed business confidential documents qualifies for business confidential

treatment.[126] The Court required CBP to consider Leco's argument "regarding CBP's

compliance with the 19 C.F.R. § 165.4 and the type of information for which business

confidential treatment is permitted, and remedy any deficiencies, as appropriate{.}"[127] CBP's

regulations require that any information it places on the information include a public summary of

any business confidential information.[128] Any public version of business confidential

information placed on the record must "contain a summary of the bracketed information in

---

[121] *See* M&B August 20, 2021 Letter at 3-4.
[122] *See* M&B August 27, 2021 Letter at 2-3.
[123] *See*, *e.g.*, M&B August 27, 2021 Letter.
[124] *See* August 12, 2021 Letter.
[125] Leco Comments at 4-6.
[126] *Id.* at 5.
[127] Remand Order.
[128] 19 C.F.R. § 165.4(e).

sufficient detail to permit a reasonable understanding of the substance of the {bracketed} information."[129] As stated above, CBP revised the bracketing in 14 documents and determined that changes to the bracketing were unnecessary for seven of the documents and reviewed and revised public versions, including public summaries, as appropriate. A review of the documents Leco cites as problematic reveals that the bracketed information does fall within the scope of 19 C.F.R. § 165.4(a) inasmuch as the bracketed information consists of "trade secrets and commercial or financial information obtained from any person, which is privileged or confidential in accordance with 5 U.S.C. § 552(b)(4)."[130] For example, when CBP revised the bracketing for the RAAAS Summary of Factual Information, CBP rebracketed information for which parties to the investigations had requested business confidential treatment in their submissions.[131]

Leco also alleged that the draft remand redetermination did not respond to its objections.[132] CBP submits that it reviewed Leco's objections but that the arguments contained therein were not persuasive for CBP to further revise any bracketing in the business confidential versions or further revise any public versions that CBP placed on the administrative record. In its comments, Leco further argues:

> [P]ublic summarization, however thorough, does not retroactively authorize or excuse the redacting of information that does not qualify for business confidential treatment. By the terms of the regulation, information may only be redacted if it meets the definition of a "trade secret" or "confidential commercial or financial information;" if it does not, it is not permitted to be redacted. The requirements with regard to public summary only come into play if and when there is a legitimate basis under the regulation to redact information.[133]

---

[129] 19 C.F.R. § 165.4(a)(2).
[130] 19 C.F.R. § 165.4(a).
[131] *See, e.g.,* RAAAS Summary of Factual Information at 10 (revised Sept. 8, 2021).
[132] Leco Comments at 5.
[133] *Id.* at 6.

Again, CBP disagrees with Leco's assertions and analysis. CBP reviewed Leco's arguments concerning business confidential treatment and remedied the deficiencies as directed in the Remand Order. CBP reviewed each document it placed on the record and bracketed only that information which it determined must be afforded business confidential treatment under its regulations. For that information it did determine warranted business confidential treatment, CBP provided public versions and, where appropriate, public summaries sufficient "to permit a reasonable understanding of the substance of the information."[134] Leco has been afforded an opportunity to submit rebuttal information and respond to the evidence CBP placed on the administrative record in this matter.

### CBP Was Not Required to Accept Leco's Untimely Written Arguments on Remand

Leco asserted that CBP was not permitted to reject its written arguments, claiming the rejection was arbitrary, capricious, and an abuse of discretion.[135] CBP disagrees. Compliance with CBP timeframes is required by regulation.[136] CBP may extend *regulatory* time limits for *good cause*.[137] Absent extraordinary circumstances, any requests for such an extension must be submitted no less than three business days before the relevant time limit expires.[138] CBP has discretion to grant or deny a request for an extension and to determine what constitutes extraordinary circumstances and good cause.[139]

First, and most importantly, procedures relevant to any administrative *remand* proceedings are not set forth in the regulations. Rather, CBP is bound by the terms of any relevant remand

