UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| LECO SUPPLY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00136 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| M&B METAL PRODUCTS CO., ) | |
| ) | |
| Defendant-Intervenor. ) | |

## **ORDER**

Upon consideration of Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record and all other relevant record information, it is hereby—

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the final administrative determination of evasion, as set forth in Decision Letter H315522 (dated February 24, 2021) and the Remand Redetermination filed with this Court on November 10, 2021, is reversed and remanded for disposition in a manner consistent with the judgment of this Court.

_____
CHIEF JUDGE

Dated: _____
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| LECO SUPPLY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00136 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| M&B METAL PRODUCTS CO., ) | |
| ) | |
| Defendant-Intervenor. ) | |

## **PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, Leco Supply Inc. ("Leco") hereby moves for judgment on the agency record in the above-referenced action. For the reasons set forth in the Leco's Memorandum in Support of its Rule 56.2 Motion for Judgment on the Agency Record, Leco requests that the Court hold that the final administrative determination of evasion as to Leco Supply by U.S. Customs & Border Protection ("CBP"), as set forth in Decision Letter H315522 (dated February 24, 2021), and in the Remand Redetermination filed with this Court on November 10, 2021, is not supported by substantial evidence on the record, and is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and that the Court therefore remand this matter to CBP for disposition in a matter consistent with the judgment of this Court.

Respectfully Submitted,

/s/ Heather Jacobson
Heather Jacobson
Junker & Nakachi P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Plaintiff Leco Supply Inc.*

January 24, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

|  |  |
|---|---|
| LECO SUPPLY, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> v. <br><br> M&B METAL PRODUCTS CO., <br><br> Defendant-Intervenor. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Court No. 21-00136

**PUBLIC VERSION**

Confidential Information
Redacted on
*pp 2, 4, 12-19, 29, 30, 33-35, 37, 39-42*

**<u>PLAINTIFF LECO SUPPLY INC.'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>**

Heather Jacobson
Junker & Nakachi P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Plaintiff Leco Supply Inc.*

Dated: January 24, 2022

## TABLE OF CONTENTS

*STATEMENT PURSUANT TO RULE 56.2(c)* _____ *1*

   **I.**   **The Administrative Determination Under Review** _____ 1

   **II.**  **Issues of Law Presented** _____ 1

*PROCEDURAL HISTORY* _____ *2*

   **I.**   **Initiation of Cons. Case No. 7357** _____ 2

   **II.**  **TRLED Investigation and Initial Determination of Evasion** _____ 3

   **III.** **Request for Administrative Review and Final Administrative Determination** _____ 5

   **IV.**  **Filing of Court Appeal** _____ 5

   **V.**  **Voluntary Remand** _____ 6

   **VI.** **Remand Redetermination**_____ 9

*STANDARD OF REVIEW* _____ *9*

*ARGUMENT* _____ *9*

   **I.**   **Initiation of Investigation Against Leco Violated 19 U.S.C. § 1517 Because the Information in M&B's Allegation Did Not Reasonably Suggest That Evasion Had Occurred.** _____ **10**

      A.   Legal Requirements for Initiation of an EAPA Investigation _____ 11

      B.   M&B's Allegation does not reasonably suggest that evasion may have occurred.___ 11

   **II.**  **CBP's Finding of Substantial Evidence of Evasion is Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance With Law.**_____ **13**

      A.   There is not substantial evidence that Truong Hong lacked sufficient capacity to produce all wire hangers that it exported during the POI. _____ 14

      B.   The substantial evidence on the record supports the conclusion that Leco's imported wire hangers were produced in Laos. _____ 16

         1.   It is undisputed that Truong Hong had sufficient production capacity to produce Leco's hangers. _____ 17

         2.   CBP's rejection of Leco's production documentation was arbitrary, capricious and an abuse of discretion. _____ 17

            a.   Certificates of Origin_____ 18

            b.   ASEAN Customs Declarations _____ 18

            c.   Trucking Records _____ 20

            d.   Raw Material Purchase Records _____ 21

            e.   Payment Records _____ 23

         3.   CBP continues to apply adverse inferences against Leco. _____ 24

         4.   Distinctions between Leco and other importers merit individual review of Leco. _ 25

      C.   In the absence of additional evidence, the relationship between Truong Hong and DNA does not support a finding of evasion._____ 25

**III.  CBP's Redaction and Authorization of Redaction of Information Not Qualified for Business Confidential Treatment is Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance With Law. ____ 26**
    A.  Legal Standards for Business Confidential Treatment Under 19 C.F.R. § 165.4(a) __ 27
       1.  Trade Secrets ____ 27
       2.  Confidential Commercial or Financial Information ____ 28
    B.  At remand, CBP redacted, or allowed M&B to redact, information that is not entitled to business confidential treatment, in violation of 19 C.F.R. § 165.4. ____ 29
       1.  M&B Allegation Exhibit 4 ____ 29
         a.  No part of Exhibit 4 constitutes a "trade secret" pursuant to 5 U.S.C. § 552. __ 29
         b.  Much of the information in Exhibit 4 is publicly available and therefore not a "trade secret" or "confidential." ____ 30
         c.  M&B does not allege that Exhibit 4 contains confidential commercial or financial information. ____ 31
       2.  M&B Allegation Exhibit 7 ____ 31
       3.  M&B Allegation Narrative ____ 33
       4.  January 27, 2020  and May 1, 2020 Memoranda to the File Re: Additional Information ____ 33
       5.  RAAAS Memorandum ____ 34
    C.  CBP accepted M&B's revised Allegation and Exhibits despite record evidence showing that the documents were noncompliant with § 165.4(a). ____ 35
    D.  CBP has provided no substantive justification for its own claims for business confidential treatment of information. ____ 35

**IV.    Lack of Access to Business Confidential Information Violated Leco's Due Process Rights. ____ 36**
    A.  Procedural Due Process Requirements for EAPA Investigations ____ 36
    B.  *Mathews* Analysis ____ 37
       1.  Private Interest Affected By CBP Action ____ 37
       2.  Risk of Erroneous Deprivation of Private Interest Through the Procedures Used, and Probable Value of Additional Safeguards ____ 38
         a.  Lack of access to confidential information prevented Leco from being able to view and respond to information directly relevant to CBP's evasion determination. __ 38
            i.  Entry Data ____ 39
            ii.  M&B Allegations Exhibits 4 and 7 ____ 40
            iii.  CBP Memoranda to File and RAAAS Memorandum ____ 41
         b.  Lack of access to confidential information at the administrative level raises the further risk of erroneous deprivation of private interests through improper withholding of information that is not entitled to business confidential treatment. ____ 43
       3.  Lack of Fiscal or Administrative Burdens Posed by Substitute Procedural Requirement. ____ 45

**V.  CBP's refusal to accept Leco's written arguments at remand was an abuse of discretion. ____ 46**

***REQUEST FOR REMAND ON ALL APPLICABLE ERRORS*** ____ **47**

***CONCLUSION*** ____ **48**

## **TABLE OF AUTHORITIES**

### **Cases**

*A. Hirsh, Inc. v. United States*, 657 F. Supp. 1297 (Ct. Intl. Tr., 1987)_____28

*Bowman Trans., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281 (1974)_____36

*Celik Halat Ve Tel Sanayi AS v. United States*, 485 F.Supp.3d 1404 (Ct. Int'l Tr. 2020)_____46

*Greene v. McElroy*, 360 U.S. 474, 496 (1959)_____36

*Grobest & I-Mei Indus. (Vietnam) v. United States*, 815 F. Supp. 2d 1342
(Ct. Int'l Tr. 2012)_____46

*Herrick v. Garvey,* 298 F.3d 1184 (10th Cir. 2002)_____27, 31

*Mathews v. Eldridge*, 424 U.S. 319 (1976)_____37

*National Parks and Conservation Ass'n v. Morton,* 498 F.2d 765 (D.C. Cir. 1974)_____28

*Nereida Trading Co. v. United States*, 34 CIT 241, 248, 683 F. Supp. 2d 1348 (2010)____36, 37

*People for the Ethical Treatment of Animals v. U.S. Dept. Health and Human
Services*, 901 F. 3d 343 (D.C. Cir. 2018)_____28

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (Fed. Cir. 2012)_____36

*R&W Flammann GMBH v. United States*, 339 F.3d 1320 (Fed. Cir. 2003)_____28, 31

*Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112 (Fed. Cir. 1996)_____28

*Royal Brush Manufacturing Inc. v. United States*, 483 F. Supp.3d 1294
(Ct. Int'l Tr. 2020)_____34, 36

*Royal Brush Manufacturing, Inc. v. United States*, Slip Op. 21-152
(Ct. Int'l Tr. Oct. 2021)_____37

*Stupp Corp. v. United States*, 359 F. Supp. 3d 1293 (Ct. Int'l Tr.  2019)_____46

*Transcom, Inc. v. United States*, 24 CIT 1253 (2000)_____36

*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998)_____21

**Statutes**

5 U.S.C. § 552 _____27, 28, 29, 31

19 U.S.C. § 1517 _____5, 9, 10, 11, 13

28 U.S.C. § 1581 _____5

AL Code § 8-27-2 (2016) _____28

**Regulations**

19 C.F.R. § 165.4 _____Passim

19 C.F.R. § 351.304 _____45

21 C.F.R. § 20.61 _____27

**Other Authorities**

Restatement (First) of Torts § 757_____27

<u>**STATEMENT PURSUANT TO RULE 56.2(c)**</u>

**I.**     <u>**The Administrative Determination Under Review**</u>

This action challenges the final administrative determination against Leco Supply, Inc. ("Leco") of U.S. Customs & Border Protection ("CBP") in Enforce and Protect Act ("EAPA") Consolidated Case 7537 ("Case 7357"), as documented in Decision Letter H315522, and the Remand Redetermination filed in this proceeding which provides CBP's final administrative determination in the first remand of Case 7357. *See* Decision Letter H315522 (February 24, 2021), PR-774[1] ("H315522"); Remand Redetermination, Doc. 47 ("Remand Redetermination").

**II.**     <u>**Issues of Law Presented**</u>

1. Whether CBP's finding that the information in M&B's Allegation against Leco reasonably suggested that evasion had occurred was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

2. Whether CBP's finding that "substantial evidence" of evasion by Leco exists was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

3. Whether, during the first remand proceeding, U.S. Customs & Border Protection ("CBP") violated 19 C.F.R. § 165.4 by placing on the record, and permitting M&B Metal Products Company, Incorporated ("M&B") to place on the record, revised business confidential

---

[1] Documents from the administrative record are identified herein as follows:

    **CR-###:** Documents on the confidential record from the original investigation, according to the record number assigned in the Business Confidential Index (Doc. 22-1) and the Supplemental Index of Administrative Record – Confidential Documents (Doc. 35-2).

    **PR-###:** Documents on the public record from the original investigation, according to the record number assigned in the Public Version and Public Document Index (Doc. 19-1) and the Supplemental Index of Administrative Record – Public (Doc. 34-2).  Public Records PR-1-774 are not Bates stamped.

