UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| LECO SUPPLY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>v.<br><br>M&B METAL PRODUCTS CO.,<br><br>Defendant-Intervenor. | Court No. 21-00136<br><br>**PUBLIC VERSION**<br><br>Confidential Information<br>Bracketed on<br>*pp 5, 11, 18* |

**PLAINTIFF LECO SUPPLY INC.'S REPLY TO DEFENDANT RESPONSE TO MOTION FOR JUDGMENT ON THE AGENCY RECORD**




Heather Jacobson
Junker & Nakachi P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Plaintiff Leco Supply Inc.*

Dated: July 1, 2022

## <u>TABLE OF CONTENTS</u>

I.   ADVERSE INFERENCES ...................................................................................1

   A.   "ADVERSE INFERENCES" REQUIREMENTS AND LIMITATIONS. ...............................1
   B.   ADVERSE INFERENCES WERE NOT APPLIED IN ADMINISTRATIVE DETERMINATION H315522.2
   C.   IF CBP INTENDED TO APPLY AN ADVERSE INFERENCE, IT FAILED TO DO SO IN ACCORDANCE
WITH LAW. ...................................................................................................................4

II.   SUBSTANTIAL EVIDENCE ..............................................................................5

   A.   DEFENDANT'S ATTEMPT TO DISMISS EVIDENCE OF ARBITRARY AND CAPRICIOUS DECISION-
MAKING AS A MERE "DISAGREEMENT" MINIMIZES THE SERIOUSNESS OF CBP'S ACTIONS............5
   B.   EXEMPLAR ANALYSIS: STEEL WIRE AND PAPER TUBE AND WRAPPER INVOICES. ...................6
   C.   TRUONG HONG'S CONNECTIONS TO DNA ARE NOT EVIDENCE OF EVASION............................9
   D.   CBP HAS RULED THAT A FINDING OF SUBSTANTIAL EVIDENCE OF EVASION MUST BE BASED
ON "AFFIRMATIVE EVIDENCE OF EVASION." ....................................................................10
   E.   THERE IS AMPLE JUSTIFICATION ON THE RECORD TO DISTINGUISH LECO FROM THE OTHER
NINE IMPORTERS. ..........................................................................................................11

III.   CONFIDENTIAL AND PUBLIC ADMINISTRATIVE RECORDS............................12

   A.   LEGAL STANDARD FOR BUSINESS CONFIDENTIAL TREATMENT OF INFORMATION UNDER
THE EAPA. ...................................................................................................................13
   B.   CBP VIOLATED ITS OWN REGULATIONS BY PERMITTING REDACTION OF NON-BCI FROM THE
PUBLIC RECORD AND THEREBY COMMITTED PREJUDICIAL ERROR. ...............................................14
      1.   *CBP improperly permitted M&B to redact information that does not qualify for
business confidential treatment.* ....................................................................................14
      2.   *CBP's redaction of the RAAAS Memorandum and the Memoranda to the File violates
19 C.F.R. § 165.4(e).* ......................................................................................16
      3.   *These errors caused substantial harm to Leco.* ...........................................................17
   C.   DUE PROCESS ............................................................................................................19
      1.   *Entry Data* .....................................................................................................20
      2.   *M&B Allegations and Exhibits* .......................................................................21

IV.   CBP REFUSAL TO ACCEPT LATE FILING OF WRITTEN ARGUMENTS AT
REMAND ......................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Celik Halat Ve Tel Sanayi AS v. United States*, 485 F.Supp.3d 1404 (Ct. Int'l Tr.  2020)…..22, 23

*CSC Sugar LLC v. United States*, 413 F. Supp. 3d 1318 (Ct. Int'l Tr. 2019)…………….9, 17, 19

*Gerber Food (Yunnan) Co., Ltd. v. United States et al.*, 387 F. Supp. 2d 1270
(Ct. Int'l Tr. 2005)…………………………………………………………………………...2

*Grobest & I-Mei Indus. (Vietnam) v. United States*, 815 F. Supp. 2d 1342
(Ct. Int'l Tr. 2012)…………………………………………………………………...22, 23

*Mathews v. Eldridge*, 424 U.S. 319 (1976)……………………………………………………20

*Mid Continent Nail Corp. v. United States et al.*, 846 F.3d 1364 (Fed. Cir. 2017)…………...19

*R&W Flammann GMBH v. United States*, 339 F.3d 1320 (Fed. Cir. 2003)……………………15

*Royal Brush Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357 (Ct. Int'l Tr. 2021)……………..9

*Shinseki v. Sanders*, 556 U.S. 396 (2009)……………………………………………………17

*Stupp Corp. v. United States*, 359 F. Supp. 3d 1293 (Ct. Int'l Tr.  2019)…………………...22, 23

*U.S. Steel Corp. v. Environmental Protection Agency*, 595 F.2d 207 (5th Cir. 1979)…………...19


**Statutes**

5 U.S.C. § 552………………………………………………………………………….13, 15

5 U.S.C. § 706……………………………………………………………………………18

18 U.S.C. § 1905……………………………………………………………………...13, 14

19 U.S.C. § 1517…………………………………………………………………….1, 2, 4


**Regulations**

19 C.F.R. § 165.4…………………………………………………………………*passim*

19 C.F.R. § 165.5…………………………………………………………………...22

19 C.F.R. § 165.6………………………………………………………………………………1

19 C.F.R. § 165.23……………………………………………………………………………13

19 C.F.R. § 165.26……………………………………………………………………………13

19 C.F.R. § 165.41……………………………………………………………………………13

19 C.F.R. § 165.42……………………………………………………………………………13

19 C.F.R. § 165.44……………………………………………………………………………13

## Other Authorities

Remand Redetermination, *Global Aluminum Distributor LLC v. United States*,
Cons. Court No. 21-00198 (Ct. Int'l Tr. June 13, 2022), ECF No. 93………………………………..10