---

[134] 19 C.F.R. § 165.4(a)(2).
[135] Leco Comments at 7.
[136] *See, e.g.,* 19 C.F.R. § 165.5(c); *see also* 19 U.S.C. § 1517(b) (specifying various statutory timeframes applicable to EAPA investigations generally).
[137] 19 C.F.R. § 165.5(c)(1) (emphasis added).
[138] *Id.*
[139] *Id.*

order. In this case, at the time Leco submitted its written arguments, the Remand Order specified that CBP's remand redetermination was due on or before November 1, 2021.[140] Thus, CBP had a very limited timeframe in which to work with regard to any requests for extension, and in fact, Leco's submission was late *even after* CBP had already granted an initial extension for the submission of written arguments.[141] Second, even assuming the deadlines on remand were within CBP's authority to indiscriminately extend and CBP's regulations were applicable, there were no extraordinary circumstances justifying Leco's request for a second extension after its written arguments were already past due. Indeed, Leco concedes that its untimely submission was the result of "an internal calendaring error."[142] Leco should have taken care to read the communications from CBP and calendar any due dates accordingly. Third, and again assuming CBP had the unlimited ability to extend the remand process, CBP was within its discretion to determine that a "mis-calendaring" of the deadline did not constitute good cause to justify an additional extension. Finally, and again assuming the provisions of 19 C.F.R. § 165.5(c)(1) were applicable to the remand proceeding, CBP lawfully exercised its discretion in denying the second request extension and rejecting Leco's untimely submission.[143] Leco's allegation that it was "significantly prejudiced by CBP's refusal to place its written arguments on the record"[144] ignores the fact that CBP was bound to adhere to the timeframe set forth in the remand order and does not sufficiently explain why Leco was denied due process in these proceedings, especially where it had already been afforded one extension and was also provided an opportunity to comment on the draft remand redetermination.[145]

---

[140] Remand Order.
[141] *See* Leco Extension Request; *see also* CBP Email Granting Extension.
[142] Leco Comments at 6-7.
[143] 19 C.F.R. § 165.5(c)(2).
[144] Leco Comments at 7.
[145] *See* October 26, 2021 Email.

***CBP Considered Leco's Rebuttal Information***

Leco asserts that CBP mischaracterized its rebuttal information.[146] To the extent Leco

requests that CBP clarify the underlying nature of the rebuttal information submitted on remand,

CBP has done so.[147] More specifically, CBP clarifies that Leco's submission, dated September

15, 2021, included information that Leco believed was sufficient to rebut CBP's findings

regarding the authenticity and "concerns" with respect to certain documentation as well as the

production capacity of the foreign manufacturer.[148]

Nevertheless, CBP disagrees that the information that Leco submitted was actually sufficient

to rebut the determination of evasion. Although Leco attempts to attack the credibility of certain

information contained within the RAAAS Summary of Factual Information,[149] its arguments are

unpersuasive. For example, Leco argues that CBP should accept its rebuttal information in the

form of videos pertaining to the operation of multiple hanger forming machines while conceding

that the videos are not filmed at the foreign manufacturer's facility.[150] CBP finds that these

videos have no probative value with respect to the operations of the foreign manufacturer,

because the videos do not depict the facilities of the foreign manufacturer and the origin of the

videos, publicly available on YouTube, is unclear.[151] CBP remains unpersuaded that Leco's

rebuttal information was sufficient to reverse the determination of evasion. CBP disagrees with

Leco's assertion that CBP "misunderstood the purpose" of its rebuttal information.[152] Instead,

CBP simply afforded Leco's rebuttal information the weight it deserved in light of the totality of

substantial evidence demonstrating evasion contained within the administrative record.

---

[146] Leco's Comments at 7.
[147] *See supra* text pp. 11, 20-21.
[148] Leco Comments at 8-9.
[149] *Id.* at 9-10.
[150] *Id.* at 9.
[151] *See, e.g.,* Leco Rebuttal Information at 11-12.
[152] Leco Comments at 10.

### *CBP's Continued Determination of Evasion is Lawful and Supported by Substantial Evidence*

Leco claims that "the record evidence on remand contains not even a scintilla of evidence of evasion."[153] CBP disagrees and submits that such an assertion is a gross mischaracterization of the information contained within the administrative record. EAPA requires that any determination of evasion be based on substantial evidence,[154] and Leco concedes that the substantial evidence is a relatively low standard.[155]

Leco asserted that the record evidence is consistent with a finding that the foreign manufacturer had sufficient production capacity[156] and that there is no evidence on the record to suggest production of the hangers occurred anywhere other than Laos.[157] CBP disagrees with Leco's assertions and submits that substantial evidence continues to support the determination of evasion. Contrary to Leco's arguments, the administrative record provides substantial, credible evidence (or at least evidence of material inconsistencies in documentation submitted during the investigation) to support CBP's findings that the authenticity of certain documentation was in question and the foreign manufacturer lacked the necessary production capacity.