    **CR_REM-###:** Documents on the confidential record in the first remand proceeding, according to the record number assigned in the Index of Administrative Remand Record – Confidential Documents (Doc. 48).

    **PR_REM-###:** Documents on the public record in the first remand proceeding, according to the record number assigned in the Index of Administrative Remand Record – Public Documents (Doc. 49).

documents and revised public version documents that bracket and redact information that is not entitled to business confidential treatment under 19 C.F.R. § 165.4;

4. Whether the lack of any mechanism in the EAPA or its implementing regulations to allow parties to view and respond to information designated as business confidential information pursuant to 19 C.F.R. § 165.4(a) and (e) violates Leco's Due Process rights under the Fifth Amendment to the U.S. Constitution; and

5. Whether CBP's decision to reject Leco's written arguments on remand constituted an abuse of discretion.

## **PROCEDURAL HISTORY**

### I.   **Initiation of Cons. Case No. 7357**

During the period of investigation, Leco Supply was a small, family-owned janitorial supply company, which specialized in cleaning equipment and supplies for the janitorial, laundry and dry-cleaning industries.  *See* Leco RFI Response, CR_REM-20 at RemandCR000123.   The purchase and sale of wire hangers was an ancillary line of business conducted solely by one salesperson, and Leco's purchase volumes were minor, amounting to less than [███████████ ███].  *See* Leco Supplemental RFI Response, CR_REM-27 at RemandCR000192; CR_REM-32 at RemandCR000647.

On October 25, 2019, CBP initiated an EAPA investigation of Leco in response to allegations filed by domestic manufacturer M&B.  *See* M&B Allegation and Exhibits, CR_REM-28-29; CBP Memorandum to the File Re: Initiation of Investigation for EAPA Case Number 7370 – Leco Supply (October 25, 2019), CR-54 ("Leco Initiation Memo").

2

On or around November 12, 2019, CBP issued a CF28 Request for Information to Leco; Leco responded on December 3, 2019. *See* Leco CF28, CR-368; Leco CF28 Response, CR_REM-1.

On January 30, 2020, CBP consolidated its investigation of Leco with investigations of 9 other importers as Case 7357, and issued a notice of investigation and interim measures. *See* Notice of Investigation and Interim Measures, CR_REM-42 ("Notice of Investigation").   The focus of the investigation was whether entries of merchandise purchased from Truong Hong Development Multidisciplinary Group Ltd. ("Truong Hong") and imported from Laos evaded antidumping and countervailing duties ("AD/CVD") on steel wire garment hangers from Vietnam (A-552-812/C-552-813). *Id*. at RemandCR000736. The Period of Investigation ("POI") for Case 7357 was October 3, 2018 through the pendency of the investigation. *Id*. at RemandCR000736-000737.

## II.     TRLED Investigation and Initial Determination of Evasion

On February 18, 2020, CBP issued a Request for Information ("RFI") to Leco that requested information about Leco's import practices and procedures and corporate structure, as well as extensive records relating to Leco's hanger imports during the POI. *See* Leco RFI, CR-73.

On March 24, 2020, Leco submitted its RFI Response; however, CBP rejected the submission as "overly bracketed." *See* PR-803 at SupplementalPR000249-250. In an email dated April 8, 2020, counsel for Leco objected to the rejection on the grounds that CBP "allowed M&B Metal Products Company, Incorporated, to bracket BPI documents in their entirety and to submit public versions that contain only a general summary of the document." A copy of this email is nor included in the administrative record. On April 13, 2020, counsel for Leco reiterated its objections to the disparate treatment of Leco and M&B with respect to bracketing requirements. *Id.* at

3

SupplementalPR000248.  On or around April 14, 2020, CBP informed counsel for Leco via telephone that it did not consider its regulations with regard to bracketing to apply to information placed on the record by the allegor or by CBP, and that Leco would be required to re-bracket and resubmit its RFI response.

On April 27, 2020, Leco resubmitted its RFI response with bracketing conforming to CBP's instructions.  *See* Leco RFI Response (CR-202-257).

On June 9, 2020, CBP issued a Supplemental Request for Information ("Supplemental RFI") to Leco.  *See* Leco Supplemental RFI, CR-263.  On July 2, 2020, Leco submitted a complete response to the Supplemental RFI.  *See* Leco Supplemental RFI Response (CR-285-303; CR-357; CR-377-378).

M&B and Leco submitted written arguments on August 17, 2020 and August 20, 2020, respectively.  *See* PR-465; CR-315.

On September 16, 2020, the CBP Office of Trade Regulatory Audit and Agency Advisory Services ("RAAAS") issued a Summary of Facts Memorandum ("RAAAS Memorandum") that provided analysis and conclusions regarding the information submitted by the parties or placed on the record by CBP.  *See* RAAAS Memorandum (original version), CR-316.  Leco was not informed of the existence of this memorandum or provided with a public version thereof.

CBP [████████████████████] as part of its investigation.  *See* RAAAS Memorandum (rebracketed), CR_REM-35 at RemandCR000666.

On October 26, 2020, CBP issued a Notice of Determination as to Evasion in Case 7357 ("Initial Evasion Determination").  *See* CR_REM-41.  Due to Truong Hong's failure to provide a complete RFI response, CBP applied adverse inferences not only against Truong Hong but against all ten importers, including Leco, and dismissed out of hand the "copious documents" provided by

importers including Leco as "unreliable." *Id.* at 8. On the basis of "information provided by the Alleger and {largely redacted} record evidence," CBP found substantial evidence of evasion with regard to all 10 importers. *Id*.

### III.   Request for Administrative Review and Final Administrative Determination

On November 25, 2020, Leco requested *de novo* administrative review of the Initial Evasion Determination. *See* PR-476.

On February 25, 2021, CBP's Office of Regulations & Rulings ("OR&R") issued final administrative determination H315522.  *See* H315522, PR-774.  CBP reversed its application of adverse inferences to Leco, but continued to find substantial evidence of evasion with respect to Leco's imports during the POI in the form of "the {lack of} reliability of the production documentation, coupled with the evidence demonstrating significant ties between Truong Hong and a Vietnamese company that produces covered merchandise." *Id*. at 9.  CBP relied heavily on documents that it never made available to Leco, in particular the RAAAS Memorandum, which it acknowledged in a footnote it had not provided to Leco in violation of its regulations.  *Id.* at 9, footnote 22; footnote 23.

### IV.   Filing of Court Appeal

On March 25, 2021, Leco filed a summons and complaint in Court No. 21-00136, appealing the final administrative determination of evasion in H315522 pursuant to 19 U.S.C. § 1517(g) and 28 U.S.C. § 1581(c).

On May 18, 2021, Defendant filed indices of the confidential and public administrative records.  *See* Pub. Ver. and Pub. Doc. Index (Doc. 19-1); Bus. Conf. Index (Doc. 22-1).

On July 22, 2021, Defendant filed Motions to supplement the administrative record, stating that Defendant had learned of documents that were "inadvertently omitted from the administrative

record" and that had not been transmitted to OR&R for consideration during its *de novo* administrative review.  *See* Def. Mot. To Supplement Public Admin. Record (Doc. 34); Def. Mot. To Supplement Conf. Admin. Record (Doc. 35).

## V.    **Voluntary Remand**

On July 30, 2021, Defendant filed a Motion for Voluntary Remand to allow OR&R to consider the documents not previously provided, and to "consider the allegations raised by plaintiff's complaint regarding CBP's compliance with its regulations."  *See* Def. Mot. For Voluntary Remand (Doc. 39).

On August 3, 2021, the Court remanded the final administrative determination in Cons. Case No. 7357 for further consideration.  *See* Remand Order (Doc. 42).  The Court ordered that CBP ensure compliance with the public summary requirement set forth in 19 C.F.R. § 165.4, permit the parties to submit information and arguments responsive to any information previously omitted from the public record, and "consider Plaintiff's argument regarding CBP's compliance with 19 C.F.R. § 165.4(a) and the type of information for which business confidential treatment is permitted, and remedy any deficiencies, as appropriate."  *Id*.

On August 12, 2021, CBP directed Leco and M&B to submit revised business confidential documents by August 20, 2021, and revised public version documents by August 27, 2021.  *See* PR_REM-1.  CBP stated that it would make available revised business confidential and public versions of documents it had previously placed on the record no later than September 3, 2021.  *Id*.

Leco and M&B complied with the deadlines for submission of revised documents.  *See* CR_REM-1-27 (Leco revised BCI documents); CR_REM-28-29 (M&B revised BCI documents); PR_REM-5-78 (Leco revised PV documents); PR_REM-79-80 (M&B revised PV documents).

6

On August 23, 2021, Leco submitted written objections to the revised business confidential documents submitted by M&B, providing detailed information showing that the revised documents continued to bracket information that did not qualify for business confidential treatment under 19 C.F.R. § 165.4(a).  *See* CR_REM-30.  Neither M&B nor CBP responded.

On September 3, 2021, CBP extended its deadline for CBP submission of revised documents to September 8, 2021, and set deadlines of September 15, 2021 and September 22, 2021, respectively, for the submission of rebuttal information and written arguments.  *See* PR_REM-82.

On September 8, 2021, CBP placed revised business confidential and public versions of documents on the record.  *See* CR_REM-31-44; PR_REM-83-101.

On September 15, 2021, Leco submitted objections to the revised business confidential and public version documents placed on the record by CBP and M&B, on the grounds that the documents continue to bracket information that does not qualify as business confidential information, in violation of 19 C.F.R. § 165.4(a).  *See* CR_REM-45.  Neither CBP nor M&B responded.

Leco submitted rebuttal information on September 15, 2021.  *See* PR_REM-103-104.  M&B did not submit rebuttal information.

On September 15, 2021, Leco requested a three-working-day extension of time to file written arguments, on the grounds that of the five working days CBP provided between the deadline for rebuttal information and the deadline for written arguments, three were religious holidays observed by Leco's counsel. *See* PR_REM-105.  CBP granted the request for extension, but set the deadline at 10:00am Eastern time (7:00am in Washington State, where Leco and its

counsel are located) on September 27, 2021, rather than at 5:00pm Eastern as was the case for all previous deadlines in the investigation and remand.  *See* PR_REM-106.

Through inadvertence, counsel for Leco miscalendared the extended deadline at 5:00pm Eastern on September 27, 2021, and submitted its written arguments at 4:36pm Eastern on September 27, 2021.  *See* PR_REM-115 at RemandPR002345-002346.

At 5:32pm Eastern on September 27, 2021, Leco received an email from CBP stating that its written arguments were rejected as untimely.  *See* PR_REM-107 at RemandPR002273.  At 6:15pm Eastern on September 27, 2021, counsel for Leco submitted an email request for extension of the deadline and acceptance of the written arguments.  *Id*. at RemandPR002372-002373.  CBP did not respond.

On October 21, 2021, seven working days prior to the deadline established by the Court for filing of remand results, Defendant filed a motion for a two-week extension of time to file remand results.  *See* Def. Partial Cons. Mot. For Extension (Doc. 43).  Leco objected to the motion as failing to show good cause for an extension, but did not object to a more limited extension to ensure time to review and comment on draft remand results.  *See* Plaint. Resp. To Mot. For Extension (Doc. 45).  The Court granted an extension of time to file remand results until November 10, 2021.  *See* Remand Results Extension Order (Doc. 46).