Plaintiff Leco Supply, Inc. ("Leco") replies herein to Defendant's Response to Plaintiff's Motion for Judgment Upon The Agency Record, ECF 60 (May 20, 2022) ("Defendant Response").  As set forth below, Defendant United States' effort to justify the evasion determination of U.S. Customs & Border Protection ("CBP") is unpersuasive because it seeks to rely on adverse inferences that CBP did not make, and fails to address the significant deficiencies in CBP's analysis of Leco's production documentation.  Defendant further conflates CBP's prejudicial error in failing to follow its own regulations prohibiting redaction of non-business confidential information with the Due Process violations that arose when CBP did act in accordance with those regulations, and in so doing fails to rebut the existence of either.  Finally, Defendant's argument that CBP was justified in rejecting Leco's written arguments at remand misunderstands and mischaracterizes the law.

## I.     <u>Adverse Inferences</u>

Defendant argues that Leco "ignores completely CBP's application of an adverse inference against Truong Hong, and the impact of that finding on CBP's determination."  Defendant Response at 23.  However, CBP *did not apply an adverse inference* in H315522.  *See* PR-774.  Even if CBP had intended to apply an adverse inference, it failed to do so in a manner that is in accordance with law.

### A.  "Adverse inferences" requirements and limitations.

The EAPA provides that if a party has failed to cooperate in an EAPA investigation to the best of its ability, CBP "may…use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available to make the determination."  19 U.S.C. § 1517(c)(3)(A); *see also* 19 C.F.R. § 165.6.  Such adverse inference may include "reliance on information derived from" the allegation, another determination, or any other available

information.  *See* 19 U.S.C. § 1517(c)(3)(C).  Several points must be noted with regard to this language.

First, application of adverse inferences is neither mandatory nor automatic; it is something that CBP "may" but is not required to do.  Application of adverse inferences therefore requires an affirmative action or statement by CBP.

Second, an adverse inference is specifically and exclusively defined to constitute "selecting from among the facts available" in a manner that is adverse to the party in question; i.e., "reliance" on certain "information" on the record. *See* 19 U.S.C. § 1517(c)(3)(A), (C). Selection from among "facts" that are "available" on the record or in one of the § 1517(c)(3)(C) sources is the *only* action the statute permits as a consequence of a party's noncooperation.  *Id.*

The statute does not authorize CBP to presume a particular legal conclusion as a punishment for noncooperation, but rather only to be selective in terms of what facts such conclusion is to be based upon.  *See, e.g., Gerber Food (Yunnan) Co., Ltd. v. United States et al.*, 387 F. Supp. 2d 1270, 1285 (Ct. Int'l Tr. 2005) (Ruling that identical statutory language in 19 U.S.C. § 1677e(b) "does not permit Commerce to choose an antidumping assessment rate as an 'adverse inference' without making factual findings."). It is *not* a blank check to make any inference that CBP wants that is adverse to the interests of the party in question.

**B.  Adverse inferences were not applied in administrative determination H315522.**

Although CBP attempted to make adverse inferences in its original determination (s*ee* PR_REM-96 at RemandPR001935), that initial determination was superseded by the *de novo* administrative determination H315522 with regard to Leco Supply, and the decision in H315522 lacks any indication of reliance on an adverse inference against Truong Hong.

H315522 makes no mention of adverse inferences, and its reasoning shows that CBP did *not* in fact apply an adverse inference against Truong Hong.  *See* P.R. 774.  With regard to production capacity, for example, CBP stated that "nothing within the record indicates that Truong Hong was ever able to produce wire hangers at such a level to meet the amount it exported to the United States during the period of investigation," indicating that CBP considered the record evidence *as a whole* with regard to capacity rather than selecting specific facts to rely on.  *Id*. at 10.  CBP further claimed that "*even without adverse inferences*, the record fully and adequately supports the finding that the wire hangers are of Vietnamese origin" – clearly indicating that adverse inferences were not applied.  *Id*. at 11 (emphasis added).

The Remand Redetermination also does not rely on an adverse inference against Truong Hong.  CBP's Remand Redetermination letter dated November 9, 2021 makes no mention whatsoever of adverse inferences.  *See* Remand Redetermination at 41-44.  Its findings regarding Truong Hong's production capacity are expressly stated to be based on "the totality of the evidence."  *Id*. at 43.  Its only mention of Truong Hong's failure to "directly participate"[1] is for the purpose of justifying CBP's rejection of the documentation submitted by Leco and other importers, but that rejection is stated to be the result of an "inability to corroborate" the documentation as opposed to an adverse inference with regard to reliability.  *Id*. at 44.

Accordingly, neither H31552 nor the Remand Redetermination support Defendant's assertion that CBP's finding of evasion in those determinations was based in any part on the application of an adverse inference against Truong Hong.

---

[1] The qualifier "directly" acknowledges that Truong Hong did participate by providing hundreds of pages of record evidence (characterized by CBP as "some documents") to the importers.  *Id*.

3

**C. If CBP intended to apply an adverse inference, it failed to do so in accordance with law.**

Even if CBP had intended its rejection of documentation submitted by Leco to be an adverse inference against Truong Hong, such an action is not a lawful application of 19 U.S.C. § 1517(c)(3).

First, as stated earlier, nothing in H315522 or the Remand Redetermination gives any indication that CBP intended to apply an adverse inference; to the contrary, both determinations gave every indication that the decisions contained therein were *not* based on the application of an adverse inference.  Defendant's attempt to argue retroactively that the rejection of Leco's documentation was due to application of adverse inferences is unsupported by the record.

Second, Defendant has failed to explain how CBP's blanket pronouncement that "any documentation purported to be from Truong Hong…shall be deemed unreliable" constitutes selection "from among the facts available."  *See* Defendant Response at 23; 19 U.S.C. § 1517(c)(3)(A).