A significant amount of information concerning the foreign manufacturer's alleged production capacity was submitted by the importers during the EAPA investigation and was placed on the record;[158] however, the information was deemed unreliable[159] and contained inconsistencies.[160] For example, CBP concluded, after reviewing information submitted by the various importers subject to the EAPA investigation and comparing it to information submitted

---

[153] *Id.*
[154] 19 U.S.C. § 1517(c)(1)(A).
[155] Leco's Comments at 21.
[156] Leco's Comments at 10-11; 13-16.
[157] *Id.* at 10-11.
[158] Determination at 8.
[159] *Id.*
[160] *Id.* at 9-10.

by M&B, specifically a commissioned report based on a site visit, the importers imported more than the foreign manufacturer could produce.[161] In addition, CBP never received evidence from the foreign manufacturer itself concerning the number of hanger forming machines that the foreign manufacturer actually possessed, and, further, CBP could not validate or authenticate photographic evidence allegedly documenting the number of machines that the importers subject to the EAPA investigation submitted.[162] CBP also received inconsistent production capacity numbers for the foreign manufacturer's strut hanger forming machines, shirt and caped hanger forming machines, and hanger wrapping section.[163] Finally, CBP received inconsistent information concerning the foreign manufacturer's tube fixing section such that CBP could not determine the number of tube fixing machines,[164] as well as inconsistent information about the paint assembly line as to the number of hangers that could be painted per hour.[165] Leco's claim that CBP should only focus on the two containers imported by Leco in terms of the foreign manufacturer's actual production capacity is without merit.[166] CBP acted within its discretion to review the foreign manufacturer's production capacity in the context of all of the importers' entries during the period of investigation. CBP lawfully consolidated the investigation[167] after observing that all ten importers were alleged to have imported suspected Vietnamese-origin hangers subject to the same AD/CVD order, the relevant entries fell within a common period of investigation, and there was a common foreign manufacturer/exporter for these entries.[168]

---

[161] *Id.* at 10.

[162] RAAAS Summary of Factual Information at 16 (revised Sept. 8, 2021).

[163] *Id.*

[164] *Id.*

[165] *Id.*

[166] Leco Comments at 15.

[167] *See* 19 U.S.C. § 1517(b)(5) and 19 C.F.R. § 165.13; *see also* Admin. Review at 11.

[168] Letter from Victoria Cho (Acting Director, Enforcement Operations Division, TRLED) to the various importers and Counsel for M&B, Re: Notice of Initiation of investigation and interim measures taken as to N&M Hangers LLC; Direco International LLC; PNJ Import, Inc.; LGA Trading Inc.; Chungwha Prince Group Corporation; WHL International Inc.; Wah Hing Lee Investment, Inc.; SK Supply Corp.; KS Supply; and Leco Supply concerning

Further, there is evidence on the record that casts doubt on the authenticity of various documentation placed on the administrative record. As Leco recognizes, CBP was concerned about the reliability and validity of the certificates of origin.[169] Indeed, CBP rejected the certificates of origin as proof that the country of origin for the hangers was Laos.[170] Specifically, CBP doubted whether the appropriate authority in Laos verified the goods were manufactured in Laos.[171] CBP also questioned the nature of how the certificates were assigned identification numbers observing that "use of a numbering stamp could also simplify the act of counterfeiting certificates of origin."[172] Ultimately, CBP decided to "reject the certificates of origin as proof that the exported hangers were made in Laos."[173] Nothing on the record supports Leco's contention that "the government of Laos did in fact consider truck bills to be an 'acceptable substitute' for through bills of lading for purposes of exports of goods from Laos during the period of investigation,"[174] and regardless, based on the totality of the substantial evidence on the administrative record, CBP was reasonable in rejecting the truck bills as sufficient proof of transportation. Therefore, CBP disagrees with Leco's assertions that the information it submitted on remand was sufficient to refute CBP's overall doubts concerning authenticity of these documents.

CBP also doubted the reliability of the ASEAN Customs Declarations.[175] CBP observed that these declarations were either not completed or may have been completed incorrectly.[176] CBP

---

evasion of the antidumping and countervailing duty orders on steel wire garment hangers from Vietnam (Jan. 30, 2020) (Notice of Investigation and Interim Measures (Pub. Doc. No. 510)).

[169] *See, e.g.,* Leco Comments at 17.

[170] RAAAS Summary of Factual Information at 20 (revised Sept. 8, 2021).

[171] *Id.*

[172] *Id.*

[173] *See, e.g., id.*

[174] Leco Comments at 22.

[175] RAAAS Summary of Factual Information at 19 (revised Sept. 8, 2021).