On October 26, 2021, CBP issued its Draft Remand Redetermination, which continued to find substantial evidence of evasion by Leco.  *See* Draft Remand Redetermination, PR_REM-113. M&B submitted comments in support of the draft results.  *See* M&B Draft Remand Comments, PR_REM-116.  Leco submitted comments objecting to the draft results on the grounds that CBP failed to remedy material noncompliance with the requirements of 19 C.F.R. § 165.4(a) regarding bracketing of business confidential information; that CBP's rejection of Leco's written arguments

was an abuse of discretion; that the draft remand results mischaracterized rebuttal information submitted by Leco; and that CBP's continued finding of evasion is not supported by substantial evidence.  *See* Leco Draft Remand Comments, PR_REM-115.

## VI.  <u>Remand Redetermination</u>

On November 10, 2021, Defendant filed its Remand Redetermination with the Court.  *See* Remand Redetermination (Doc. 47).  The Remand Redetermination adjusted its discussion of the rebuttal information submitted by Leco and discussed the comments submitted by the parties, but otherwise did not make any changes from the draft remand results.

## <u>STANDARD OF REVIEW</u>

Pursuant to 19 U.S.C. § 1517(g)(2) EAPA administrative determinations are reviewed to determine whether CBP "fully complied with all procedures under subsections (c) and (f)" of the statute; and whether "any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

## <u>ARGUMENT</u>

Leco submits that CBP's finding of evasion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law on several grounds.

First, the information in M&B's Allegation does not reasonably suggest that evasion had occurred, and therefore CBP's initiation of the investigation of Leco violated 19 U.S.C. § 1517(b)(1).  The results of the investigation following that unlawful initiation must therefore be vacated.

Second, the substantial evidence on the record does not support CBP's finding of evasion with regard to Leco Supply.

Third, CBP's failure to comply with its own regulations, together with constitutional deficiencies in the regulations themselves, have deprived Leco of the opportunity to review the evidence held against it and to place on the record rebutting and clarifying information. CBP has redacted, and permitted M&B to redact, relevant information that does not qualify for business confidential treatment under 19 C.F.R. § 165.4, in violation of its own regulations. Moreover, even when followed correctly, the regulations make no provision to allow parties to view information designated business confidential, denying Leco the ability to review and respond to the evidence against it in violation of its Due Process. Additionally, CBP's refusal to accept Leco's written arguments at remand constitutes an abuse of discretion that further prevented Leco from fully responding to the assertions against it. These violations and deficiencies have unreasonably resulted in a record that does not contain all of the information that it would otherwise have had, which additional information Leco submits would have shown that no substantial evidence of evasion exists.

## I.   Initiation of Investigation Against Leco Violated 19 U.S.C. § 1517 Because the Information in M&B's Allegation Did Not Reasonably Suggest That Evasion Had Occurred.

CBP violated 19 U.S.C. § 1517(b)(1) when it initiated an investigation of Leco, because the information in M&B's Allegation did not reasonably suggest that evasion had occurred. M&B's allegations against Leco are based almost entirely on the alleged discrepancy between Truong Hong's export volumes and its production capacity, but the "information" submitted by M&B regarding Truong Hong's manufacturing operations was in the form of a "market research report" that CBP should have dismissed as entirely uncredible. *See* CR_REM-28 at RemandCR000225-000260. Similarly, M&B's assertions with regard to production capacity are based on M&B's entirely unsupported claims with regard to the production capacity of Truong

Hong's hanger forming machines, about which neither M&B nor its agents had any knowledge whatsoever. *Id.* at RemandCR000298. For information to "reasonably suggest" that evasion occurred, the authenticity and validity of the information itself must be reasonable; these documents are not. As such, CBP's decision to initiate an investigation against Leco was arbitrary, capricious, and abuse of discretion, and not in accordance with law.

### A. Legal Requirements for Initiation of an EAPA Investigation

The EAPA provides that an investigation shall be initiated only if the information provided in the allegation received by CBP "*reasonably suggests* that covered merchandise has been entered into the customs territory of the United States through evasion." *See* 19 U.S.C. § 1517(b)(1) (emphasis added). I.e., CBP's determination that the information in the allegation "suggests" evasion must be "reasonable."

By the plain language of the statute, the question of whether CBP's conclusion in this regard is reasonable must be determined based solely on the information contained in M&B's Allegation. *See* 19 U.S.C. § 1517(b)(1) ("the Commissioner shall initiate an investigation if the Commissioner determines that *the information provided in the allegation*…reasonably suggests" evasion (emphasis added)).

### B. M&B's Allegation does not reasonably suggest that evasion may have occurred.

As stated in its Initiation Memo regarding Leco, CBP's decision to initiate an investigation of Leco was based substantially on Exhibits 4 (market research report) and 7 (M&B estimates of Truong Hong export capacity) to M&B's Allegation:

> The market research report, Truong Hong's corporate registration giving no indication of manufacturing metal products, and M&B's estimates on necessary production equipment/labor to achieve Truong Hong's export capacity reasonably suggest that Truong Hong's facility in Laos is incapable of manufacturing hangers at the reported volumes of exports from Laos to the United States. These items, combined with the surge in Laotian hangers exports to the United States and the

trade data showing Leco Supply sources U.S. imports from Truong Hong, reasonably suggest that Leco Supply may be transshipping Vietnamese-origin hangers through Laos to the United States.

*See* PR_REM-94 at RemandPR001909.  However, the deficiencies in these two documents are such that it was not reasonable for CBP to rely on any of the information contained therein.

First, CBP should have rejected the "market research report" in Exhibit 4 as entirely noncredible.  The report is unattributed and unsigned; at no point has the company or individual that wrote it ever been identifed.  *See* CR_REM-28 at RemandCR000225-CR000260. There is also no indication as to <u>when</u> this report was allegedly produced; although M&B has included "May 2019" in the Exhibit cover page and the header superimposed on each page of the report, it does not explain what this designation of an entire month is intended to represent.  *Id*.  Moreover, at no point does the report give any date or even a rough time period for the fact-gathering actions described in the report; in particular, there is no date provided for the alleged [████] conducted by the market researcher.  *Id.* at RemandCR000230-000233.  As such, there is no way of knowing from this document when the information gathered during the alleged [████] was obtained.

Furthermore, the "research" activities described in the report are so superficial and uncorroborated as to render the purported results of that research entirely unreliable.  According to the report, information regarding Truong Hong's hanger production capacity was obtained from [████████████████████████████████████ ████████████████████].  *Id*.  There is no indication that the researcher attempted to corroborate [████████████████].  *Id*.  The market researcher [████████████████████████████ ████████████████].  *Id*.  There is no indication that the market researcher even attempted to take such reasonable steps.  There are no recordings or videos of the

purported [▨▨▨▨].  For CBP to find that M&B's Allegation "suggests" evasion on the basis of such questionable information is arbitrary, capricious, an abuse of discretion, and not in accordance with law as provided in § 1517(b)(1).

Second, CBP should have rejected M&B's estimates, provided in Exhibit 7 to its Allegation, regarding necessary production equipment/labor to achieve Truong Hong's export capacity.  M&B provided no explanation or basis for its estimates with regard to the hourly per-machine production capacity, machine down-time or the 70/30 split between non-strut and strut hanger production.  *See* CR_REM-28 at RemandCR000298 (M&B Allegation Exhibit 7).  Given that M&B had absolutely no idea what kind of hanger forming machines Truong Hong had, it is unreasonable for CBP to accept M&B's estimates without any explanation as to how they were calculated.

Accordingly, M&B's Allegation does not "reasonably suggest" that evasion had occurred, and CBP's decision to initiate an investigation of Leco was therefore arbitrary, capricious, an abuse of discretion, and not in accordance with law.

## II.  CBP's Finding of Substantial Evidence of Evasion is Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not in Accordance With Law.

19 U.S.C. § 1517(c)(1)(A) provides that a determination that covered merchandise was entered through evasion must be based on "substantial evidence."  With undisputed consensus that Truong Hong did in fact produce wire hangers in Laos during the POI, and no actual evidence of transshipment, CBP ruled that substantial evidence of evasion exists as to Leco on the basis of the following factual findings:

(a) that Truong Hong did not have capacity to produce all of the hangers that it exported to all ten importers;

(b) that the "authenticity" or "reliability" of the production documentation submitted is "in

question;" and

(c) that Truong Hong has "significant ties" with "a Vietnamese company that produces

covered merchandise." *See* H315522, PR-774 at 9-10.

These factual findings are unreasonable because they (a) are not supported by the record

evidence; (b) ignore or dismiss significant evidence to the contrary without justification; (c) are

irrelevant or lack reasoned analysis; and/or (d) result from the unacknowledged application of

adverse inferences against Leco.    As such, CBP's finding of evasion is not supported by

substantial evidence and is therefore arbitrary, capricious, an abuse of discretion, and not in

accordance with law.

## A. There is not substantial evidence that Truong Hong lacked sufficient capacity to produce all wire hangers that it exported during the POI.

CBP's conclusion that record evidence "still does not support a finding that Truong Hong

actually produced" the quantity of hangers exported (*see* Remand Redetermination Addendum at

3) is arbitrary and capricious in that it ignores or rejects record evidence without justification.

Documents stamped and signed by Truong Hong and submitted by the importers

demonstrate that at the time of export of Leco's hangers in [████████████████████],

Truong Hong had at least 18 hanger forming machines with a 1250/hour capacity, and 6 strut

hanger forming machines with a 1650/hour capacity, for a total production capacity of 32,400

hangers per hour.[2]  *See* RAAAS Memorandum, CR_REM-35 at RemandCR000676-000677;

---

[2] CBP's continued claim that the information on the record concerning the number and production capacity of Truong Hong's machines was "inconsistent"  (*see* Remand Redetermination at 31) ignores clarifying rebuttal information submitted by Leco, explaining that the information is actually consistent with Truong Hong more machines with greater production capacity over time.  *See* PR_REM-1-3 at RemandPR002974-002075; *see also* Leco Draft Remand Comments, PR_REM-115 at RemandPR002354 ("When each report is placed in its proper time frame, the production capacity documentation is consistent with a scenario in which Truong Hong's number of machines grew over time, and in which the production capacity of its machines overall increased as newer and more efficient machines were purchased.").

N&M CF28 Response, CR-309 at CR010088;[3] Direco CF28 Response, CR-308 at CR009982. This hourly production capacity falls within the typical observed range for hanger forming machines. *See* Leco Remand Rebuttal Information, PR_REM-103 at RemandPR002073-002076; PR_REM-104  at RemandPR002257-002263 (Leco Remand Rebuttal Information Exhibits 19-21).