Third, as expressly stated in the statute, if a party fails to participate, CBP may only make an inference "adverse to that party."  *See* 19 U.S.C. § 1517(c)(3)(A).  Defendant claims that rejection of documentation submitted by Leco constitutes an adverse inference against Truong Hong, yet it is Leco that will experience any adverse consequences of this decision, not Truong Hong.  Given that in an evasion investigation virtually all evidence of production in a given company must come from the producer, Defendant's interpretation of adverse inferences would ensure that no importer has any hope of prevailing in an evasion investigation unless the producer – who is not the target of the investigation and will not be liable for duties or penalties regardless of whether it participates – cooperates fully with every request for information, no matter how onerous.

II.   **Substantial Evidence**

   A. **Defendant's attempt to dismiss evidence of arbitrary and capricious decision-making as a mere "disagreement" minimizes the seriousness of CBP's actions.**

Defendant repeatedly attempts to dismiss Leco's objections to CBP's justifications for rejecting Leco's documentation as "nothing more than disagreement with how CBP considered and weighed record evidence." Defendant Response at 28, 29, 30, 32. CBP's manner of considering and weighing the record evidence was arbitrary, capricious, and an abuse of discretion, and Leco indeed disagrees with it, but submits that objection to such behavior can hardly be considered "nothing."

Leco submitted invoices, payment records, transportation records and Lao customs records documenting the import and/or purchase by Truong Hong of sufficient raw materials to produce its hangers, and export by Truong Hong from Laos of the exact containers imported by Leco. CBP rejected every one of these documents as "unreliable" or "counterfeit" on grounds that do not meet even the most basic threshold for reasonableness. Some were rejected based on assumptions that have been demonstrated to be factually inaccurate or unsupported.[2] Some were rejected because of deficiencies CBP claimed to exist in other, unrelated documents.[3] Others were rejected because CBP declared the type of document "not acceptable," despite record evidence that CBP's preferred document type was not required in Laos.[4] Still others were

---

[2] *E.g.*, the ASEAN Customs Declaration Documents were originally disregarded on an unfounded and erroneous assumption that [                    ]. *See* CR_REM-35 at RemandCR000680-000681, RemandCR000683. At remand, Leco demonstrated that these "[          ]" were baseless. *See* Leco Remand Rebuttal Information, PR_REM-103 at RemandPR002068-002069, RemandPR002115 (Exhibit 4); PR_REM-104 at RemandPR002145-002222 (Exhibits 10-14).

[3] *E.g.*, CBP argued that it was justified in rejecting invoices and packing lists for purchase of steel wire and as suspected counterfeits because a payment receipt for cardboard cartons (purchased from an unrelated vendor) was "self-generated." *See* Remand Redetermination at 35; *see also* PR-774 at 9; CR_REM-13 at RemandCR000093 (Attachment E31).

[4] *E.g.*, CBP summarily dismissed the trucking bills showing transport of raw materials to Truong Hong and finished hangers from Truong Hong in Laos because they were "not an acceptable substitute to a through bill of lading," despite the fact that bills of lading are not required for import into or export from Laos. CR_REM-35 at

rejected because of purported deficiencies in documents submitted by other importers – but not in those submitted by Leco.[5]

In its Response, Defendant ignores the specific and detailed rebuttal information provided in Leco's Memorandum In Support Of Its Motion For Judgment On The Agency Record, ECF 52 (January 24, 2022) ("Leco Memorandum"), instead quoting conclusions from CBP's original evasion determination (some of which even CBP did not continue to defend in its Remand Redetermination) and insisting that Leco's objections to "how" CBP arrived at these conclusions amounts to nothing more than a difference of opinion.  *See* Defendant Response at 27-32.  As such, Defendant failed to show that CBP's rejection of the documentation was "reasonable."

**B.  Exemplar Analysis: steel wire and paper tube and wrapper invoices.**

Leco believes a comprehensive review of CBP's assertions regarding an exemplar category of documents will best illustrate the arbitrary and capricious nature of CBP's analysis of the record.  Leco accordingly provides such a review of CBP's statements regarding the invoices and packing lists issued to Truong Hong by its suppliers for hot rolled steel wire rod coils, and for paper tubes and wrappers, referred to hereafter as "steel wire and paper tube invoices."  *See* CR_REM-4, CR_REM-7.

In the RAAAS Memorandum, CBP stated that the lack of "purchase order number, payment terms, incoterms, or payment instructions" on the steel wire and paper tube invoices, as well as vendor address and sold-to party for the paper tubes invoice, caused it to suspect the

---

RemandCR000682, RemandCR000684; Leco Remand Rebuttal Information, CR_REM-103 at RemandCR000681, CR_REM-104 at RemandPR002231, RemandPR002236.

[5] *E.g.,* the Application for Remittance forms documenting payment by Truong Hong for steel wire, paper tubes, and transportation services were originally rejected in part because some of the Remittance Forms submitted by other importers did not include SWIFT codes or beneficiary address; however the Remittance forms submitted by Leco did contain this information.  CR_REM-35 at RemandCR000680, RemandCR000683;  *see also* PR_REM-115 at RemandPR002362-002363.

documents were inauthentic or "counterfeits."  *See* CR_REM-35 at RemandCR000682-83.  At remand, Leco rebutted this illogical conclusion by pointing out that omission of one or more of these data from invoices is not uncommon; in fact both Truong Hong and Leco omit some of these data from their invoices.  PR_REM-115 at RemandPR002362.

In its Remand Redetermination, CBP did not dispute Leco's rebuttal, instead pivoting to new justifications for rejecting the steel wire and paper tube invoices.  *See* Remand Redetermination at 35.  However, its characterization of the actual evidence on which it relied for these new justifications was highly misleading, and the evidence was unrelated to the steel wire and paper tube invoices.