[176] *Id.*

also found examples of the incorrect harmonized tariff number referenced on these documents.[177]

CBP finds Leco's rebuttal information and its arguments on remand unpersuasive in terms of

refuting any concerns with the reliability and validity of the ASEAN documentation submitted.

For example, Leco's assertion that "{m}isclassification of the hangers upon export…is entirely

understandable" because "{e}xports of hangers from Laos, regardless of classification, are duty

free" and that "the paperwork was completed by an individual who likely had little customs

expertise, and the specific information declared had no impact on duties or taxes owed"[178] is

incredulous. Leco claims that genuine ASEAN Customs Declarations are "far more likely to

contain minor errors."[179] CBP disagrees that incorrect classification on export documents

constitutes a "minor error" for purposes of the present evasion determination, and, in light of the

substantial evidence on the record, including the fact, for example, that there was no proof that

the foreign manufacturer paid VAT taxes,[180] continues to determine there was evasion.

   CBP disagrees with Leco's arguments that the rebuttal information it submitted was

sufficient to overcome CBP's rejection of the transportation records for import of raw materials

and export of hangers (i.e., truck bills).[181] Leco's initial argument focuses on the use of the

English language on the documents, asserting that "English is the unofficial lingua de franca" in

Vietnam and Laos,[182] and Leco also attempts to explain the lack of invoice numbers on the truck

bills.[183] CBP did not accept certain truck bills in lieu of valid through bills of lading and rejected

---

[177] RAAAS Summary of Factual Information at 19 (revised Sept. 8, 2021) (the declared harmonized tariff number "was incorrect as this number pertained to hat-racks, hat-pegs, brackets and similar fixtures"); *see also id.* at 20 (revised Sept. 8, 2021) (noting use of a harmonized tariff number relevant to "other alloy steel, but the hangers were made with carbon steel").
[178] Leco Comments at 19.
[179] *Id.* at 20.
[180] RAAAS Summary of Factual Information at 21 (revised Sept. 8, 2021).
[181] Leco Comments at 20.
[182] *Id.*
[183] RAAAS Summary of Factual Information at 21 (revised Sept. 8, 2021).

certain alleged proofs of payment for the raw material truck bills as these remittance documents were "missing the reference number, and in some instances, included an incorrect SWIFT code."[184] CBP also observed certain inconsistencies in dates when comparing truck bills submitted by the importers subject to the investigation to other documents purporting to support the foreign manufacturer's receipt of raw materials.[185] CBP was further concerned about the number of containers exported monthly from Laos to Vietnam.[186] Similar to the concerns with the other documentation on the administrative record, the rebuttal information that Leco submitted was insufficient to address CBP's overall concerns with the truck bills.

Leco acknowledged that it did not submit rebuttal information concerning the authenticity of invoices and packing lists regarding the foreign manufacturer's alleged purchase of raw materials.[187] Thus, CBP continued to find that the documents the importers submitted, which the importers alleged originated from the foreign manufacturer were, at best, self-generated receipts for purchases of raw materials and packing materials which meant that the authenticity of the documentation was questionable.[188] Other evidence also supported a finding that the documents submitted by the importers – purporting to have originated from the manufacturer – were questionable. For example, certain information that the importers submitted in an effort to substantiate claims relevant to the purchase of raw materials could not be traced to allegedly corroborating information, which therefore, caused CBP to question the authenticity and accuracy of the submitted documents.[189] Leco's argument that "the type of information that

---

[184] *Id.*

[185] *See, e.g., id.*; *see also* Memorandum to the File, Subject Additional Information (Jan. 27, 2020) (revised Sept. 8, 2021) and Memorandum to the File, Subject: Additional Information (May 1, 2020) (revised Sept. 8, 2021).

[186] *See, e.g.,* RAAAS Summary of Factual Information at 21.

[187] Leco Comments at 22.

[188] *See, e.g.,* Admin. Review at 9; *see also* Determination at 8.