Record evidence indicates that 24-hour operation of all of Truong Hong's machines is possible with the number of hanger operators employed by Truong Hong at the time; no party has placed any information on the record that indicates otherwise. *See* PR_REM-103 (Leco Remand Rebuttal Information) at RemandPR002073-002074.  24-hour operation of Truong Hong's 24 machines 6 days/week would result in a monthly production capacity of approximately 20,217,600 hangers per month.[4]

Leco's shipments of hangers entered in [XXXXXX] and [XXXXXX].  *See* CR_REM-3 at RemandCR000033 (CF7501 for entry [XXXXX]263-3); CR_REM-6 at RemandCR000067 (CF7501 for entry [XXXX]840-0).  During those months and the months immediately prior thereto, the 10 importers under review collectively imported, on average, less than Truong Hong's capacity of 20,217,600 hangers per month. *See* CR_REM-28 (M&B Allegation    Exhibits)    at    RemandCR000299-000314;    RemandCR000327-000367; RemandCR000385-000403;    RemandCR000409-000420;    RemandCR000441-000457; RemandCR000461-000475;    RemandCR000487-000489;    RemandCR000494-000495.

---

[3] The production documentation submitted by N&M was undated, but was submitted to CBP in November 2019 in response to a CF28 regarding an October 2019 entry, and therefore must have reflected machine quantities prior to November 2019, and likely reflected machine quantities in July 2019 or earlier, when the entered merchandise was produced.
[4] Utilizing M&B's calculation that a 6-day work week results in 26 working days per month. *See* M&B Allegation Exhibit 7 (PV), PR_REM-79 at RemandPR001485.

Accordingly, evidence on the record supports a conclusion that Truong Hong could have produced all of the hangers that it exported during the time periods relevant to Leco Supply's entries.

There is no credible record evidence that refutes or contradicts the above calculations. That the evidence of sufficient production capacity is not conclusive or "corroborated" to CBP's satisfaction is not itself evidence of a lack of capacity. CBP did not at any point [XXXXXXX XXXXXX] and has not offered any information indicating that the production levels are other than what the available information indicates. As discussed in Section III.B of this memorandum, the production capacity allegations in M&B's Allegation must be rejected as unreliable. Accordingly, there is no basis for CBP to dismiss Leco's production capacity calculations.

## B. The substantial evidence on the record supports the conclusion that Leco's imported wire hangers were produced in Laos.

Regardless of Truong Hong's capacity to produce all the importers' wire hangers, the substantial evidence on the record supports the conclusion Truong Hong "had the capacity and *did*"[5] produce Leco's imported hangers in Laos. First, neither Defendant nor M&B has disputed that Truong Hong had at least sufficient production capacity to produce enough hangers to fulfill Leco's orders. Second, Leco has provided documentation showing production of its hangers in Laos; CBP's rejection of that documentation is arbitrary and capricious and an abuse of discretion, and constitutes application of adverse inferences against Leco Supply. Finally, distinctions between Leco and the other 9 importers invalidate CBP's conclusions that are based on evidence regarding the other importers that is inapplicable to Leco.

---

[5] Remand Redetermination, Addendum at 2.

### 1. *It is undisputed that Truong Hong had sufficient production capacity to produce Leco's hangers.*

M&B has acknowledged that Truong Hong produces hangers at its factory in Laos, and alleged that Truong Hong produced approximately 1 container of hangers per month during the POI. *See* CR_REM-29 at RemandCR000606. CBP appears to have accepted these allegations as true. *See* Remand Redetermination at 30-31 (citing to M&B's "commissioned report based on a site visit" as evidence of Truong Hong's production in Laos). Accordingly, neither CBP nor M&B contest the ability of Truong Hong to produce at least 1 container per month of hangers during the POI. As Leco's total import volume during the POI was [▮] containers exported in [▮] separate months (*see* CR_REM-35 at RemandCR000708), it is undisputed that Truong Hong had sufficient production capacity in Laos to produce Leco's hangers.

### 2. *CBP's rejection of Leco's production documentation was arbitrary, capricious and an abuse of discretion.*

Leco has submitted voluminous documentation showing production of its hangers in Laos, including governmental and third-party records for purchase, import, and payment for the steel wire coil rod and paper tubes and hangers needed for production; Truong Hong employment records and electricity usage records; and records documenting export of the hangers from Laos. CBP has repeatedly rejected this documentation as "unreliable," "uncorroborated," or even "counterfeit." Its stated reasons for rejecting these documents, however, are factually incorrect, predicated on incorrect assumptions, utterly unrelated to the document in question, or lacking reasoned analysis. As such, CBP's rejection of the documentation was arbitrary and capricious and an abuse of discretion.

17

*a.  Certificates of Origin*

In the underlying investigation, CBP rejected the certificates of origin submitted by Leco as potentially counterfeit.  *See* CR_REM-35 at RemandCR000681.  At remand, Leco documented that CBP's principal basis for suspecting the authenticity of the certificates – that "the [XXXXXXXX] did not issue any [XXXXXXXX] to Truong Hong (*See* CR_REM-35 at RemandCR000681) – was mistaken, due to ignorance of the identity of entity that issued the certificates.  *See* PR_REM-103 at RemandPR002065.  Despite this, CBP persisted in stating at remand that it "continues to doubt the authenticity of certain information, such as the certificates of origin."  *See* Remand Redetermination at 22.

Leco objects strongly to the suggestion that there is anything "inauthentic" or suspicious about its certificates of origin.  The certificates of origin are authentic documents, issued by the appropriate local chamber of commerce in accordance with internationally accepted procedures for such documents.  *See* Leco Remand Rebuttal Information, PR_REM-103 at RemandPR002065, RemandPR002113-002136 (showing that certificates of origin issued by chambers of commerce the world over are issued based on the same records and in accordance with the same process as were the certificates of origin submitted by Leco).  CBP's generalized musings about the potential for numbered stamping to "simplify" counterfeiting are irrelevant and prejudicial.  *See* Remand Redetermination at 32.  Leco's certificates of origin are exactly what they are supposed to be, no more and no less, and therefore form a legitimate part of the overall documentation for hangers produced in Laos.

*b.  ASEAN Customs Declarations*

The official Lao ASEAN Customs Declaration Documents ("ACDDs") submitted by Leco, which were signed and stamped by the Chief of the Customs office of entry, document Truong

18

Hong's import of steel wire rod and paper tubes and wrappers for hanger production in the months prior to export of Leco's hangers, and its export of the hangers imported by Leco.  *See* CR-256 at CR008278 (ACDD for export of entry [XXXXX]8400); CR_REM-3 at RemandCR000050 (ACDD for export of entry [XXXXX]2633); CR_REM-1 at RemandCR000005 (ACDD for import of paper tubes and wrappers); RemandCR000007 (ACDD for import of steel wire rod coils).

CBP originally deemed the ACDDs "[XXXXX]" because [XXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXX] and, in the case of imports from China, because "[XXXXXXXXXXXXXXXXXXX]."  CR_REM-35 at RemandCR000680-000681, RemandCR000683.  At remand, Leco demonstrated that these "[XXXXX]" were baseless.  *See* Leco Remand Rebuttal Information, PR_REM-103 at RemandPR002068-002069, RemandPR002115 (Exhibit 4); PR_REM-104 at RemandPR002145-002222 (Exhibits 10-14).

CBP also rejected and continues to reject Leco's ACDDs because not all fields were filled in and some fields were apparently completed incorrectly.  *See* RAAAS Memorandum, CR_REM-35 at RemandCR000680-000681, RemandCR000683; Remand Redetermination at 32-33.  Leco questions how the incorrect completion of customs documentation relates to authenticity.  *See* Leco Draft Remand Comments, PR_REM-115 at RemandPR002357-002359.  CBP has surely encountered myriad instances of authentic U.S. import and export declarations that nevertheless contain misclassifications or other false statements due to mistake or ignorance.    The ACDDs submitted by Leco are properly stamped and signed by the appropriate Customs Office Chief, and clearly relate (based on quantity, value and container number) to the specific raw materials purchases and hanger sales documented on the record.   *Compare* CR-256 at CR008278 *with* CR_REM-6 at RemandCR000068; CR_REM-3 at RemandCR000033 *with* RemandCR000050;

CR_REM-4, CR_REM-5 at RemandCR000064 *with* CR-306 at CR009906-009907; CR_REM-8, CR_REM-9 at RemandCR000077 *with* CR-306 at CR009904-009905.  As such, to reject these ACDDs as inauthentic based solely on minor,[6] revenue-neutral classification errors and supposed omissions of information is arbitrary, capricious and an abuse of discretion.

  *c.  Trucking Records*

  CBP rejected bills from the "registered, active" trucking company used by Truong Hong, which bills documented transport of raw materials into Laos from Vietnam and finished hangers to Vietnam from Laos, on several grounds.  All of its objections are without merit.

  First, the bills' issuance in English was not "odd" (RAAAS Memorandum, CR_REM-35 at RemandCR000680); use of English for commercial documents is common in both Vietnam and Laos.  *See* Leco Remand Rebuttal Information, PR_REM-103 at RemandPR002070-002071. Second, the invoicing of hanger exports (two-way trips at a higher rate) separately from raw material imports (one-way trips at a lower rate) (CR_REM-35 at RemandCR000682, RemandCR000684), and the addition of a note on the hanger export bill specifying that the transaction is round-trip (*id.*), constitute reasonable commercial practices of grouping like transactions together, and reminding the customer (Truong Hong) of the reason for the higher rate on hanger export shipments.  Third, that the raw materials truck bill includes only shipments from Zhejiang and Shaoxing is not an "unlikely coincidence" (*id.*) but rather a reflection of reality; it appears from the record Zhejiang and Shaoxing are the only vendors outside Laos from whom

---

[6] Leco stands by its position that the classification errors are minor for purposes of this investigation.  The ACDDs are submitted to document that Truong Hong imported sufficient raw materials into Laos to produce Leco's wire hangers, and subsequently exported Leco's hangers from Laos.  The ACDDs are authentic as shown by the government stamp, and can be conclusively tied to the imported and exported merchandise; the fact that misclassification may have occurred is not relevant to origin.

Truong Hong purchased raw materials. *Id*. at RemandCR000681-000687 (reviewing raw materials documentation submitted by importers).

CBP also summarily dismissed the trucking bills because they were "not an acceptable substitute to a through bill of lading." *Id.* at RemandCR000682, RemandCR000684. CBP has made no "reasoned analysis or explanation" for this decision; it should be set aside for that reason alone. *See Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). Bills of lading are not required for import to or export from Laos; all that is required is "transport documents." *See* Leco Remand Rebuttal Information, CR_REM-103 at RemandCR000681, CR_REM-104 at RemandPR002231, RemandPR002236. Contrary to CBP's assertion at remand, this constitutes evidence on the record that truck bills are an acceptable substitute for bills of lading for purposes of the import and export of goods to and from Laos.

Finally, CBP improperly based its conclusion that Leco's rebuttal information is "insufficient to address CBP's overall concerns with the truck bills" on "inconsistencies" in other importers' submitted documentation, which have nothing to do with the documents submitted by Leco. *See* Remand Redetermination at 33-34 (citing to RAAAS memorandum as noting "inconsistencies" in dates in documentation submitted by N&M, Direco, and PNJ). CBP's "concerns" that the hanger export truck bills include "several containers for the month," are likewise absurd given other evidence on the record that Truong Hong did in fact export multiple containers of hangers per month. *Id*. (Citing to RAAAS Memorandum, CR_REM-35 at RemandCR000682).