First, CBP argued that "CBP was unable to correlate alleged purchases of the raw materials to other documentary evidence purportedly supporting country of origin."  *See* Remand Redetermination at 35. However, the only "evidence" that CBP cited was an assertion in the RAAAS Memorandum that "mill test certificates could not be traced to hot rolled steel wire rod coils." *Id*. at fn 191. Even if this assertion is true, it "is not evidence that the invoice and packing list for steel wire rod coils are inauthentic, and it certainly is not evidence of anything with respect to the invoice and packing list for the paper tubes and wrappers from another supplier." Leco Memorandum at 22.

Second, CBP argued that the steel wire and paper tube invoices must be inauthentic because "the foreign manufacturer appears to have self-generated receipts for the raw materials and packaging materials it purchased," and "certain payments could not be traced through bank records."  Defendant Response at 35.  CBP conveys the explicit impression that these are two separate issues and that both apply directly to the steel wire and paper tube invoices.  However, the "evidence" cited by CBP in support of these assertions (page 9 of H315522 for the first

assertion, and page 9, fn 24 of H315522 for the second) reveals that in fact, both statements

pertain to the same, single document that has *nothing* to do with purchase of steel wire or paper

tubes and wrappers from China:

> Truong Hong appears to have self-generated receipts for raw materials and packaging materials it purchased. Specifically, the receipts for packaging materials provided by Leco Supply were printed on Truong Hong's own letterhead.[24]

> [24] *See e.g.* Leco Supply's Attachment E31 to Response to RFI, receipt for payment of cartons. Truong Hong's letterhead is not redacted from the public version. This same letterhead is found on a number of other receipts for raw materials provided by other importers and for payment of electricity bills by Truong Hong submitted by Leco Supply and other importers in response to the RFI. Some of these receipts are also stamped "CASH PAID," which further calls their legitimacy into question as payment cannot be traced through bank records.

PR-774 at 9; *see also* CR_REM-13 at RemandCR000093 (Attachment E31).  This language

reveals that CBP's claims of "self-generated receipts" and of inability to trace "certain payment"

are the same assertion, the latter being the "specific" deficiency allegedly posed by the former.

The footnote further reveals that this entire broad assertion is based on a record for purchase of a

different product from a different supplier.  *Id*.

Leco offered the above rebuttal information in abbreviated fashion in its Memorandum.

*See* Leco Memorandum at 22.  In its Response, however, Defendant failed entirely to respond to

these points.  In its "statement of facts," Defendant reiterated the RAAAS Memorandum's

"missing" information arguments that CBP had abandoned at remand, and cited other claims

regarding "wrappers with specific designs" that were expressly cited in the RAAAS

Memorandum as applicable *only* to other importers – *not* to Leco.  *See* Defendant Response at 9;

CR_REM-35 at RemandCR000683.  In its "analysis," every objection that Defendant raised

regarding "invoices for purchases of raw materials" pertained to other documents issued by other

companies.  *See* Defendant Response at 30-31.

From start to finish, CBP's treatment of the steel wire and paper tube invoices has been based on unsupported assumptions and irrelevant records, and accordingly is arbitrary, capricious, and an abuse of discretion; the record shows that the analysis of other documents submitted by Leco suffers from similarly unreasonable treatment, and is likewise arbitrary, capricious and an abuse of discretion.  Defendant's Response fails to rebut or remediate CBP's failings in this regard.

**C.  Truong Hong's connections to DNA are not evidence of evasion.**

Whether a "rational connection" exists between a particular piece of evidence and the conclusion CBP has drawn therefrom must be reviewed within the context of the entire administrative record.  See *Royal Brush Mfg., Inc. v. United States*, 545 F. Supp. 3d 1357, 1365 (Ct. Int'l Tr. 2021) (stating that articulation of a "rational connection between the facts found and the choice made" must begin with an examination of "the relevant data"); *see also CSC Sugar LLC v. United States*, 413 F. Supp. 3d 1318, 1323 (Ct. Int'l Tr. 2019) ("{W}hen addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action was reasonable given the circumstances presented by the whole record." (internal citations and quotations omitted)).  In this case, the record as a whole shows that no rational connection exists between the purported relationship between Truong Hong and DNA on the one hand, and the CBP's conclusion that this relationship is evidence of transshipment on the other.  CBP acknowledges that Truong Hong produced hangers in Laos during the period of investigation, and thereby admits it is possible Truong Hong to have connections to DNA *and* produce hangers in Laos.  There is no affirmative evidence of transshipment.  When CBP's baseless and irrational objections thereto are set aside, the documentation submitted by Leco indicates that its hangers specifically were among those produced by Truong Hong in Laos.  In this context, CBP's claim

that certain identified connections between Truong Hong and individuals previously associated with DNA constitutes evidence of evasion by Leco is not rational or reasonable, and therefore is arbitrary and capricious and an abuse of discretion.

**D. CBP has ruled that a finding of substantial evidence of evasion must be based on "affirmative evidence of evasion."**

In its Remand Redetermination in *Global Aluminum Distributor LLC v. United States*, Cons. Court No. 21-00198, CBP ruled that a finding of substantial evidence of evasion must be based on "affirmative evidence of evasion." *See* Remand Redetermination, *Global Aluminum Distributor LLC v. United States*, Cons. Court No. 21-00198 (Ct. Int'l Tr. June 13, 2022), ECF No. 93 ("Global Aluminum Remand Redetermination") at 4. Because no "affirmative" evidence of evasion exists in this case, CBP's finding of evasion conflicts directly with this express decision and is therefore arbitrary and capricious.