[189] RAAAS Summary of Factual Information at 24 (revised Sept. 8, 2021) (explaining that a purchase order could not be traced to an allegedly corresponding VAT invoice).

companies chose to include on invoices and packing lists varies widely"[190] to justify the
legitimacy of the invoices and packing lists for raw materials that the foreign manufacturer
allegedly purchased ignores the fact that CBP was unable to correlate alleged purchases of the
raw materials to other documentary evidence purportedly supporting country of origin,[191] the
fact that the foreign manufacturer appears to have self-generated receipts for the raw materials
and packaging materials it purchased,[192] and the fact that certain payments could not be traced
through bank records.[193]

CBP disagrees with Leco's assertion that the record evidence contradicts CBP's conclusions
concerning the authenticity of payment records for transportation and purchase of raw materials.
Leco's misplaced attention on CBP's observations that concern the use of English in the
documents[194] completely disregards the fact that the relevant application for remittance forms
"appeared to be counterfeits" and that various financial evidence was lacking to support the
purchases of raw materials.[195] Leco's argument that the information it provided did contain
certain information, such as SWIFT code and beneficiary address,[196] is unpersuasive given the
totality of other substantial record evidence.[197] Likewise, Leco's claims concerning the timing as
to when stamps were placed on certain forms in order to support its arguments evidencing the
foreign manufacturer's alleged payment for raw materials, even if taken as true – which CBP

---

[190] Leco Comments at 23.
[191] *See, e.g.,* RAAAS Summary of Factual Information at 21 (revised Sept. 8, 2021) (explaining that mill test
certificates could not be traced to hot rolled steel wire rod coils).
[192] Admin. Review at 9.
[193] *Id.* at 9, n. 24.
[194] Leco's Comments at 23.
[195] RAAAS Summary of Factual Information at 21 (revised Sept. 8, 2021); *see also id.* at 22 (explaining that, in
some instances, the specific application for remittance forms relevant to paper tubes and wrapper papers included an
incorrect SWIFT code).
[196] Leco Comments at 24.
[197] *See* Admin. Review at 9 (describing various inconsistencies and the appearance that the foreign manufacturer
self-generated receipts).

does not – ignores the fact that there was no satisfactory financial documentation placed on the record to support the foreign manufacturer's alleged payment for certain services.[198]

CBP further disagrees with Leco's arguments concerning the purchase of raw materials, including paint and packing materials, from Laotian vendors.[199] Leco does not dispute CBP's findings that the foreign manufacturer self-generated purchase orders, payment receipts, and inventory receipts, or that certain information, including purchase order or invoice numbers, were not contained therein and there was a lack of third-party documentation to corroborate such purchases.[200] Rather, on remand, Leco argued that "{n}othing on the record…indicates that such documentation is in any way out of the ordinary for sales between local businesses…"[201] CBP finds this argument unpersuasive given for example, the fact that there was no record evidence that certain taxes were paid to the Government of Laos on some of these purchases.[202] Leco's arguments regarding use of the English language on the foreign manufacturer's internal documents[203] similarly ignores the concern that there was no information to rebut CBP's observation regarding such tax payments and other evidence indicating that certain information was omitted from invoices.[204] Further, Leco's explanation as to use of the English language is not sufficient to overcome the concerns that the foreign manufacturer's self-generated receipts posed, including the fact CBP had "no assurance that {the foreign manufacturer} actually paid for" certain materials.[205]

---

[198] RAAAS Summary of Factual Information at 19-20 (revised Sept. 8, 2021) (discussing the lack of financial institution or bank statements or receipts of wire transfer to evidence certain alleged payments).
[199] Leco Comments at 25.
[200] *See id.*
[201] *Id.*
[202] *See, e.g.,* RAAAS Summary of Factual Information at 25 (revised Sept. 8, 2021).
[203] Leco Comments at 25.
[204] *See, e.g.,* RAAAS Summary of Factual Information at 25 (revised Sept. 8, 2021) (describing that CBP "found evidence that some importers required customized cartons that should have been identified on the invoice").
[205] *See, e.g., id.*

Finally, CBP disputes Leco's claim that its findings regarding the store input slips was contradicted by the rebuttal information or record evidence.[206] In response to Leco's assertions about the use of English on the documents,[207] CBP responds that its findings concerning such documentation were not limited to its observations about the "unlikely mixture of Laotian and English."[208] Indeed, CBP was unable to identify the name of supplier or relevant purchase order, or invoice number on these documents and to associate these documents with the relevant raw material purchases and shipment information.[209] Leco claims that the purpose of these store input slips was to document receipt of the merchandise into inventory and that quantity and weight are sufficient for CBP to tie these documents to invoices.[210] CBP disagrees. Given the failure of the foreign manufacturer to respond to CBP's requests for information, CBP was unable to trace the foreign manufacturer's inventory throughout the duration of its production process.[211] For example, CBP could not confirm the actual shipment and exportation of hangers from the foreign manufacturer's facility in Laos to Vietnam.[212]