#### d. *Raw Material Purchase Records*

In the underlying investigation, CBP rejected invoices and packing lists issued by foreign vendors Zhejiang and Shaoxing as suspected counterfeits due to the absence of information CBP

21

deemed necessary to any "authentic" sales invoices.  *See* RAAAS Memorandum, CR_REM-35 at RemandCR000680, RemandCR000682.  At remand, CBP did not dispute Leco's statement that "the type of information that companies chose to include on invoices and packing lists varies widely," instead dismissing it because it "ignores" other, unrelated (and unpersuasive) critiques of the overall documentation.  *See* Remand Redetermination at 34-35.  In doing so, CBP implicitly acknowledged the validity of Leco's point: that the "omission" of information such as the invoice number or incoterms is common and therefore not itself a valid basis for rejection of the invoices.

Turning to the points that Leco's comments "ignored:" first, the assertion that "mill test certificates could not be traced to the hot rolled steel wire rod coils" is not evidence that the invoice and packing list for steel wire rod coils are inauthentic, and it certainly is not evidence of anything with respect to the invoice and packing list for the paper tubes and wrappers from another supplier.  *See* RAAAS Memorandum, CR_REM-35 at RemandCR000682 (cited in Remand Redetermination at 35, fn 191).  Second, as best Leco has been able to determine, only Truong Hong-generated records were provided for the paint and carton purchases because those are the only documents that were produced; that small businesses in rural districts of developing nations do not observe all CBP-recommended formalities in their business transactions is unsurprising.  Third, the degree of reliability of purchase records for paint and cartons has no bearing whatsoever on the authenticity of the steel wire and paper goods purchase records; for CBP to reject one set of documents based on its concerns with regard to another is unreasonable.

Finally, CBP finds significance in the lack of "evidence" of taxes paid on Truong Hong's various raw materials purchases.  *See* Remand Redetermination at 33, 36. Leco notes in response that there is no evidence on the record that Truong Hong did *not* pay the "certain taxes" to which CBP refers.

e.   *Payment Records*

CBP's rejection as "counterfeit" of the Application for Remittance forms documenting Truong Hong's payment for trucking and raw materials (*see* RAAAS Memorandum, CR_REM-35 at RemandCR000680-000683; Remand Redetermination at 35) is without justification on the record.

First, CBP's claim that the fact that the forms were "written in English" was evidence of potential counterfeiting is not true.  RAAAS Memorandum, CR_REM-35 at RemandCR000680; Leco Draft Remand Comments, PR_REM-115 at RemandPR002362.  CBP attempted to deflect Leco's rebuttal explanation as "misplaced" (Remand Redetermination at 35), but as use of English was one of the stated reasons for CBP's rejection of the forms as counterfeit, Leco's response directly rebuts CBP's claims.

Second, Leco rebutted CBP's concerns that the forms lacked certain information, including SWIFT code and beneficiary address, or included incorrect SWIFT codes (*see* RAAAS Memorandum, CR_REM-35 at RemandCR000680, RemandCR000683), by noting that the forms submitted by Leco contain the correct SWIFT code and beneficiary address.  *See* Leco Draft Remand Comments, PR_REM-115 at RemandPR002362-002363.  CBP summarily dismissed this rebuttal as "unpersuasive" given "various inconsistencies and the appearance that the foreign manufacturer self-generated receipts."  Remand Redetermination at 35 (citing to H315522, PR-774 at 9).  It is patently arbitrary and capricious for CBP to reject Leco's information regarding one document based on its own (unsupported) conclusions regarding entirely different documents (i.e., Truong Hong's inventory receipts).  *Id.*

Finally, it "appeared" to CBP "as though the P Stamps were on the forms before the forms were filled out since the handwriting or typing appeared to be on top of the P stamps." *See* RAAAS

Memorandum, CR_REM-35 at RemandCR000680-000681.  At remand, Leco provided specific analysis of the record evidence contradicting this conclusion.  *See* Leco Draft Remand Comments, PR_REM-115 at RemandPR002363-002364.  CBP refused to engage with this analysis, merely stating that it "does not" take it as true and asserting that Leco's analysis "disregards" CBP's discussion of the lack of "financial institution or bank statements or receipts of wire transfer." Remand Redetermination at 35-36.  However, the lack of other types of payment records does not render the Application for Remittance forms "counterfeit."

### 3. *CBP continues to apply adverse inferences against Leco.*

A consistent refrain throughout CBP's rejection of the production documentation submitted by Leco is CBP's inability to "validate" or corroborate that documentation due to the failure of Truong Hong to respond fully to CBP's Request for Information.  *See, e.g.,* Remand Redetermination at 21, 31, 37.  The OR&R Addendum to the Remand Redetermination puts it plainly:

> The alleged production capacity, the lack of sufficient evidence concerning actual production quantities, and the authenticity and reliability of the relevant supporting documents is largely called into question as a result of the failure of Truong Hong to directly participate in the EAPA investigation. While Truong Hong may have provided some documents to the Importers, which were then provided to CBP during the course of the EAPA investigation, these submissions do not adequately substitute for Truong Hong's lack of response to the RFI, which would have provided critical additional information to aid CBP in attempting to verify the production capacity and actual production at the manufacturing site.

Addendum at 4.  By CBP's own admission, the documentation placed on the record by Leco and others is rejected "largely" due to the failure of Truong Hong to participate in the proceeding to the degree requested by CBP.[7]

---

[7] It is not as though Truong Hong failed to participate at all.  Hundreds of pages of documentation submitted by the importers were provided by Truong Hong.  It was only when faced with a request from CBP for over 16 months of production records, bills of materials, work records, purchase orders, invoices, transportation records, and more that

Rejecting the production documentation submitted by Leco and others because Truong Hong failed to participate fully amounts to application of adverse inferences, which CBP has expressly stated is not applicable to Leco, and which therefore is arbitrary and capricious, an abuse of discretion, and not in accordance with law.

### 4. *Distinctions between Leco and other importers merit individual review of Leco.*

CBP treats the ten importers under investigation as a unit, expressly refusing to consider Leco separately from the other importers.  However, the specific information regarding both the involvement of DNA and the reliability of submitted documentation make a clear distinction in many cases between Leco and the other importers.  First, the identified connections between DNA and the other 9 importers do not exist with regard to Leco.  *See* RAAAS Memorandum, CR_REM-35 at 12-13 (identifying all importers or their related parties except for Leco as customers of DNA).  Second, many of the errors and omissions CBP identified in the production documentation are not present in the documentation submitted by Leco.  *See, e.g.,* RAAAS Memorandum, CR_REM-35 at 19, 21-23.  Given that the record evidence differs significantly as between Leco and the other 9 importers, CBP's assertion in H312255 that there is "no requirement…that this determination be broken out according to each importer" (*see* PR-774 at 11) is arbitrary, capricious and an abuse of discretion as it relates to Leco Supply.

### C. In the absence of additional evidence, the relationship between Truong Hong and DNA does not support a finding of evasion.

In the absence of any other evidence indicating evasion, Truong Hong's apparent relationship with DNA is consistent with the entirely logical and lawful response of a business to the sudden imposition of a 246% tax on hangers produced in Vietnam: shifting manufacturing out

---

Truong Hong – which accrues no benefit for compliance nor penalty for failure to comply – was unable to fully respond.  *See* RFI to Truong Hong, CR-67; Truong Hong Response to RFI, PR-86.

of Vietnam.   At a macro level, the supposedly nefarious shifting of hanger exports from Vietnam to Laos and elsewhere upon the imposition of AD/CVD orders on Vietnam (*see* M&B Allegation, CR_REM-29 at RemandCR000603) is not a story of transshipment but of shifting of manufacturing in response to a change in the relative costs of manufacture.   At a micro level, it is not only permissible but entirely to be expected that a Vietnamese national with significant experience in producing hangers would, upon the imposition of AD/CVD, branch out and seek to develop hanger manufacturing capacity in other nearby countries where the duties would not apply.   Therefore, because CBP's other grounds for evasion (Truong Hong's alleged lack of production capacity and CBP's rejection of Leco's production documentation) are without merit, the relationship between Truong Hong and DNA is not evidence of evasion but of rational commercial decision-making.

**III.    CBP's Redaction and Authorization of Redaction of Information Not Qualified for Business Confidential Treatment is Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance With Law.**

Defendant has failed to comply with the Court's Remand Order, which instructed CBP to "consider Plaintiff's argument regarding CBP's compliance with 19 C.F.R. § 165.4(a) and the type of information for which business confidential treatment is permitted, and *remedy any deficiencies, as appropriate*."  *See* Remand Order (emphasis added).   At remand, CBP continued to claim, and allow M&B to claim, business confidential treatment for information that does not qualify for such treatment under 19 C.F.R. § 165.4(a).   CBP's refusal to require rebracketing of documents not in compliance with its regulations, despite Leco's objections, violates this Court's Remand Order and CBP's own regulations, and is therefore arbitrary, capricious, an abuse of discretion and not in accordance with law.

## A. Legal Standards for Business Confidential Treatment Under 19 C.F.R. § 165.4(a)

EAPA regulations provide that business confidential treatment is to be provided only for information that "consists of trade secrets and commercial or financial information obtained from any person, which is privileged or confidential in accordance with 5 U.S.C. 552(b)(4)." *See* 19 C.F.R. § 165.4(a). 5 U.S.C. § 552 obligates federal agencies to make records available for public inspection upon request, in accordance with the Freedom of Information Act ("FOIA"). Section 552(b) provides an enumerated list of items that are exempted from FOIA requests; subsection 552(b)(4) exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential."

### 1. *Trade Secrets*

5 U.S.C. § 552 does not define the term "trade secrets." The Restatement of Torts defines "trade secret" as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Restatement (First) of Torts § 757, cmt. b. Certain federal agencies have adopted their own definitions of "trade secrets" for purposes of FOIA disclosure. *See, e.g.*, 21 C.F.R. § 20.61(b) (FDA regulation defining "trade secrets" exempt from FOIA disclosure to constitute "any commercially valuable plan, formula, process or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort. There must be a direct relationship between the trade secret and the productive process."). Some circuit courts have also adopted definitions of "trade secrets" for purposes of FOIA. *See, e.g., Herrick v. Garvey,* 298 F.3d 1184, 1190 (10th Cir. 2002) ("We have defined a 'trade secret' for the purposes of FOIA as 'a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of

trade commodities and that can be said to be the end product of either innovation or substantial effort.'" (internal citations omitted)).

In other contexts, federal courts apply the trade secret laws of the appropriate state.  *See, e.g., Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112 (Fed. Cir. 1996).  M&B is located in Alabama; Alabama state law defines a "trade secret" as "information that: (a) is used or intended for use in a trade or business; (b) is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process; (c) is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret; (d) cannot be readily ascertained or derived from publicly available information; (e) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; *and* (f) has significant economic value."  *See* AL Code § 8-27-2 (2016) (emphasis added).