In the Global Aluminum Remand Redetermination, CBP ruled the Dominican supplier's "ties to China" – which included Chinese ownership, Chinese employees and even Chinese suppliers – did not constitute "actual proof" of evasion. *Id*. This contrasts starkly with CBP's assertion that lesser connections between Truong Hong and DNA constitute evidence of evasion. *See* Defendant Response at 31.

Even more significantly, the Global Aluminum Remand Redetermination constitutes an acknowledgment by CBP that a determination that "substantial evidence" of evasion must include "affirmative" or "actual" evidence of evasion. *See* Global Aluminum Remand Redetermination at 4. Thus, CBP's claim in H315522 that the substantial evidence standard was met by "the issue of the reliability of the production documentation, coupled with the evidence demonstrating significant ties between Truong Hong and a Vietnamese company that produces covered merchandise" (PR-774 at 9) – neither of which constitute "affirmative" evidence of

10

evasion – directly conflicts with its position in *Global Aluminum* and is therefore arbitrary and capricious.

**E. There is ample justification on the record to distinguish Leco from the other nine importers.**

In its attempt to avoid the inconvenient fact that Truong Hong had undisputed capacity to produce the quantity of hangers imported by Leco, Defendant asserts that "under Leco's construction," CBP must give "the benefit of the benefit of the doubt" to "all ten importers." Defendant Response at 26. Yet Leco has repeatedly argued that differences between Leco and the other importers mandate individualized consideration of Leco's imports – including with regard to whether its hangers were produced in Laos. The record evidence identifies significant differences between Leco and the other nine importers:

- Many of the alleged "deficiencies" CBP identified with regard to other importers' documentation are not present in Leco's documents. *See* Leco Memorandum at 25; CR_REM-35 at RemandCR000680-84.

- Connections that CBP identified between other importers and DNA do not exist with regard to Leco. *See* Leco Memorandum at 25; CR_REM-35 at RemandCR000673-74.

- Leco submitted production documentation for *all* of Leco's imported containers during the period of investigation, whereas the other importers either did not provide documentation or provided documentation only with regard to a small subset of their shipments.[6]

---

[6] CBP requested production documentation for all entries during the POI for Leco, [                    ] only; it requested documentation for only a small fraction of entries by the other importers. *See* CR_REM-35 at RemandCR000691-000708 (showing number of containers imported by each importer); CR-365-374 (CF28s to importers); CR-64-74, 333 (Initial RFIs to importers); CR-262-275 (Supplemental RFIs to importers). Neither SK Supply nor KS Supply responded to requests for information. *See* PR-196, PR-545. No importer submitted production documentation for entries not specifically requested by CBP.

Given significant differences between Leco and the other importers with respect to connection to DNA, and the quality and comprehensiveness of the documentation submitted, the substantial evidence on the record supports a conclusion that <u>Leco's</u> containers were produced in Laos – and does *not* require a similar conclusion with regard to the other nine importers.

## III.   <u>Confidential and Public Administrative Records</u>

In its Memorandum, Leco made two, separate arguments with regard to the administrative record:

1. First, CBP improperly redacted (and allowed M&B to redact) from the public record substantive, relevant information that is *not entitled to business confidential treatment* under 19 C.F.R. § 165.4(a), which information Leco is entitled under the law to receive in its original form (i.e., without summary).  In so doing, CBP violated its own regulations, and thereby caused harm to Leco.  *See* Leco Memorandum at 26-36.

2. Second, the EAPA and/or its implementing regulations, in failing to provide a mechanism for Leco or its counsel to view and respond to information that *was* entitled to business confidential treatment, violated Leco's Due Process rights under the Fifth Amendment. *See* Leco Memorandum at 36-46.

These are two, separate issues: one, that CBP improperly allowed the redaction of information that should have been placed on the public record and thereby committed prejudicial error; and the other, that the statute and/or regulations' failure to provide access to the confidential record violates Leco's Due Process rights.

In its Response, Defendant combines and conflates these two separate issues into one. *See* Defendant Response at 32-40.  Defendant's logic is difficult to follow – in its prefatory

paragraph[7] it appears to address only the first issue, but the substance of its arguments seems responsive only to the second issue.  Leco replies to Defendant's arguments by once again separating out the two issues into separate discussions.

### A. Legal Standard for Business Confidential Treatment of Information Under the EAPA.

The EAPA and its implementing regulations only permit parties to claim business confidential treatment for "business confidential information ("BCI")," which is defined to consist *solely* of "trade secrets and commercial or financial information obtained from any person, which is privileged or confidential in accordance with 5 U.S.C. § 552(b)(4)."  *See* 19 C.F.R. § 165.4(a).  *All* other information placed on the administrative record *must* be made available to all interested parties as part of the public record.  *See* 19 C.F.R. §§ 165.23(c), 165.26(a)(2), 165.26 (b)(2), 165.41(b), 165.42, 165.44 (requiring parties to serve public versions of their submissions on all parties to the investigation); 19 C.F.R. § 165.4(e) (providing that CBP shall only redact from the public record information that constitutes "business confidential information.").  Non-BCI information must be made available to the parties in the same format that it is provided to CBP; nothing in the regulations permits CBP or parties to provide a public summary in lieu of the original information where the original information does not qualify for business confidential treatment.

In its Response, Defendant incorrectly asserts that release of certain information is prohibited by 18 U.S.C. § 1905.  That statute does not provide an absolute prohibition on the disclosure of the information described therein; rather, it prohibits agencies from disclosing such information "in any manner or to any extent not authorized by law." *See* 18 U.S.C. § 1905.

---

[7] *See* Defendant Response at 32 ("Leco first argues that 'CBP's refusal to require rebracketing of documents not in compliance with its regulations…'").

Because release of information that does not meet the regulatory definition of BCI is not only

authorized but required by the EAPA's implementing regulations, 18 U.S.C. § 1905 adds nothing

to the discussion.