Notably, the record evidence also links the foreign manufacturer with a Vietnam-based company, a respondent in the AD/CVD investigation.[213] For example, CBP's research revealed the foreign manufacturer had an address located in, and ties with, Vietnam.[214] Importantly, Leco did not visit the foreign manufacturer's facility in Laos to verify production, and instead Leco met with the foreign manufacturer's representatives in Vietnam.[215] There was no evidence of the

---

[206] Leco Comments at 26.
[207] *Id.*
[208] *See* RAAAS Summary of Factual Information at 21, 23 (revised Sept. 8, 2021); *see also* Leco Comments at 26.
[209] RAAAS Summary of Factual Information at 21, 23.
[210] Leco Comments at 26-27.
[211] *See* Determination at 8-9.
[212] *See id.* at 9.
[213] *See id.* at 7; *see also* Admin. Review at 9.
[214] *See, e.g.,* RAAAS Summary of Factual Information at 9-13 (revised Sept. 8, 2021); *see also* Admin. Review at 10 and Determination at 10.
[215] Admin. Review at 10-11.

foreign manufacturer's ties to any other wire hanger manufacturer in Laos or outside Vietnam.[216] Thus, given CBP's observations concerning alleged production capacity and the foreign manufacturer's ties to Vietnam, CBP concluded that the hangers imported during the period of investigation were manufactured in Vietnam[217] and affirmed this finding in its administrative review.[218]

None of the importers to the EAPA investigation, including Leco, provided credible evidence of what was occurring – if anything – in the foreign manufacturer's facilities.[219] Therefore, CBP concluded that the totality of the record evidence, including the lack of information concerning production capacity coupled with the manufacturer's ties to Vietnam, supported a determination of evasion.

---

[216] *Id.* at 11.
[217] Determination at 10, 11.
[218] Admin. Review at 11-12.
[219] *See, e.g.,* Determination at 9-10; *see also* Admin. Review at 10.

## VI.     CONCLUSION

In accordance with the Court's remand order, CBP analyzed various issues including

compliance with the relevant regulations governing the treatment of business confidential

information and public summaries. CBP placed revised public versions of business confidential

documents on the administrative record. After doing so, CBP permitted Leco and M&B an

opportunity to submit rebuttal information and additional arguments. Further, CBP transmitted

all documents and information previously omitted from the record to R&R for review on

remand. Upon review of the documents and arguments submitted, CBP affirms its determination

of evasion.

BRIAN M
HOXIE

Digitally signed by BRIAN
M HOXIE
Date: 2021.11.10
18:18:01 -05'00'

Brian M. Hoxie
Director – Enforcement Operations Division
Trade Remedy Law Enforcement Directorate
Office of Trade, U.S. Customs & Border Protection

**ADDENDUM**



**U.S. Department of Homeland Security**
Washington, DC 20229


**U.S. Customs and Border Protection**

November 9, 2021

**PUBLIC DOCUMENT**

OT:RR:BSTC:PEN H319791 BEK
        x-Ref  H315522 BEK

Heather Jacobson, Esq.
Junker & Nakachi, P.C.
Counsel for Leco Supply Inc.
999 Third Avenue, Suite 2525
Seattle, WA 98014

Kimberly R. Young, Esq.
Frederick P. Waite, Esq.
Vorys, Sater, Seymour and Pease LLP
Counsel for M&B Metal Products Company, Inc.
1909 K Street NW, Suite 900
Washington, DC 20006-1152

Re:     Remand Redetermination for Enforce and Protect Act ("EAPA") Consolidated Case
        Number 7357; *Steel Wire Garment Hangers From the Socialist Republic of Vietnam:*
        *Antidumping Duty Order,* 78 FR 8105 (February 5, 2013) and *Certain Steel Wire Garment*
        *Hangers From the Socialist Republic of Vietnam: Countervailing Duty Order,* 78 FR 8107
        (February 5, 2013); Leco Supply Inc.; 19 U.S.C. § 1517

Dear Ms. Jacobson, Ms. Young, and Mr. Waite:

This is the remand redetermination made pursuant to the remand order dated August 3,
2021 in *Leco Supply, Inc. v. United States, et al.*[1]

The U.S. Customs and Border Protection ("CBP"), Office of Trade ("OT"), Regulations and
Rulings ("R&R") has received and reviewed from the Trade Remedy & Law Enforcement
Directorate ("TRLED") of OT the documents collected during the EAPA investigation and
omitted from the record prior to R&R's original *de novo* review (H315522), dated February
24, 2021 ("R&R February 24 FAD").[2]  Further, as the Order provided the parties "an