### 2.  *Confidential Commercial or Financial Information*

The courts have defined confidential "commercial or financial information" for purposes of § 552(b)(4) to constitute information, "the disclosure of which is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  *National Parks and Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C. Cir. 1974); *see also People for the Ethical Treatment of Animals v. U.S. Dept. Health and Human Services*, 901 F. 3d 343, 350 (D.C. Cir. 2018); *A. Hirsh, Inc. v. United States*, 657 F. Supp. 1297, 1302 (Ct. Intl. Tr., 1987).  The Court of Appeals for the Federal Circuit has ruled that information is already publicly available is not "confidential" within the meaning of § 552(b)(4). *See R&W Flammann GMBH v. United States*, 339 F.3d 1320 (Fed. Cir. 2003).

**B.  At remand, CBP redacted, or allowed M&B to redact, information that is not entitled to business confidential treatment, in violation of 19 C.F.R. § 165.4.**

The revised documents placed on the record at remand are noncompliant with 19 C.F.R. § 165.4 because they bracket information that does not consist of trade secrets and commercial or financial information subject to protections under 5 U.S.C. § 552(a)(b).  This improper bracketing concealed from Leco highly relevant information on which CBP relied in its evasion determination, and denied Leco the opportunity to offer rebuttal information thereto.

*1.  M&B Allegation Exhibit 4*

Both in the original investigation and at remand, M&B bracketed Exhibit 4 to its Allegations, a "Foreign Market Research Report," in its entirety, on the grounds that it "contains trade secrets of the foreign market research firm" that produced the report.  *See* CR_REM-28 at RemandCR000225-000260 (M&B Allegation Exhibit 4); PR_REM-79 at Remand-PR001445-001446 (Public version of Exhibit 4); CR_REM-29 (M&B Allegation) at CR000594.

Even if M&B's assertion were true, the fact that a document "contains" trade secrets does justify redaction of the entire document under 19 C.F.R. § 165.4(a).  However, Exhibit 4 contains no trade secrets, and M&B has not alleged that it contains confidential commercial or financial information.  Accordingly, no part of Exhibit 4 is entitled to business confidential treatment under 19 C.F.R. § 165.4(a).

*a.  No part of Exhibit 4 constitutes a "trade secret" pursuant to 5 U.S.C. § 552.*

M&B alleges that Exhibit 4 contains trade secrets in the form of "the methods and practices of the firm in conducting its investigations as well as the sources of information on which its conclusions are based," which it claims are described in "great detail."  *See* M&B Allegation, CR_REM-29 at RemandCR000594.  However, none of the "methods and practices" described in the report qualify as trade secrets.  [████████████████████████████████████████

▨▨▨▨▨], [▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨]

▨▨▨▨▨▨▨▨▨], [▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨], and [▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

▨▨▨] are hardly such novel methods of investigation as to be trade secrets.  *Id.*

Moreover, M&B's assertions regarding the dire consequences that would supposedly result

from "{d}isclosure of the identity of the firm or its sources" are irrelevant, because the report never

identifies the identity of the firm or its sources.  *See* M&B Allegation, CR_REM-29 at CR000594;

M&B Allegation Exhibit 4, CR_REM-28 at CR000230 (identifying [▨▨▨▨▨▨▨▨▨▨▨▨▨

▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨]), CR000226 (identifying [▨▨▨▨▨▨▨▨▨▨▨▨▨

▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨].  Public disclosure of the report will not result in disclosure

of the identity of the firm or its sources.

   b.  *Much of the information in Exhibit 4 is publicly available and therefore not a "trade
       secret" or "confidential."*

Exhibit 4 to M&B's Allegations contains information derived from public sources.  For

example, much of page 3 of the report consists of information from [▨▨▨▨▨▨▨▨▨▨▨▨

▨▨▨].  *See* CR_REM-28 at RemandCR000228.  Similarly, the [▨▨▨▨▨▨▨▨▨▨▨▨

▨▨▨▨▨▨▨] is available in its entirety on a publicly available online database. *Id.* at CR-

000246; CR_REM-30 (Leco September 15, 2021 Objection to M&B Submission) at

RemandCR000632.  M&B itself has included some of the information that is bracketed in Exhibit

4 in its public version Allegation narrative, including the name and title of Truong Hong's founder,

and the fact that the market researcher conducted a site visit to Truong Hong's location and took

photographs.  *See* M&B Allegation Public Version, PR_REM-80 at RemandPR001792,

RemandPR001792.

Information that is publicly available is neither a "trade secret" nor "confidential or commercial information" within the meaning of § 552(b)(4), and therefore is not eligible for business confidential treatment. *See Herrick,* 298 F.3d 1184, 1190; *R&W Flammann GMBH*, 339 F.3d 1320.

c.  *M&B does not allege that Exhibit 4 contains confidential commercial or financial information.*

M&B has not alleged that Exhibit 4 contains "confidential commercial or financial information," and it that regard it is correct.  None of the information contained in the report can credibly be considered to constitute information, the disclosure of which is likely to cause substantial harm to the market research firm or any other party, or to impair CBP's ability to conduct similar investigations in the future.  M&B's assertion that disclosure of the report would somehow enable more successful evasion efforts by others is without merit; neither the very basic investigative steps taken by the market researcher nor the alleged information about Truong Hong contained in the report provide any novel insight into AD/CVD investigations sufficient to aid "those intent on evading" AD/CVD orders.

**2.  *M&B Allegation Exhibit 7***

M&B continues to claim business confidential treatment for all substantive information in rebracketed Exhibit 7 to its Allegation.  *See* CR_REM-28 at RemandCR000297-000298; PR_REM-79 at Remand-PR001485.[8]   M&B asserts that Exhibit 7 is entitled to business confidential treatment because the information therein "is derived from M&B's business confidential commercial operations and M&B's trade secrets regarding the types and capabilities of the equipment which it uses to manufacture steel wire garment hangers," the disclosure of which "would give competitors valuable insight into M&B's operations and damage its competitive

---

[8] For some reason, the confidential version does not include brackets.

position." *See* M&B Allegation, CR_REM-29 at RemandCR000594.  However, the vast majority of the information contained in the Exhibit is publicly available and therefore ineligible for business confidential treatment, and the remainder is not "commercial or financial information." This document should therefore have been made entirely public.

The first eleven columns of information redacted from Exhibit 7 are patently public information:

- Columns 1 and 2 merely identify the month and year to which the data in the chart pertain.  *Id.*

- Columns 3 and 4 contain shipper and carton quantity information collected by Descartes Datamyne from public shipping records.  *Id.* M&B itself acknowledged that container export data obtained from Descarte is public information when it placed the Descarte reports containing that data on the public record.  *Id*. at RemandCR000299-000314; RemandCR000327-000367; RemandCR000385-000403; RemandCR000409-000420; RemandCR000441-000457; RemandCR000461-000475; RemandCR000487-000489; RemandCR000494-000495.

- Columns 5-11 contain data that is derived from the public carton quantity in Column 4, and other information or assumptions that M&B has placed on the public record in the column headings or in the notes below the chart.  *See* M&B Allegation, CR_REM-29 at RemandCR000594; M&B Allegation Exhibit 7 (Public Version), PR_REM-79 at RemandPR001485.  As the product of entirely public information, the data in Columns 5-11 also constitute public information.

Accordingly, the data in the first 11 columns of the chart in Exhibit 7 are not eligible for business confidential treatment.

The right-most columns of the chart in Exhibit 7 contain M&B's estimates as to the number of production machines that would be required in order to produce the quantity of hangers listed in Column 5.  *See* CR_REM-28 at RemandCR000297-000298.  M&B grounds for claiming business confidential treatment reference M&B's own "types and capabilities of the equipment which it uses to manufacture steel wire garment hangers;" this indicates that M&B's estimates of Truong Hong's production capacity are based in some way on its own facilities' production capacity.  See M&B Allegation, CR_REM-29 at RemandCR000595.  However, to the extent that the hanger forming machines used by M&B are commercially available models offered for sale to the general public, their hourly production capacity of is not a trade secret.  The information is also not "confidential commercial or financial information;" there is no reasonable scenario in which M&B's general production capacity estimates could cause significant commercial harm to M&B. therefore, these columns are also not eligible for business confidential treatment.

### 3.  *M&B Allegation Narrative*

Most of the information bracketed as business confidential information in M&B's Allegation Narrative is bracketed on the grounds that it comes from Confidential Exhibits 4 and 7; to the extent that bracketing of information is improper in the Exhibits, it is also improper in the Narrative.  *See, e.g.,* CR_REM-29 at RemandCR000604-000607.

### 4.  *January 27, 2020  and May 1, 2020 Memoranda to the File Re: Additional Information*

In the January 27, 2020 Memorandum to the File, CBP bracketed the very subject of the memorandum: the [██████████] issued to Truong Hong, and the fact that "[██ █████]" is the entity that is purported not to have issued such documents.  *See* January 27, 2020 Memo to File, CR_REM-38.  In the revised public version of the May 1, 2020 Memorandum to the File, CBP redacted out the central conclusion of the memorandum - that the ASEAN customs

declaration forms submitted by the importers in the underlying investigations "[▨▨▨▨▨▨]" – as well as the reasons provided for this conclusion  *See* May 1, 2020 Memo to File, CR_REM-39.

The bracketed information in these memoranda is not a trade secret.  Nor is it confidential commercial or financial information; disclosure of the bracketed information will not be likely to cause substantial harm to the competitive position of any party, and will not be likely to impair the Government's ability to obtain this type of information in the future, particularly given that the memos do not identify the [▨▨▨▨▨▨▨▨] from whom the information was obtained.

### 5.  *RAAAS Memorandum*

In the RAAAS Memorandum, CBP bracketed information that was bracketed in the January 27, 2020 and May 1, 2020 Memoranda to the File.  *See* RAAAS Memorandum, CR_REM-35 at CR-000680-000681, CR-000683. These redactions violate 19 C.F.R. § 165.4(a) and (e) for the same reason that they did in the underlying Memoranda.  In addition, CBP bracketed the fact that the CBP Attaché [▨▨▨▨▨▨▨▨▨▨▨▨▨], that [▨▨▨▨ ▨▨▨▨▨▨▨▨▨▨▨▨▨▨], and that the CBP Attaché was [▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ ▨▨▨▨].  *Id*. at CR-000666, CR-000678.  This information is neither a trade secret or confidential commercial or financial information. CBP has publicly reported its site visits in other EAPA investigations (*see, e.g., Royal Brush Manufacturing Inc. v. United States*, 483 F. Supp.3d 1294, 1299 (Ct. Int'l Tr. 2020)); there is no basis to claim that [▨▨▨▨▨▨] should be confidential.  Similarly, CBP's [▨▨▨▨▨▨▨▨] is not confidential commercial or business information; even if CBP considers that revealing [▨▨▨▨▨▨▨▨▨▨] could negatively impact its ability to get information in the future, it could easily

have redacted the documents more narrowly to make public [██████████████

███████████] without revealing the reason therefor.