**B. CBP violated its own regulations by permitting redaction of non-BCI from the public record and thereby committed prejudicial error.**

*1. CBP improperly permitted M&B to redact information that does not qualify for business confidential treatment.*

Defendant claims that CBP "reasonably deferred to M&B and Leco as to what

information they consider to be business confidential," and that M&B provided an "adequate

explanation" for its request for confidential treatment. Defendant Response at 35, 36. This

assertion of "reasonableness" entirely ignores Leco's detailed enumeration of redacted

information that is already on the public record *in this proceeding* and therefore definitionally

not BCI. *See* Leco Memorandum at 30-32; 35.

Defendant attempts to justify CBP's decision to allow M&B to redact Exhibit 4 to its

allegations in its entirety,[8] and Exhibit 7 in substantial entirety, in part on the grounds that much

of the information that was redacted from those documents was "discussed in detail in the public

allegation document." Defendant Response at 35. However, that M&B made certain

information public in its allegations narrative does not somehow excuse or remediate its

redaction of that same information from the confidential exhibits. On the contrary: the public

release of this information in one document eliminates any possible claim M&B could have for

business confidential treatment of the same information in another document. Defendant appears

to fundamentally misunderstand this point: in a footnote, it asserts that Leco "concedes that

---

[8] Contrary to Defendant's assertion that M&B "unbracketed the tables of contents to the foreign market report it had commissioned," the version of Confidential Exhibit 4 placed on the record at remand remains bracketed in its entirety. *See* Defendant Response at 16; CR_REM-28 at RemandCR000225-RemandCR000260.

'much of the information in exhibit 4 is publicly available.'" Defendant Response at 36, fn 8.

The concession, however, is Defendant's. Publicly available information is not "privileged or

confidential in accordance with 5 U.S.C. § 552(b)(4)." 19 C.F.R. § 165.4(a); *see R&W*

*Flammann GMBH v. United States*, 339 F.3d 1320 (Fed. Cir. 2003). Therefore, publicly

available information *is not eligible* for business confidential treatment under 19 C.F.R. §

165.4(a). Defendant has effectively acknowledged that M&B was not entitled to claim business

confidential treatment for that information, and therefore that CBP erred in allowing it to do so.

Defendant further attempts to justify the redaction of M&B's Confidential Exhibit 4 by

claiming that "the only information redacted is the sources of the information underlying the

allegation, and the specifics of the production capacity." *Id*. at 37. This is obviously untrue.

M&B redacted Exhibit 4, a 35-page report, in its entirety, and in so doing redacted copious

amounts of substantive information. *See* M&B Allegations, Exhibit 4, CR_REM-28 at

RemandCR000225-RemandCR000260.

With regard to Exhibit 7, Defendant somehow both acknowledges and disregards the fact

that the vast majority of the redacted information is "a list of public information." *See* Defendant

Response at 37. Again, public information is not entitled to business confidential treatment. 19

C.F.R. § 165.4(a); *R&W Flammann GMBH*, 339 F.3d 1320. Even if some information in Exhibit

7 may qualify for business confidential treatment (which Leco disputes), only the specific

information that meets the regulatory definition of business confidential information can be

redacted – not the public or otherwise non-BCI information right next to it.

Defendant also seems to argue that M&B's redaction of substantive, relevant, non-BCI

information in Exhibit 7 should be permitted because CBP permitted Leco to bracket email

headers. *See* Defendant Response at 38. The two situations are entirely different. Leco

requested and received permission from CBP to forego the deeply onerous process of individually redacting 142 pages of emails, where the only non-BCI consisted of email headers – "To;" "From;" Date;" etc. – that have no substantive value or relevance.[9]  *See* CR-222; CR-301. M&B has not objected, and to the extent that CBP permitting Leco to redact these documents in full was an error, it is a harmless error.  By contrast, the public and otherwise non-BCI information that CBP permitted M&B to redact from Exhibit 7 includes shipper and carton quantity information derived from public records, calculations of hanger quantities based entirely on public information, and calculations based on M&B's estimates as to Truong Hong's per-machine production capacity.  *See* PR_REM-79 at RemandPR001485; CR_REM-28 at RemandCR000298;[10] *see also* Leco Memorandum at 32-33.  This information is substantive and highly relevant to M&B's claims – and CBP's conclusions – with regard to the production capacity of the Truong Hong factory, and its redaction from the public record in violation of 19 C.F.R. § 165.4(a) substantially harmed Leco's ability to defend itself.

2.   ***CBP's redaction of the RAAAS Memorandum and the Memoranda to the File violates 19 C.F.R. § 165.4(e).***

With respect to the RAAAS Memorandum and the Memoranda to the File, Defendant argues that Leco was not harmed by the improper redaction of those documents because it was "permitted on remand to provide" information rebutting "CBP's conclusion that the government-issued certifications were fraudulent."  *See* Defendant Response at 40.  However, this argument is only applicable to the January 27, 2020 Memorandum to the File; Defendant fails to defend

---

[9] Leco also received permission to redact entirely 351 pages of customer invoices, where the only non-BCI was the invoice template form.  *See* CR-224-232.  At remand, Leco revised the public version of the customer invoices to include a blank copy of the invoice template, so that the only public information in those documents was in fact made available in its original form.  *See* PR_REM-33 at RemandPR000970.

[10] Exhibit 7 is not bracketed at all in either CR_REM-28 or PR_REM-79, but information present in the former was deleted from the latter.  A comparison of the two documents is necessary to understand which information was redacted as supposedly BCI.