---

[1] *See* Order, Leco Supply, Inc. v. United States, No. 21-00136, (Ct. Int'l Trade Aug. 3, 2021), ECF No. 42
(Order).
[2] *See* Confidential Document Nos. 360-380 and Public Document Nos. 775-811, which were filed as part of the
supplemental administrative record. Those documents previously omitted from the record transferred to R&R
during the original *de novo* review consisted primarily of: (1) Business Analysis Report and supporting
documents related to PNJ Import, Inc.; (2) CBP Form 28, Requests for Information to the Importers; (3)
Extension Requests by the Importers and responses from TRLED; (4) the public version of some financial

opportunity to submit information and arguments responsive to any information previously omitted from the public record,"[3] R&R has reviewed and considered the submissions from Leco Supply Inc. ("Leco Supply") and M&B Metal Products Company, Inc. ("M&B") made during the remand period, including Leco Supply's Rebuttal Information to the revised public versions of documents placed on the record by M&B and CBP, dated September 15, 2021,[4] and M&B's Written Arguments in Support of Affirmative Determination of Evasion by U.S. Importer Leco Supply, dated September 27, 2021.[5] The parties were also afforded an opportunity to provide written comments on a draft remand redetermination. R&R has reviewed and considered both parties' comments. As the arguments regarding the level of redaction of the revised public documents, sufficiency of the public summaries, and what constitutes business confidential information lie outside of R&R's *de novo* review, Leco Supply's submissions on those matters were not considered.

The R&R February 24 FAD is incorporated by reference as if fully set forth herein.[6]

Upon review of the previously omitted documents, the new submissions of the parties, and the parties' written comments to the draft remand redetermination, R&R continues to find that the evidence on the administrative record in this matter still supports the initial determination made by CBP that Leco Supply engaged in evasion by entering into the customs territory of the United States Vietnamese-origin wire hangers and misrepresenting the country of origin as Laos. Such designation of Laos as the country of origin at the time of entry was materially false, in that it failed to indicate that the wire hangers were merchandise covered by the relevant AD and CV Duty Orders applicable to Vietnam; the false designation also led to the non-collection of AD and CV duty deposits.

Furthermore, R&R reviewed rebuttal information submitted by Leco Supply during the remand proceedings, and concluded that the reversal of the February 24 FAD is not warranted. The administrative record is still devoid of evidence to support Leco Supply's argument that the claimed manufacturer, Truong Hong Development Multidisciplinary Group Ltd. ("Truong Hong"), had the capacity and *did* manufacture the quantity of steel wire hangers it exported to the United States during the period of investigation. As part of

---

documentation related to some of the Importers; and, (5) videos provided by Leco Supply and N&M Hangers, LLC. One of the documents previously omitted and transmitted to R&R on remand included photographs; those photographs were present in the original documents transmitted to R&R and reviewed during the original *de novo* review.

[3] *See* Order.

[4] This submission by Leco Supply is entitled "Leco Supply, Inc. Objection to Revised Documents Placed on the Record by U.S. Customs & Border Protection and M&B Metal Products Company, Inc.," which appears to be a typo as another document submitted by Leco Supply on the same day has the same title and contains arguments which directly relate to those types of objections, while the other submission pertains strictly to rebutting the new information revealed in the revised public versions placed on the record by CBP and M&B.

[5] The original deadline for submission of written arguments by the parties was September 22, 2021. On September 15, 2021, Leco Supply requested an extension until close of business on September 27, 2021 due to work restrictions in the religious observance of the Jewish holidays Yom Kippur (beginning at sundown on September 15 and continuing until sundown on September 16) and Sukkot (the first two days have work restrictions beginning at sundown on September 20 and continuing until sundown on September 22). This extension was granted in part for both parties and written arguments were due by 10:00am EST on September 27, 2021. Leco Supply did not submit written arguments by the extended deadline.

[6] The February 24 FAD referenced potential deficiencies in the administrative record relevant to 19 C.F.R. §§ 165.4(a)(1) and (e). These issues have been resolved on remand.

its rebuttal information, Leco Supply has provided YouTube videos demonstrating one person's ability to monitor and run multiple wire hanger forming machines simultaneously in order to counter the finding that Truong Hong did not employ enough people to adequately produce the number of wire hangers that the manufacturer exported to the United States.[7] These are not videos of Truong Hong and cannot constitute evidence of what occurred at Truong Hong's facilities.  The videos are not relevant to this EAPA investigation.  Leco Supply has countered in its written Comments on Draft Remand Redetermination[8] that the YouTube videos are not meant to demonstrate what occurred at Truong Hong, but rather, to show industry norms and that one person could operate multiple wire hanger forming machines at once.  This argument is unpersuasive.  The videos do not appear to have been taken in a large manufacturing setting representative of what Leco Supply purports to be occurring at Truong Hong.  Instead, the videos only show the machines at work for a couple of minutes at most and, based upon the videos' comments, largely appear to be advertising those machines for sale.  In addition to not constituting evidence of what occurred at Truong Hong, these videos do not even constitute credible evidence of standard manufacturing of wire hangers in large facilities generally.