### C. CBP accepted M&B's revised Allegation and Exhibits despite record evidence showing that the documents were noncompliant with § 165.4(a).

At remand, Leco submitted specific, detailed information showing that M&B bracketed information that is publicly available or otherwise not a trade secret or confidential commercial or financial information. *See* CR_REM-30 (Leco's August 23, 2021 objection to M&B revised BCI documents). CBP's refusal to require M&B to rebracket its submissions in disregard of this information is arbitrary, capricious, an abuse of discretion, and not in accordance with law as provided for in 19 C.F.R. § 165.4(a).

CBP's insistence on accepting M&B's improper bracketing of entire documents containing highly relevant information is particularly galling given its rejection of documents submitted by Leco for "over bracketing" of information such as the field headings of CF7501 entry summaries and commercial invoices. *See* PR-548; PR-553; PR-567. Leco objected at the time to this disparate treatment, to no avail. *See* PR-803. For CBP to reject documents submitted by the importers under investigation as "overly bracketed," and then to claim it cannot "question" the allegor's bracketing of a highly relevant document in its entirety, raises questions of impartiality in the treatment of the parties to this investigation.

### D. CBP has provided no substantive justification for its own claims for business confidential treatment of information.

Leco objected to CBP's bracketing of the 1/27/2020 Memo to the File, the 5/1/2020 Memo to the File, and the RAAAS Memorandum twice during the remand proceedings. *See* CR_REM-45 (Leco's September 15, 2021 objections to CBP rebracketing); PR_REM-115 (Leco Draft Remand Comments) at RemandPR002343-002345. CBP did not address or even acknowledge

Leco's objections until the final Remand Redetermination, in which it merely stated that Leco's objections "were not persuasive … CBP reviewed each document it placed on the record and bracketed only that information which it determined must be afforded business confidential treatment under its regulations."  Remand Redetermination at 26-27.  At no time has CBP provided any explanation as to why the bracketed information in the three referenced documents "must be afforded business confidential treatment."  *Id.*

IV. **Lack of Access to Business Confidential Information Violated Leco's Due Process Rights.**

A. **Procedural Due Process Requirements for EAPA Investigations**

This Court has previously ruled that an importer subject to an EAPA administrative investigation has a procedural due process right to notice and an opportunity to be heard.  *See Royal Brush,* 483 F. Supp. 3d at 1305 (*citing PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761–62 (Fed. Cir. 2012); *see also Greene v. McElroy*, 360 U.S. 474, 496 (1959) ("where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue"); *Nereida Trading Co. v. United States*, 34 CIT 241, 248, 683 F. Supp. 2d 1348, 1355 (2010); *Transcom, Inc. v. United States*, 24 CIT 1253, 1271 (2000)).

In *Royal Brush*, this Court found that "to comply with due process, Customs' procedures {governing EAPA investigations} must afford adequate opportunity for importers to respond to the evidence used against them."  *Royal Brush,* 483 F. Supp. 3d at 1306 (*citing Bowman Trans., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 289 n.4 (1974) (holding that due process "forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation.").  In a subsequent dispositive opinion in *Royal Brush*, the Court stated that it is

appropriate to follow the three-pronged factual inquiry established by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. 319, 335 (as quoted in *Royal Brush Manufacturing, Inc. v. United States*, Slip Op. 21-152 at 12-13 (Ct. Int'l Tr. Oct. 2021)).

### B.  *Mathews* Analysis

### 1.  *Private Interest Affected By CBP Action*

The private interest at issue here is Leco's "protected interest in the proper assessment of tariffs on goods already imported,"[9] and its corollary property interest in the duties assessed against it as a result of CBP's evasion determination.  The Supreme Court in *Mathews* stated that "the degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process." *Mathews*, 424 U.S. 319, 342.  In the instant case, CBP has determined that Leco's entries during the period of investigation are subject to antidumping duties of 214.51% under case A-552-812-000, and further subject to countervailing duties of 31.58% under case C-552-813-000, for total duties amounting to [██████] – 246.09% of the entered value of the imported hangers.  *See* RAAAS Memorandum, CR_REM-35 at RemandCR000708. This is a high degree of potential deprivation relative to both the value of the entries in question and the financial resources of a small business such as Leco.

---

[9] *See Nereida Trading Co. v. United States*, 34 CIT 241 (2010).

### 2. *Risk of Erroneous Deprivation of Private Interest Through the Procedures Used, and Probable Value of Additional Safeguards*

CBP's regulations regarding business confidential treatment of information have prevented Leco from reviewing and responding to the very information on which CBP relied in its evasion determination. Had Leco been able to view and respond to business confidential information during the investigation, it could have submitted rebuttal information showing that the information relied upon by CBP was inaccurate, unreliable or inaccurately understood. CBP's procedures thereby clearly risked erroneous deprivation of Leco's private interest. Moreover, the regulations present a substantial general risk of being used as a tool to conceal relevant information – even information that should have been placed on the public record - from opposing parties, compounding the risk of erroneous deprivation.

The implementation of additional safeguards, in the form of an administrative protective order ("APO") permitting access to business confidential information by parties during the administrative proceeding, would entirely mitigate the risk of erroneous deprivation of private interest presented by CBP's current regulations with regard to business confidential treatment of information.

### a. *Lack of access to confidential information prevented Leco from being able to view and respond to information directly relevant to CBP's evasion determination.*

Because CBP's regulations did not permit Leco to examine and respond to certain evidence on which CBP's decision is based, Leco was unable to offer rebuttal information or identify exculpatory information within the confidential record, substantially increasing the risk of erroneous deprivation of Leco's private interest in a correct assessment of AD/CVD duties and avoiding the incorrect assessment of hundreds of thousands of dollars in duties.

i.   <u>Entry Data</u>

One of the principal reasons cited for CBP's finding of evasion against Leco is its factual determination that Truong Hong lacked sufficient capacity to produce the quantity of hangers imported by all ten importers under investigation during the POI.  *See* H315522, PR-774 at 10. CBP expressly rejected Leco's argument that consideration of Truong Hong's exports *en toto* was inappropriate as a basis for a finding of evasion against Leco specifically.  *Id*. at 11.  As such, CBP's finding of evasion against Leco is directly based on evidence on the record of the volume of hangers imported by nine other unrelated entities - i.e., their entry data. These data are placed on the record as part of the DCNTAC reports prepared for each importer, and as attachments to the RAAAS Memorandum.  *See* CR_REM-34/PR_REM-86 (Leco); CR-321/PR-31 (Chunghwa); CR-322/PR-494 (Direco); CR-323/PR-37 (KS Supply); CR-327/PR-498 (LGA); CR-320/PR-29 (NM); CR-361/PR-776 (PNJ); CR-328/PR-47 (SK); CR-319/PR-50 (Wah Hing Lee); CR-330/PR-504 (WHL); RAAAS Memorandum (BCI), CR_REM-35 at RemandCR000691-000708; RAAAS Memorandum (PV), PR_REM-87 at RemandPR001861-001878.

These reports are unquestionably the confidential commercial information of the importers to which they pertain, and as such the entry data are redacted from the public versions of the reports in their entirety.  *Id*.  Leco was therefore unable to review this highly relevant information, and as a result was deprived of any opportunity to offer rebuttal information and argument.

 For example, had an APO been in place that permitted Leco to review the entry reports in question, Leco could have offered rebuttal information and argument with regard to the fact that whereas Leco's entry data shows the country of export as [XX], in many cases the entries of the other importers listed the country of export as [XXX].  *Compare* CR_REM-35 at RemandCR000708 (entry report for Leco) *with* CR_REM-35 at RemandCR000691-000696 (entry

report for N&M, [████████████████████████]), RemandCR000697-000699

(entry report for Direco, [████████████████████]), RemandCR000700-

000702 (entry report for PNJ, [██████████████████]),

RemandCR000703-000704 (entry report for LGA, [████████████████]),

RemandCR000705 (entry report for Chungwha, [████████████████]).  In

fact, of the total [███] entries listed in these reports, [████████████████

████████]].  This is potentially a significant distinction, which weighs against treating all

entries during the period of investigation as like transactions.  If Truong Hong's capacity to

produce all hangers exported from Laos during the period of investigation is relevant evidence of

whether it produced the two containers of hangers that it exported to Leco, it is relevant and

probatory to consider how many shipments actually were [████████████████████

████]].  Leco's inability to submit rebuttal information on this issue materially prejudiced

Leco's ability to defend itself against the government's allegations in the underlying investigation

and thereby substantially risked the erroneous deprivation of Leco's private interests.

ii.  M&B Allegations Exhibits 4 and 7

Leco has argued in this memorandum that M&B's claims for business confidential

treatment for information in Exhibits 4 and 7 to its Allegations are unjustified under the law.   To

the extent that the Court finds any of the substantive information in those documents to constitute

confidential information, however, lack of access to the information redacted as business

confidential in Confidential Exhibits 4 and 7 to M&B's Allegations further substantially risks

erroneous deprivation of Leco's private interests.  *See* CR_REM-28 at RemandCR000225-000260

(M&B Allegation Exhibit 4), RemandCR000297-000298 (M&B Allegation Exhibit 7).  These two

documents served as a significant basis for CBP's decision to initiate an investigation against Leco

(*see* Leco Initiation Memo (PV), PR_REM-94 at RemandPR001909[10]), and Exhibit 4 is expressly

cited in  the Remand Redetermination as the basis for CBP's determination with regard to Truong

Hong's production capacity (*see* Remand Redetermination at 30-31[11]).  Lack of access to the

information redacted from these documents deprived Leco of the ability to review and rebut the

allegations contained therein.

For example, the redaction of Exhibit 4 prevented Leco from objecting to the significant

deficiencies of the report.   At no point is the author of the report identified.  *See* CR_REM-28 at

RemandCR000225-000260.  The report is unsigned and undated, with no indication when the

report was created or when the alleged [site visit] occurred.  *Id*.  The redaction of the report in full

also concealed the flimsy nature of the purported research, which did not include [XXXXXXXX

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]; the

purported information about Truong Hong's production capabilities was obtained solely from

unnamed and unverified "[XXXXXX]."  *Id*.  Moreover, the redaction conceals information that

directly contradicts M&B's claims and CBP's conclusion, such as [XXXXXXXXXXXX

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX] *Id*.  at

RemandCR000232.

### iii.  CBP Memoranda to File and RAAAS Memorandum

The revised public versions of two Memoranda to the File and the RAAAS Memorandum,

placed on the record by CBP during remand, continue to redact information that is central to CBP's

---

[10] "The market research report, Truong Hong's corporate registration giving no indication of manufacturing metal products, and M&B's estimates on necessary production equipment/labor to achieve Truong Hong's export capacity" as principal factors that "reasonably suggest that Leo Supply may be transshipping Vietnamese-origin hangers."
[11] "CBP concluded, after reviewing information submitted by the various importers subject to the EAPA investigation and comparing it to information submitted by M&B, specifically a commissioned report based on a site visit, the importers imported more than the foreign manufacturer could produce."

decision to reject the production documentation submitted by Leco, which has substantially harmed Leco's ability to rebut that conclusion.