CBP's redaction of other information the other two Memoranda. *See* Defendant Response at 40;

Leco Memorandum at 34-35. Furthermore, Defendant's assertion is false: on remand, CBP

instructed the parties that all rebuttal information and written arguments must be limited to

information "pertinent to the revised public versions of documents placed on the administrative

record," and stated that "CBP will <u>NOT</u> accept any comments or the submission of information

unrelated to the revised public versions." *See* PR_REM-82 at RemandPR001820 (emphasis in

original). Leco was therefore prohibited from submitting rebuttal information or argument in

direct response to any bracketed information in the revised versions of these documents,

including improperly bracketed information. That Leco was able to address the narrow issue of

the authenticity of the certificates of origin based on other information made public in the revised

public version of the RAAAS Memorandum does not mitigate the harm of the error: Leco was

unable to comment on the reasonableness of the memorandum's treatment of the certificates or

CBP's reliance thereon.

Finally, it is unclear the extent to which Defendant considers the quality of public

summary to be relevant to the issue of improper bracketing of non-BCI. It is not relevant. The

regulations do not permit redaction of non-BCI, and public summary of non-BCI (no matter how

detailed) does not render its redaction lawful.

### 3.  *These errors caused substantial harm to Leco.*

"Whether an error is prejudicial or harmless depends on the facts of the case." *See CSC*

*Sugar*, 413 F. Supp. at 1324 (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-08 (2009). Here,

CBP allowed M&B to redact two substantive and deeply relevant Exhibits in their substantial

entirety, in violation of 19 C.F.R. § 165.4(a), and itself redacted information from three

memoranda, on which CBP relied heavily in making its evasion determination, in violation of 19

C.F.R. § 165.4(a) and (e).  As a result, Leco was denied the ability to review and comment on

information that played a substantive role in CBP's evasion determination.  This is clearly

prejudicial.

That Leco was able to submit information and arguments responsive[11] to some of the

improperly redacted information as a consequence of it being made public elsewhere on the

record does not render the error harmless.  First, much of the improperly redacted information

was *not* made public elsewhere.[12]   Second, the improper redactions circumscribed Leco's

ability to present arguments regarding the reliability of the documents on which CBP relied.[13]

Third, the unlawful erasure of large amounts of information from the public record concealed

from Leco without justification the full nature of M&B's allegations and CBP's understanding

and attitude towards the record evidence, and materially impacted its ability to identify and

respond effectively to the particular arguments being marshalled against it.

Defendant considers it "important" that Leco "makes *no argument* as to what information

it would have provided" in rebuttal to the improperly redacted non-BCI.  *See* Defendant

Response at 38, 40 (emphasis in original).  However, the rule of prejudicial error does not

require that Leco do so.  *See* 5 U.S.C. § 706.  The courts have ruled that the burden of

demonstrating prejudice resulting from agency error varies depending on the nature and extent of

---

[11] Contrary to Defendant's claims, Leco has responded – repeatedly and in detail – "to the assertion that the plant in Laos does not have the capacity to produce the quantity of hangers allegedly exported to the United States." Defendant Response at 38; s*ee* Leco Written Arguments, CR-315 at CR010261-62 (discussing public record information showing Truong Hong had production capacity to produce Leco's hangers); Leco Req for Administrative Review, CR-319 at CR10347-48 (discussing public record information showing Truong Hong had production capacity to produce Leco's hangers); Leco Rebuttal Information at Remand, PR_REM-103 at RemandPR002071-76 and PR_REM-104 at RemandPR002257-63 (information showing Truong Hong capacity to produce all exported hangers); Leco Memorandum at 14-16.
[12] E.g., the specific reasons for CBP's [          ] regarding the ASEAN declarations are not stated on the public record.  *See* CR_REM-35 at RemandCR000680-83; CR_REM-39.
[13] E.g., redaction in full of M&B Confidential Exhibit 4 prevented Leco from challenging its reliability as a source of information on the basis of the objections mentioned on page 41 of its Memorandum.  *See* Leco Memorandum at 41.

that error.  The Federal Circuit has found that while a plaintiff may be required to demonstrate the specific harm caused by a mere "technical failure" to comply with Administrative Procedure Act requirements, in the case of a "complete failure" to do so "even a minimal showing of prejudice may suffice to defeat a claim of harmless error."  *See Mid Continent Nail Corp. v. United States et al.*, 846 F.3d 1364, 1383-84 (Fed. Cir. 2017).  The Fifth Circuit has held that the doctrine of harmless error "is to be used only when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached."  *See U.S. Steel Corp. v. Environmental Protection Agency*, 595 F.2d 207, 215 (5th Cir. 1979).  This Court expressly rejected claims that a plaintiff must "demonstrate that Commerce's decision would have been different but for Commerce's failure to maintain and provide contemporaneous ex parte memoranda" in violation of 19 U.S.C. § 1677f(a)(3) in order for prejudicial error to be found.  *CSC Sugar,* 413 F. Supp. 3d at 1325.

Leco has explained that the improper bracketing "concealed from Leco highly relevant information on which CBP relied in its evasion determination, and denied Leco the opportunity to offer rebuttal information thereto," described why the redacted information is substantive and relevant, and explained how its unlawful redaction prejudiced Leco. *See* Leco Memorandum at 29, 40-41.  These explanations meet Leco's burden of demonstrating prejudicial error.

## C.  Due Process

Leco's lack of access to legitimate BCI in the underlying investigation violated its Due Process right to adequate notice and opportunity to be heard.  Public summary does not afford the required notice and opportunity to be heard: it is not possible to craft a public summary that provides "sufficient detail to permit a reasonable understanding of the substance of the

information"[14] without revealing confidential information, because the "substance of the information" of which Due Process requires notice exists in the confidential detail.

Defendant does not dispute that Leco has a significant private interest that is affected by the official action under review.  Nor does Defendant argue that implementing an APO mechanism to allow parties to access business confidential information during an EAPA proceeding would pose any fiscal or administrative burden on the government.  As such, the only point of contention is whether Leco has satisfied the second prong of the analysis prescribed in *Mathews v. Eldridge*, 424 U.S. 319 (1976) by demonstrating "the risk of an erroneous deprivation" of Leco's private interest "through the procedures used."