While one video of Truong Hong was submitted to R&R as part of the documents previously omitted during the original *de novo* review, that video came from a different importer, N&M Hanger, LLC, and does not show the operation of a wire hanger forming machine.[9]  The videos provided by Leco Supply (and previously omitted during the original *de novo* review) during the course of the investigation were not taken at Truong Hong.[10]  There is little to no evidence in the administrative record of actual manufacturing of wire hangers occurring at Truong Hong.  Leco Supply improperly conflates what it alleges as potential production capacity with actual production to support its claims.  Even assuming that the facility had adequate machinery to produce the amount of wire hangers that Truong Hong exported, the totality of the evidence on the administrative record still does not support a finding that Truong Hong actually produced that quantity of wire hangers.

Further, the authenticity of the production documents continues to remain in question.  For example, although Leco Supply has provided an explanation in the rebuttal information regarding the issuer of the certificates of origin (*i.e.*, the Chamber of Commerce and Industry of Bolikhamxay Province), Leco Supply has also noted that this issuer does not physically inspect the production facilities, but rather, issues the certificates upon the inspection of documentation provided by the exporter.[11]  As such, there has been no new information submitted sufficient to warrant a reversal of CBP's previous determination that those certificates of origin were based upon fraudulent production documentation.  Moreover, the other rebuttal information pertaining to the documentation does not refute the prior findings of unreliability of the production documents as discussed previously in the R&R February 24 FAD.[12]

---

[7] *See* Leco Supply's Rebuttal Information, pages 11-12.
[8] *See* Leco Supply Inc. Comments on Draft Remand Redetermination (Nov. 2, 2021).
[9] *See* N&M Hanger, LLC Exhibit 43 to Supplemental Response to Request for Information ("RFI").
[10] *See* Leco Supply's Supplemental Response to RFI Narrative, answer to question 11.
[11] *See* Leco Supply's Rebuttal Information, page 4.
[12] *See* R&R February 24 FAD, page 9.

The alleged production capacity, the lack of sufficient evidence concerning actual production quantities, and the authenticity and reliability of the relevant supporting documents is largely called into question as a result of the failure of Truong Hong to directly participate in the EAPA investigation. While Truong Hong may have provided some documents to the Importers, which were then provided to CBP during the course of the EAPA investigation, these submissions do not adequately substitute for Truong Hong's lack of response to the RFI, which would have provided critical additional information to aid CBP in attempting to verify the production capacity and actual production at the manufacturing site. In the written Comments on Draft Remand Redetermination, Leco Supply makes many claims about what are considered typical sales practices and industry norms to explain discrepancies in the documentation and to show Truong Hong's alleged production capacity. However, Leco Supply has not submitted any documents to the administrative record to support these claims. Thus, the administrative record does not contain the necessary evidence to demonstrate typical sales practices and industry norms in Laos, or the wire hanger manufacturing industry in general to corroborate Leco Supply's claims. As it stands, Leco Supply has made many assertions which the administrative record does not support. The issues surrounding the inability to authenticate Truong Hong's production documents remain. Finally, the evidence of Truong Hong's connections to Vietnam, including a Vietnamese company engaged in wire hanger production, remains unrebutted.

Thus, substantial evidence still supports a final determination of evasion as to Leco Supply and, based upon our *de novo* review on remand of the entire administrative record in this case, including the documents previously omitted from the record and the submissions by Leco Supply and M&B, the October 26 Determination of Evasion under 19 U.S.C. § 1517(c) remains AFFIRMED.

Sincerely,



# Paul Pizzeck

Digitally signed by Paul Pizzeck
Date: 2021.11.09 10:25:44 -06'00'

Paul Pizzeck
Chief, Penalties Branch, Regulations & Rulings
Office of Trade
U.S. Customs & Border Protection

Approved by:

# JOANNE R STUMP

Digitally signed by JOANNE R STUMP
Date: 2021.11.09 11:39:31 -05'00'

Joanne R. Stump
Deputy Executive Director, Regulations & Rulings
Office of Trade
U.S. Customs & Border Protection