In the revised January 27, 2020 Memorandum to the File, CBP bracketed its statement that [█████████████] did not issue any [███████████] to Truong Hong. *See* CR_REM-38. This statement was the basis for CBP's questioning of the "credibility" of the [█████████]. *See* RAAAS Memorandum, CR_REM-35 at RemandCR-000681.

In the revised May 1, 2020 Memorandum to the File, CBP bracketed the opinion of the CBP Attache that the ASEAN customs declaration documents are [██████] as well as the reasons for the Attache's [██████], and further redacted out the reported statement of [██ ████████] that the declarations were [██████]. *See* CR_REM-40. This bracketed information was reproduced repeatedly in the RAAAS Memorandum as a basis for CBP's decision to reject the ASEAN customs declarations. *See, e.g.*, RAAAS Memorandum, CR_REM-35 at RemandCR000681.

The above bracketing obscures from Leco both CBP's conclusions with regard to the documents in question and the misunderstandings and erroneous assumptions underlying those conclusions, and thereby deprived it of the ability to effectively respond thereto.

The revised RAAAS Memorandum likewise brackets highly relevant information, such as the fact that [████████████████████████], or the fact that some of the Manufacturer IDs declared by importers other than Leco [███████████████████ ██████], thereby depriving Leco of the ability to point out this information as rebutting certain of CBP's factual findings. *See* CR_REM-35 at CR000666.

b. *Lack of access to confidential information at the administrative level raises the further risk of erroneous deprivation of private interests through improper withholding of information that is not entitled to business confidential treatment.*

In the underlying investigation, and again over Leco's explicit objections at remand, CBP has withheld from Leco information to which it was entitled as part of the public record.  The invisibility of such violations at the administrative level, the significant barriers to court appeal, and CBP's stated position that it will not investigate whether claims for business confidential treatment meet the regulatory standard, all combine to form a procedural environment in which concealing relevant information from other parties by improperly designating it as business confidential information – whether accidentally or with deliberate intent - is easy, and without consequence to the offending party.  In this context, CBP's regulations prohibiting disclosure of business confidential information raise a substantial risk of erroneous deprivation of private interest through the improper withholding of information that should have been <u>public</u>.

For several reasons, the only practicable method to neutralize this risk is to make confidential information available through a mechanism such as an APO, thus removing the prejudicial effect of improper designation of information as business confidential.

First, under the present regulations, parties do not gain access to the confidential record until after an appeal is filed in court.  In order to learn whether relevant public information has been improperly withheld as business confidential, a party must file a court appeal – without first knowing whether a violation has taken place.  Forcing parties to appeal just to find out whether an appealable issue exists is absurd and a waste of resources.

Second, the requirement to file a court appeal to access the confidential record means that most parties will never know whether relevant or even exculpatory information had been improperly withheld, because a viable court appeal from an EAPA investigation requires financial

resources and access to qualified counsel that many interested parties simply do not have. Case in point: the improper bracketing of information by CBP and M&B in Case 7357 affected all ten importers under investigation, yet only one of the ten was able to file an appeal and therefore be in a position to contest this violation.   Moreover, even for that fraction of importers who successfully contest improper bracketing in court and obtain redress at remand, this remedy comes at the expense of months or years of time, and tens or hundreds of thousands of dollars in legal fees.

Third, CBP has expressly stated that it will not investigate the veracity of claims for business confidential treatment by other parties, and has implicitly refused even to justify its decisions regard to bracketing of information that CBP itself placed on the record.   At remand, CBP stated that it "had no basis under the applicable law and its regulations, to reject M&B's submission," despite record evidence clearly showing that much of the bracketed information does not qualify for business confidential treatment under 19 C.F.R. § 165.4(a).   *See* Remand Redetermination at 25. CBP stated, in effect, that it cannot and <u>will not</u> "question" a party's claims for business confidential treatment, so long as the written "justification" parrots the regulatory criteria for business confidential treatment.   *Id.*   Under this policy, a party may bracket virtually any information - and thereby conceal it from opposing parties - and CBP will not question whether the party's justification for bracketing is truthful or accurate.   CBP also declined to provide any justification whatsoever for its own bracketing decisions, stating only that Leco's objections at remand were "not persuasive."   *Id.* at 26-27.   Parties therefore cannot rely on CBP to ensure that the regulation is followed.

This confluence of factors – the regulation's effect of concealing violations, the significant barriers to judicial redress, and the stated policy of CBP not to police parties' claims for business

confidential treatment or to justify its own - raises the likelihood that improper claims of business confidential treatment will be not the exception but the rule, and even that unscrupulous parties may use claims for business confidential treatment as a tool for the improper concealment of relevant information from opposing parties.  The effect of CBP's regulation mandating absolute withholding of business confidential information is, therefore, the denial of meaningful notice and opportunity to respond even to public information.  This all but precludes the possibility of a fair hearing at the administrative level.   That this has happened to Leco in the instant case not only in the original investigation, but also in a remand in which review of proper adherence to the regulations regarding business confidential treatment of information was expressly ordered by the Court, illustrates the high degree of risk of erroneous deprivation posed by CBP's regulations.

### 3.  *Lack of Fiscal or Administrative Burdens Posed by Substitute Procedural Requirement.*

The implementation of an APO mechanism to allow parties to access business confidential information during the course of an EAPA investigation would pose little or no financial or administrative burden on CBP, because both a well-used template and a technical platform already exist for such a procedure.

First, a robust template already exists in the form of the APO system used by the Department of Commerce for AD/CVD proceedings, as provided for in 19 C.F.R. § 351.304. Given the significant similarities in the type of information submitted in a Commerce AD/CVD investigation or review and in an EAPA evasion investigation, there is no reason why Commerce's APO system could not be used as a template for the development of a similar system for EAPA proceedings, significantly reducing the fiscal and administrative burden.

Second, CBP's new document management portal, eapallegations.cbp.gov, appears already to have the capability to selectively disclose documents to different parties based on the

party's identity and the document's confidentiality status. The parties utilized this system at remand for filing and service of documents. Initially, CBP made all confidential documents filed at remand viewable by both Leco and M&B on the portal. Later, CBP determined that this access was not authorized, and removed Leco's access on the portal to confidential documents placed on the record by M&B or CBP – but preserved Leco's ability to view its own confidential documents. It would therefore appear that CBP already has the ability to selectively disclose different documents to different parties, and therefore that no significant technical changes would be required in order to provide parties designated in an APO with access to confidential documents.

## V. **CBP's refusal to accept Leco's written arguments at remand was an abuse of discretion.**

An agency's decision whether to reject an untimely filed submission is reviewed for abuse of discretion. *See Celik Halat Ve Tel Sanayi AS v. United States*, 485 F.Supp.3d 1404, 1412 (Ct. Int'l Tr. 2020); *Stupp Corp. v. United States*, 359 F. Supp. 3d 1293, 1312 (Ct. Int'l Tr. 2019); *Grobest & I-Mei Indus. (Vietnam) v. United States*, 815 F. Supp. 2d 1342 (Ct. Int'l Tr. 2012). For example, this Court has held with respect to the Department of Commerce that "Although Commerce has the discretion to set and enforce its own deadlines to ensure finality, it may abuse its discretion by rejecting information that would not be burdensome to incorporate and which would increase the accuracy" of the agency's determination. *See Stupp Corp.*, 359 F.Supp.3d at 1312; *see also Celik*, 485 F.Supp.3d at 1412. Decisions to reject out-of-time submissions are reviewed on a case-by-case basis to determine "whether the interests of accuracy and fairness outweigh the burden placed on the Department and the interest in finality." *Grobest*, 815 F. Supp. 2d at 1365.

In this case, CBP set a deadline of 10:00am Eastern on September 27, 2021 for submission of written arguments at remand. *See* PR_REM-106. Through inadvertence, Leco submitted its

written arguments at 4:36pm on September 27, 2021.  *See* PR_REM-115 at RemandPR002346.
CBP rejected the submission, and ignored Leco's request that the late-filed written arguments be
accepted.  *See* PR_REM-107.

Acceptance of Leco's written arguments would not have burdened CBP or negatively
affected its interest in finality.  Incorporation of the information submitted by Leco in its written
arguments would have been no more burdensome to CBP for having received that information at
4:36pm rather than at 10:00am on the same day.  Moreover, with five weeks still to go before the
original November 1, 2021 deadline for filing the remand redetermination, a delay of less than one
day in receiving written arguments could hardly be considered to impact CBP's interest in finality.

Interests of accuracy and fairness strongly support consideration by CBP of Leco's written
arguments.  In its role as impartial investigator and decisionmaker, it is appropriate for CBP to
take into consideration all available information and argument that may increase the accuracy of
its final determination.

As such, CBP's rejection of Leco's written arguments at remand constitutes an abuse of
discretion.

## REQUEST FOR REMAND ON ALL APPLICABLE ERRORS

Where a party alleges multiple deficiencies in an administrative proceeding, it is often this
Court's practice to order remand on only a subset therof, where resolution of the remanded issues
may resolve the case and eliminate the need to consider the merits of the allegations for which
consideration was deferred.  Where limited remand does not result in a final resolution of the case,
however, the Court and the parties may be forced to undergo multiple remands before a final
resolution can be obtained.

One issue-specific remand has already occurred in this case without resolving even the issues for which remand was ordered.  Leco is a small business with limited resources, which can ill afford multiple costly, time-consuming remands as first one, then another procedural violation or deficiency is addressed and potentially readdressed.  Accordingly, Leco respectfully requests that this Court consider all the issues presented by Leco herein and, in the event that the Court determines that remand is warranted for proceedings short of a reversal of the substantive determination of evasion, that this Court order all identified errors and deficiencies to be addressed in the same remand proceeding.

## <u>CONCLUSION</u>

On the basis of the foregoing evidence and authority, Leco requests that this Court grant its Motion for Judgment on the Agency Record and find that the administrative determination of evasion against Leco in Case 7357 is not supported by substantial evidence and is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.  Leco further requests that the Court remand the final administrative determination of evasion to CBP with instructions to find that no substantial evidence exists of evasion with regard to Leco, or in the alternative with instructions to correct all procedural errors and deficiencies identified herein.

Respectfully Submitted,

/s/ Heather Jacobson
Heather Jacobson
Junker & Nakachi P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Plaintiff Leco Supply Inc.*

January 24, 2022

48

## WORD COUNT CERTIFICATE OF COMPLIANCE

Pursuant to the U.S. Court of International Trade's Standard Chambers Procedures 2(B)(1), the undersigned certifies that this brief complies with the court limitation requirement. The word count for Plaintiff Leco Supply Inc.'s Memorandum in Support of Motion for Judgment on the Agency Record, as computed by Junker & Nakachi PC's word processing system (Microsoft Word Version 16.56), is 13,994 words.

Respectfully Submitted,

/s/ Heather Jacobson
Heather Jacobson
Junker & Nakachi P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Plaintiff Leco Supply Inc.*

January 24, 2022