### 1. *Entry Data*

Defendant argues that Leco failed to meet its burden of showing that lack of access to other importers' entry data violated its Due Process rights because Leco failed to offer "*any explanation* as to what additional data Leco would have submitted to rebut other importers' entry data."  Defendant Response at 39 (emphasis in original).  This assertion fails to grasp that the entry data *is* the rebutting information.  Furthermore, Defendant's claim that Leco failed to offer "*any explanation*" is clearly false: in the very next sentence of its Response, Defendant quotes Leco's *explanation* as to the types of arguments and information that Leco could have put forth had it been able to review the entry data.  Defendant Response at 39.  Defendant appears to take issue with the fact that Leco did not actually submit to the Court, in support of its Motion for Judgment on the Agency Record, additional factual information that is not part of the agency record.

---

[14] 19 C.F.R. § 165.4(a)(2).

The risk of erroneous deprivation here is clear and straightforward. CBP's regulations prohibited the release to Leco of other importers' entry data. Specific details of the entry data, which specific details could not be included in a public summary, suggest an additional line of argument that Leco, had it known of it, could have pursued. Because the details of the entry data were withheld from Leco, Leco was deprived of notice of this potential rebuttal information, and of any meaningful opportunity to submit information and argument based on those data. Such information and argument, had Leco been able to submit it, could have impacted the outcome of the investigation. Accordingly, the regulations with regard to business confidential treatment of information created a risk of erroneous deprivation of Leco's private interest in the proper assessment of tariffs on its past imports.

### 2. M&B Allegations and Exhibits[15]

Defendant also asserts that Leco "makes *no argument* as to what information it would have provided had it received all of the information in M&B's report." Defendant Response at 38 (emphasis in original).[16] On the contrary: Leco has explained that lack of access to Exhibit 4 deprived Leco of the ability to highlight significant deficiencies in the report that should have disqualified it as a source of any reliable information in the investigation. *See* Leco Memorandum at 40-41. Raising of these issues in the underlying investigation could have led CBP to reconsider the reliability of M&B's "information," which could have affected the outcome of the investigation.

---

[15] Leco reiterates that its Due Process arguments with regard to the redaction of M&B's submissions apply only to such information in those documents that this Court may find to be properly entitled to business confidential treatment. It is Leco Supply's principal position that the majority of the redacted information in M&B's submissions was *not* entitled to business confidential treatment.

[16] CBP makes a similar argument with regard to the RAAAS Memorandum and Memoranda to the File. *See* Defendant Response at 40. Given space constraints, Leco focused on the redactions that most significantly prejudiced its ability to participate in the proceedings.

Defendant asserts at one point that it is "not sufficient for Leco to assert that a given summary does not meet the requirements of 19 C.F.R. 165.4; it must *also* establish how it was deprived of due process." Defendant Response at 38. This statement fundamentally misunderstands Leco's argument. At no point has Leco argued that a "given summary" does not meet the public summary requirements of 19 C.F.R. § 165.4. Rather, Leco has shown that either (a) the redacted information does not qualify for business confidential treatment and should not have been redacted (and subsequently summarized) in the first place, or (b) that even public summary that is *fully compliant* with 19 C.F.R. § 165.4 is insufficient to protect Leco's Due Process right to notice and opportunity to be heard, and that therefore the regulations and/or statute themselves are constitutionally deficient.

## IV.   CBP Refusal to Accept Late Filing of Written Arguments At Remand

Defendant's response regarding whether CBP's refusal to grant a partial day's extension for the filing of Leco's written arguments at remand constitutes an abuse of discretion is based on misunderstandings and mischaracterizations of the law. *See* Defendant Response at 41. Defendant bases this position on 19 C.F.R. § 165.5(c)(2); however, § 165.5(c) expressly applies only to "regulatory deadlines," and therefore does not apply to deadlines set by CBP at its own discretion in the course of a remand proceeding. *Id.; see* 19 C.F.R. § 165.5(c)(1). Moreover, Defendant's claim that the caselaw cited by Leco "relate to circumstances where an adverse inference was applied" is untrue. *See* Defendant Response at 41. Leco cited three cases in support of its position: *Celik Halat Ve Tel Sanayi AS v. United States*, 485 F.Supp.3d 1404 (Ct. Int'l Tr.  2020); *Stupp Corp. v. United States*, 359 F. Supp. 3d 1293 (Ct. Int'l Tr.  2019); and *Grobest & I-Mei Indus. (Vietnam) v. United States*, 815 F. Supp. 2d 1342 (Ct. Int'l Tr. 2012). Leco Memorandum at 46. *Celick*, the only case in which adverse inferences were applied, was

merely cited to establish the standard of review for rejection of untimely filed submissions. *Id.*

Adverse inferences were not applied – or even mentioned - in *Stupp* or *Grobest*. *See Stupp*, 359

F. Supp. 3d 1293; *Grobest*, 815 F. Supp. 2d 1342.

Respectfully Submitted,

/s/ Heather Jacobson
Heather Jacobson
Junker & Nakachi P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Plaintiff Leco Supply Inc.*

July 1, 2022

**WORD COUNT CERTIFICATE OF COMPLIANCE**

Pursuant to the U.S. Court of International Trade's Standard Chambers Procedures 2(B)(1), the undersigned certifies that this brief complies with the court limitation requirement. The word count for Plaintiff Leco Supply Inc.'s Reply To Defendant Response To Motion For Judgment On The Agency Record, as computed by Junker & Nakachi PC's word processing system (Microsoft Word Version 16.56), is 6,984 words.

Respectfully Submitted,

/s/ Heather Jacobson
Heather Jacobson
Junker & Nakachi P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Plaintiff Leco Supply Inc.*

July 1, 2022